**VAN ETTEN SIPPRELLE LLP**
KEITH A. SIPPRELLE (SBN 143358)
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone: (805) 719-4900
Facsimile: (805) 719-4950
ksipprelle@vstriallaw.com

Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG ENGINEERING GMBH,<br><br>       Petitioner,<br><br>vs.<br><br>BYTON NORTH AMERICA CORPORATION,<br><br>       Respondent. | Case No. 3:21-cv-04736-EMC<br><br>**RESPONDENT BYTON NORTH AMERICA CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONER EDAG ENGINEERING GMBH'S MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT**<br><br>[*SUPPORTING DECLARATION OF KEITH A. SIPPRELLE SUBMITTED CONCURRENTLY HEREWITH*]<br><br>Date: December 9, 2021<br>Time: 1:30 p.m. (Zoom) |

# TABLE OF CONTENTS

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 1

    A.   The Arbitration Proceeding. ................................................................................. 1

    B.   EDAG's Motion For Issuance Of A Preliminary Injunction. ................................ 2

    C.   EDAG's Overreaching Amended Proposed Order And Judgment. ......................... 4

II.   CONFIRMATION OF THE ARBITRATION AWARD AND ENTRY OF JUDGMENT THEREON WOULD BE PREMATURE IN LIGHT OF THE ARBITRATOR'S NOVEMBER 7, 2021 MODIFICATION OF THE AWARD. ............... 7

III.   EDAG'S OVERREACHING PROPOSED AMENDED ORDER AND JUDGMENT SHOULD BE REJECTED. ........................................................................ 9

IV.   CONCLUSION. ................................................................................................................ 11

# TABLE OF AUTHORITIES

## Cases

*Bearden v. Ga.*
    (1983) 461 U.S. 660. ........................................................................................................ 10

*Eastern Seaboard Construction Co., Inc. v. Gray Construction, Inc.*
    (1st Cir. 2008) 553 F.3d 1 ................................................................................................. 7

*Fradella v. Petricca*
    (1st Cir. 1999) 183 F.3d 17 ............................................................................................... 7

*Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*
    (U.S.D.C, District of Maryland, 2009) 647 F. Supp. 2d 587 ............................................ 8

*Shuffler v. Heritage Bank*
    (9th Cir. 1983) 720 F.2d 1141, 1147-1148 ..................................................................... 10

*Whittaker Corp. v. Execuair Corp.*
    (9th Cir. 1992) 953 F.2d 510, 516.................................................................................. 10

## Statutes and Rules

18 U.S.C. § 401 ............................................................................................................................ 6

9 U.S. Code § 9 ............................................................................................................................ 4

9 U.S. Code § 10 .......................................................................................................................... 4

9 U.S. Code § 12 .............................................................................................................. 4, 6, 7, 9

California Code of Civil Procedure Sections 1218(a)................................................................... 6

Fed. R. Civ. P. 69 .................................................................................................................... 9, 10

Fed. R. Civ. P. 70 ......................................................................................................................... 9

Respondent BYTON NORTH AMERICA CORPORATION ("Byton") hereby respectfully opposes the Motion of Petitioner EDAG Engineering GMBH ("EDAG") to Confirm Arbitration Award and Enter Judgment ("Motion").

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

### A. The Arbitration Proceeding.

The underlying arbitration proceeding was commenced on October 22, 2019 by EDAG submitting a Demand for Arbitration ("Demand") to JAMS.  The Demand asserted claims against Byton for breach of contract and breach of the covenant of good faith and fair dealing premised upon Byton's purported failure to pay EDAG amounts allegedly owed pursuant to the terms of the parties' Technology Development and License Agreement (the "TDLA").[2]  The Demand sought a money recovery from Byton of at least $28.5 million, but made no claim relating to the ownership of any work product or intellectual property developed by EDAG for Byton. (Sipprelle Declaration at ¶ 2, and Exhibit "1" to the Sipprelle Declaration at page 3.)

On November 19, 2019, Byton submitted a response to the Demand, and also asserted counterclaims against EDAG for breach of contract and negligence.  Byton's response and counterclaims made no reference to the ownership of any work product or intellectual property developed by EDAG for Byton pursuant to the TDLA. (Sipprelle Declaration at ¶ 3, and Exhibit "2" to the Sipprelle Declaration.)

On December 16, 2019, EDAG submitted a response and affirmative defenses to Byton's cross-claims.  EDAG's response made no reference to the ownership of any work product or intellectual property developed by EDAG for Byton pursuant to the TDLA. (Sipprelle Declaration at ¶ 4, and Exhibit "3" to the Sipprelle Declaration.)

---

[1] Unless otherwise indicated, the factual statements in this Memorandum are supported by the Declaration of Keith A. Sipprelle submitted concurrently herewith ("Sipprelle Declaration"), including the exhibits thereto. The exhibits referenced in this Memorandum are the exhibits to the Sipprelle Declaration, unless otherwise indicated

[2] The Demand is attached as Exhibit "1" to Sipprelle Declaration.  The TDLA is attached as Exhibit "A" to the Demand.

BYTON'S OPPOSITION TO EDAG'S MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT; Case No. 3:21-cv-04736-EMC

Subsequently, Judge William J. Cahill (Ret.) of JAMS was appointed as arbitrator in this matter (the "Arbitrator"), in accordance with paragraph 14.4b of the TDLA. (Sipprelle Declaration at ¶ 5.)[3]

The case was tried to the Arbitrator between February 8 and 19, 2021. (Sipprelle Declaration at ¶ 6; Exhibit "4" to the Sipprelle Declaration, at p. 1.) The Final Arbitration Award was issued on June 2, 2021 and served on the parties on June 3, 2021. (Exhibit "4" to the Sipprelle Declaration, pp. 28, 29.) The Final Arbitration Award addressed and resolved all issues raised by the parties in their pleadings and otherwise.[4] The Final Arbitration Award made no findings regarding (or even mention of) the ownership of any intellectual property developed by EDAG for Byton pursuant to the TDLA. (See Exhibit "4.") This was hardly surprising, as the ownership of the work product created by EDAG for Byton was not raised by the pleadings (see Exhibits "1," "2" and "3"), and no evidence or argument was presented during the course of the arbitration hearing in February 2021 regarding the ownership of this work product. (Sipprelle Declaration at ¶ 6.)

On June 23, 2021, EDAG filed a petition to confirm the Final Arbitration Award in the United States District Court for the Northern District of California. (DE 1.)

### B. EDAG's Motion For Issuance Of A Preliminary Injunction.

On Sept 24, 2021, more than 3 months after EDAG had filed its petition to confirm the Final Arbitration Award, EDAG filed a Motion with the Arbitrator seeking the issuance of a Preliminary Injunction against Byton.[5] EDAG's Motion for Preliminary Injunction was premised on a new and unadjudicated claim that the work product/intellectual property that EDAG had created for

---

[3] See also p. 2, ¶ 1 of the Final Arbitration Award, which is attached as Exhibit "4" to the Sipprelle Declaration. The Final Arbitration Award is also Docket Entry ("DE") 10-4 in this action.

[4] See Exhibit "4" at p. 2, ¶ 2: "The Arbitrator has considered *all* pleadings, testimony, and exhibits and makes the following findings of facts and law." (Emphasis supplied.)

[5] EDAG's Memorandum of Points and Authorities in support of its Motion for Preliminary Injunction is attached as Exhibit "5" to the Sipprelle Declaration.

Byton and for which Byton had paid EDAG approximately €27 million (more than 50% of the contract price), belonged entirely to EDAG because Byton had failed to pay EDAG the full amount owed under the TDLA.  (Sipprelle Declaration at ¶ 9; Exhibit "5" to the Sipprelle Declaration at 6:9-9:17, 8:28-9:2, 14:19-20.)   On the basis of this new contract-based claim, EDAG sought a preliminary injunction to preclude Byton from transferring (or even accessing) this work product.  EDAG also sought a general "freeze" on Byton's other assets up the amount of the arbitration award.   (Sipprelle Declaration at ¶ 9; Exhibit "6" to the Sipprelle Declaration at page 9.)

On October 29, 2021, while the Motion for Preliminary Injunction was still pending with the Arbitrator, EDAG filed the instant Motion with this Court to confirm the Arbitrator's June 2, 2021 Final Arbitration Award and Enter Judgment on the Award.  (DE 19.)  The Motion for Confirmation was accompanied by a proposed Order and Judgment.  (DE 19-5.)

On November 7, 2021, the Arbitrator issued a ruling granting EDAG's Motion for Preliminary Injunction.  (Exhibit "7" to the Sipprelle Declaration.)  EDAG filed a notice of the ruling with this Court on November 8, 2021. (DE 25.)   The central finding supporting the Arbitrator's November 7, 2021 ruling was that EDAG owns the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA (and for which Byton paid EDAG approximately €27 million of the €50 contract price).  (Sipprelle Declaration at ¶ 11; Exhibit "7" to the Sipprelle Declaration.)  The following passages from the Arbitrator's November 7, 2021 ruling make this clear:

- Under the TDLA, "BYTON may only to [sic] receive intellectual property rights by paying EDAG.  BYTON now has access to intellectual property it does not own, and for which it has not paid." (Exhibit "7" at p. 4.)
- "BYTON has no right to the intellectual property in question, because BYTON breached its obligation to pay EDAG for it." (Exhibit "7" at pp. 5-6.)
- "BYTON's unauthorized access and transfer of EDAG's property constitutes a form of trespass, for which there is no adequate monetary compensation." (Exhibit "7" at p. 6.)
- "BYTON has no protectable interest in being permitted to misappropriate EDAG's

intellectual property." (Exhibit "7" at p. 7.)

The Arbitrator's central finding in his ruling of November 7, 2021 that EDAG rather than Byton owns 100% of the work product that EDAG created for Byton and for which Byton paid EDAG more than 50% of the contract price is an entirely new, different and highly significant finding relating to the interpretation and the parties' performance under the TDLA that was neither framed by the arbitration pleadings, a subject of the nine-day Arbitration hearing in February 2021, or referenced in the June 2, 2021 Final Arbitration Award.  This significant new and different finding, which is based on an interpretation of paragraph 6.2 of the TDLA and the parties' performance thereunder, is in effect a significant modification of the Arbitrator's Final Award.  Byton intends to challenge this finding through a motion to vacate, modify, or correct the award (under 9 U.S. Code § 12) on the grounds that: (a) the Arbitrator exceeded his powers in making this substantive finding in his ruling issued on November 7, 2021 - more than three months after issuing his Final Award (9 U.S. Code § 10(a)(4)); and (b) in making a finding on November 7, 2021 regarding ownership of the work product/intellectual property, the Arbitrator improperly modified his June 2, 2021 Final Award based upon a substantive matter not submitted to him for decision prior to entry of the Final Award (9 U.S. Code § 9(b)).

Because the June 2, 2021 Final Award has effectively been amended as of November 8, 2021 (the date that the Arbitrator's ruling of November 7, 2021 was served on the parties), Byton must be given an opportunity to challenge the amended final award.  Under 9 U.S. Code § 12, Byton has 90 days from November 8, 2021 in which to challenge the amended award by way of a motion to vacate, modify, or correct the award.  Because Byton's deadline to challenge the amended final award will not run until February 7, 2022, it would be premature for this Court to confirm the arbitration award and enter judgment thereon.

C. **EDAG's Overreaching Amended Proposed Order And Judgment.**

At 5:03 p.m. on November 9, 2021, only three days before Byton's opposition to the instant Motion was due, EDAG submitted an amended proposed order and judgment to this Court [DE 26].  Although EDAG's counsel had represented to the Court at the Case Management Conference several hours earlier that its amended proposed order and judgment would merely incorporate the

Arbitrator's ruling of November 7, 2021 granting EDAG's motion for preliminary injunction, EDAG's amended proposed order and judgment contains provisions that dramatically differ from and fundamentally alter the Arbitrator's ruling of November 7, 2021.  (Sipprelle Declaration at ¶ 12.)

The Arbitrator's order of November 7, 2021 was a prohibitory injunction intended to preserve the *status quo* while EDAG sought to collect on any judgment it was eventually awarded:

> "*EDAG has demonstrated that it is entitled to entry of an injunction, to preserve the status quo **without imposing any affirmative duty** on BYTON or prohibiting BYTON from any action it is entitled to undertake*."

(Exhibit "7" at p. 6; emphasis supplied.)

In contrast to the Arbitrator's November 7, 2021 Order, EDAG's amended proposed order and judgment is replete with provisions that were not included in the Arbitrator's November 7, 2021 Order, including provisions requiring Byton to take *affirmative actions* upon threat of fines and contempt.  Some of the more overreaching provisions of EDAG's amended proposed order and judgment are the following:

- "Within 5 (five) days of entry of this judgment, BYTON shall return to EDAG any and all copies of the intellectual property EDAG created and provided in conjunction with BYTON's "M-BYTE" vehicle prototype.  Upon return to EDAG, BYTON shall destroy any such copies of the intellectual property in its possession and subject to inspection." [DE 26, Amended Proposed Order, page 3, lines 20-22.]
- "Finally, the Court finds that EDAG has shown that BYTON has made efforts to transfer assets offshore, leaving BYTON North American with only debt, and otherwise to avoid payment of a judgment in EDAG's favor." [DE 26, Amended Proposed Order, page 4, lines 7-9.]
- " For every day that BYTON fails to comply with the above provisions, BYTON may be subject to being held in contempt and assessed penalties of $50,000 per day and any attorney's fees incurred by EDAG in a contempt proceeding." [DE 26, Amended Proposed Order, page 4, lines 4-6, 16-18.]

- "Within 5 (five) days of entry of this judgment, Respondent BYTON North America Corporation, a Delaware corporation (hereafter "BYTON") shall return to EDAG any and all copies of any and all intellectual property created by EDAG." [DE 26, Amended Proposed Judgment, page 1, lines 16-19.]
- "Upon return to EDAG, BYTON shall destroy any such copies of the intellectual property in its possession." [DE 26, Amended Proposed Judgment, page 1, lines 20-21.]
- "**NOTICE TO JUDGMENT DEBTOR: If you fail to comply with the Judgment and Orders therein as specified above, you may be subject to: being held in contempt under California Code of Civil Procedure Sections 1218(a) and 1219(a), and 18 U.S.C. §§ 401 et seq.; and the inherent powers of the Court, which include arrest and punishment for contempt of court.  The Court may impose daily penalties of $50,000 per day, each day, and the Court may make an order requiring you to pay the reasonable attorney's fees incurred by the judgment creditor in this proceeding**." [DE 26, Amended Proposed Judgment, page 2, lines 1-8, page 3, lines 1-8.]

In effect, EDAG's amended proposed order and judgment would seek to convert the Arbitrator's prohibitory injunction of November 7, 2021 intended to preserve the *status quo* into a mandatory injunction requiring Byton to return unspecified and undefined "intellectual property" and pay the full amount of the judgment upon threat of: (a) arrest and punishment for contempt of court; and (b) the imposition of daily penalties of $50,000 per day.

Moreover, EDAG's amended proposed order and judgment improperly seeks to "bootstrap" the arbitrator's November 7, 2021 finding that EDAG owns the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA into an order requiring Byton to return this work product/intellectual property under threat of contempt and arrest before Byton has had an opportunity to challenge the arbitrator's finding by way of a motion to vacate, modify, or correct the arbitration award under 9 U.S. Code § 12.

As discussed below, EDAG's overreaching amended proposed order and judgment should be rejected on the basis that it contains provisions that are both unlawful and beyond the scope of the Arbitrator's November 7, 2021 ruling.

## II. CONFIRMATION OF THE ARBITRATION AWARD AND ENTRY OF JUDGMENT THEREON WOULD BE PREMATURE IN LIGHT OF THE ARBITRATOR'S NOVEMBER 7, 2021 MODIFICATION OF THE AWARD.

The Arbitrator's November 7, 2021 Order is premised upon a finding relating to the interpretation and the parties' performance under the TDLA that was not framed by the arbitration pleadings, was not a subject of the nine-day Arbitration hearing in February 2021, and is not referenced in the Arbitrator's Final Award of June 2, 2021. This significant new and different finding (that EDAG owns 100% of the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA, and for which Byton paid EDAG approximately €27 million of the €50 contract price), constitutes a modification of the Arbitrator's Final Award.[6]

Whether Byton's 90-day deadline to move to vacate, modify, or correct the arbitration award under 9 U.S. Code § 12 runs from June 3, 2021 (the date of service of the Final Arbitration Award) or November 8, 2021 (the date of service of the Arbitrator's November 7, 2021 ruling) will turn on whether the Arbitrator's substantive finding in his November 7, 2021 ruling that EDAG owns 100% of the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA resolved an "arbitrable claim" as distinguished from a mere subsidiary determination of the claims that were resolved in the June 2, 2021 Final Award. *See Fradella v. Petricca* (1st Cir. 1999) 183 F.3d 17, 19. As the First Circuit explained in *Eastern Seaboard Construction Co., Inc. v. Gray Construction, Inc.* (1st Cir. 2008) 553 F.3d 1, "[o]ur cases still tend to differentiate between a second award which is 'fundamentally inconsistent with the first award' and one which 'simply flesh[es] out the remedy announced initially." *Id*. at 4. Thus, the *Eastern Seaboard* Court found that Rule 47 of the AAA Construction Industry Arbitration Rules permitted the arbitrator to modify the initial omission of a $ 66,613.89 because doing so was "the type of

---

[6] Lest there be any doubt as to whether this aspect of the Arbitrator's November 7, 2021 ruling constitutes a significant modification of the Final Arbitration Award, the Court need look no further than EDAG's amended proposed order and judgment [DE 26], which incorporates in multiple provisions the Arbitrator's November 7, 2021 finding that EDAG owns 100% of the intellectual property developed by EDAG for Byton pursuant to the TDLA.

'clerical, typographical, technical or computational error'" which AAA Rule 47 permitted the Arbitrator to amend or clarify. The amendment did not reopen the merits of the case. Rather, it clarified a latent ambiguity." *Id*. at 6.

Here, the Arbitrator's finding in his November 7, 2021 ruling that EDAG owns 100% of the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA was not a mere "subsidiary" determination of the claims that were resolved in the June 2, 2021 Final Award, nor was this determination simply the correction of a clerical, typographical, technical or computational error made in the June 2, 2021 Final Arbitration Award.  Instead, the finding in the Arbitrator's November 7, 2021 ruling that EDAG owns 100% of the work product/intellectual property developed by EDAG for Byton pursuant to the TDLA was in effect a ruling on a brand-new legal theory that had not been part of the arbitration proceedings up through and including the issuance of the Final Arbitration Award on June 2, 2021.  By ruling on a new substantive contract claim that could have been (but was not) asserted in the arbitration proceedings prior to the issuance of the Final Arbitration Award (*e.g.*, by way of a claim that Byton had trespassed upon and/or converted property owned by EDAG), the Arbitrator effectively reopened the arbitration proceedings to address a substantive new claim.[7]

---

[7] The situation presented here is in contrast to the facts presented in *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors* (U.S.D.C, District of Maryland, 2009) 647 F. Supp. 2d 587.  In *Parsons*, the Petitioner (Parsons) argued that the three-month limitations period under 9 U.S. Code § 12 began to run on December 1, 2008, the date of the final arbitration award, and consequently the motions filed by the Respondent (Palmetto) in April 2009 to modify or correct the arbitration award were untimely.  In contrast, Palmetto argued that the three-month limitations period under 9 U.S. Code § 12 began to run on January 19, 2009, the date of the issuance of the arbitrators' "Order in Response to Requests for Modification of Final Award and Amendment of Final Award by Interlineation," and consequently the motions filed in April 2009 to modify/correct the arbitration award were timely.  The District Court concluded that the three-month limitations period under 9 U.S. Code § 12 began to run on December 1, 2008, because the January 19, 2009 modifications of the final award were simply computational amendments of the December 1, 2008 final award, and therefore constituted the resolution of a "subsidiary matter." *Id*. at 591-594.

In short, because the Arbitrator's November 7, 2021 ruling addressed and resolved a new and distinct arbitrable claim, Byton's 90-day deadline to challenge the final arbitration award runs from November 8, 2021 (the date of service of the Arbitrator's November 7, 2021 ruling).  As Byton's deadline to vacate, modify, or correct the arbitration award under 9 U.S. Code § 12 does not run until February 7, 2021, it would be premature for this Court to rule on EDAG's Motion.

### III. EDAG'S OVERREACHING PROPOSED AMENDED ORDER AND JUDGMENT SHOULD BE REJECTED.

Although the Court need not address the propriety of EDAG's amended proposed order and judgment [DE 26] in the event the Court agrees with Byton that it would be premature to rule on EDAG's Motion, Byton nevertheless feels it must address and object to the grossly inappropriate, obnoxious and overreaching aspects of the document that EDAG has requested this Court approve and adopt.

The Arbitrator's ruling of November 7, 2021 was a prohibitory injunction intended to preserve the *status quo* while EDAG sought to collect on any judgment it was eventually awarded. The Arbitrator's ruling did not impose any affirmative duty on Byton or prohibit Byton from any action it was entitled to undertake.  (Exhibit "7" at p. 6.)  In contrast to the Arbitrator's November 7, 2021 order, EDAG's amended proposed order and judgment is replete with provisions that were not included in the Arbitrator's November 7, 2021 ruling, including provisions finding that Byton has essentially engaged in efforts to fraudulently transfer assets (DE 26, Amended Proposed Order, page 4, lines 7-9) and requiring Byton to take *affirmative actions* (*e.g.*, return of work product/intellectual property, destroying copies of intellectual property, payment of the judgment) upon threat of $50,000 daily fines, contempt and arrest.  (DE 26, Amended Proposed Order, page 3, lines 20-22; DE 26, Amended Proposed Order, page 4, lines 4-6, 16-18; DE 26, Amended Proposed Judgment, page 1, lines 16-19; DE 26, Amended Proposed Judgment, page 1, lines 20-21; DE 26, Amended Proposed Judgment, page 2, lines 1-8, page 3, lines 1-8.]

Under federal law (which EDAG contends applies to its Motion), a money judgment must be enforced through a writ of execution.  *Federal Rule of Civil Procedure* ("FRCP") 69(a)(1). Although *FRCP* 70 authorizes a federal court to use its contempt power enforce a judgment for

certain specific acts, these do not include a judgment for the payment of money. *See Whittaker Corp. v. Execuair Corp*. (9th Cir. 1992) 953 F.2d 510, 516 (money judgments may not be enforced by imposition of contempt sanctions).[8] *See also Shuffler v. Heritage Bank* (9th Cir. 1983) 720 F.2d 1141, 1147-1148 (federal courts are not permitted to enforce money judgments by contempt or methods other than writ of execution except in cases where established principles so warrant);[9]

If and when the Court has occasion to address EDAG's amended proposed order and judgment, Byton respectfully requests that the Court strike or amend those provisions that are unlawful, go beyond the scope of the Arbitrator's November 7, 2021 ruling, or suffer from other deficiencies.[10]

---

[8] Debtor's prisons were abolished under federal law in 1833.  Moreover, incarcerating indigent debtors is unconstitutional under the Fourteenth Amendment's Equal Protection clause. *Bearden v. Ga.* (1983) 461 U.S. 660.

[9] "First, to the extent the fine was intended to force Shufflers to pay the $ 190,000 to Heritage, the fine is unauthorized under Rule 70. The proper means for Heritage to secure compliance with a money judgment is to seek a writ of execution, not to obtain a fine of contempt for the period of non-payment. We recognize that Rule 69(a), by stating that 'process to enforce a judgment for the payment of money shall be a writ of execution, *unless the court otherwise direct*s,' Fed. R. Civ. P. 69(a) (emphasis added), seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction.   Nonetheless, we do not interpret the exception to execution to permit a federal court to 'enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant.' See 7 J. Moore & J. Lucas, *Moore's Federal Practice* P69.03[02] (2d ed. 1982); se*e Gabovitch v. Lundy*, 584 F.2d 559, 560 n.1 (1st Cir. 1978) ("equitable remedies, even those permitted by Rule 70, are seldom appropriate aids to execution of a money judgment"); *Governor Clinton Co. v. Knott*, 120 F.2d 149, 153 (2d Cir.), cert. dismissed per stipulation, 314 U.S. 701, 62 S. Ct. 50, 86 L. Ed. 561 (1941). Heritage points to no exceptional circumstances or established principles in this case permitting Heritage to gain payment of the February judgment by securing a $500 per day fine. Consequently, to the extent the order of contempt was intended to enforce payment, it cannot be sustained." *Id*. at 1147-1148.

[10] A non-exhaustive list of other problematic provisions of EDAG's amended proposed order and judgment include the following:

(1) Byton would be precluded under the amended proposed order/judgment from taking any step to "transfer" or "otherwise make unavailable" any assets up to the value of the judgment. [DE 26, proposed judgment, page 2.]  "Transfer" and "otherwise make

IV. **CONCLUSION.**

For all of the foregoing reasons, EDAG's Motion should be denied.

Respectfully Submitted,

Dated:  November 12, 2021                VAN ETTEN SIPPRELLE LLP

By: *Keith A. Sipprelle*
Keith A. Sipprelle
Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

---

unavailable" are not defined in the document.  Do these terms refer only to fraudulent transfers, or to any transfers?  If the latter, would Byton be precluded from covering payroll and benefits for its few remaining employees, paying rent, paying its few remaining vendors (including its attorneys), and otherwise paying normal operating expenses?

(2) Byton would be required under the amended proposed order/judgment to "return to EDAG any and all copies of the intellectual property created by EDAG" within 5 days, "to destroy any such copies of the intellectual property in its possession," and to refrain from "accessing, modifying, transferring, or deleting any intellectual property created by EDAG."  [DE 26, proposed judgment, pages 1 and 2.]  The term "intellectual property" is not defined in the document.  How is Byton, with its few remaining employees, to determine (within 5 days no less) what is EDAG's "intellectual property" and what is not from the mass of electronic data stored on the JAMA cloud servers?