# Exhibit 5

LEWIS & LLEWELLYN LLP
Evangeline A.Z. Burbidge (Bar No. 266966)
eburbidge@lewisllewellyn.com
Marc R. Lewis (Bar No. 233306)
mlewis@lewisllewellyn.com
Kenneth M. Walczak (Bar No. 247389)
kwalczak@lewisllewellyn.com
Bradley E. Estes (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:   (415) 390-2127

Attorneys for Claimant
EDAG Engineering GmbH

JAMS REFERENCE NO. 1100107291

IN THE MATTER OF THE JAMS ARBITRATION BETWEEN

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>        Claimant,<br><br>        v.<br><br>BYTON North America Corporation,<br><br>        Respondent.<br><br>――――――――――――――<br><br>AND RELATED CROSS-CLAIM | **CLAIMANT EDAG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hon. William J. Cahill (ret.)<br><br>Arbitration:  February 8, 2021<br>Final Judgment:  June 3, 2021 |

LEWIS +
LLEWELLYN
LLP

# TABLE OF CONTENTS

Page

I.  INTRODUCTION. ........................................................................................... 6

II. RELEVANT FACTS AND PROCEDURAL HISTORY. ............................. 7

    A.  EDAG's Work For BYTON. ............................................................. 7

    B.  Arbitration Proceedings. ................................................................... 7

    C.  BYTON's Misuse of EDAG's Intellectual Property. ....................... 8

III. ARGUMENT. ............................................................................................... 9

    A.  Your Honor Has The Authority to Issue Injunctive Relief. ............ 9

    B.  A Preliminary Injunction Should Issue, to Stop Byton From
         Transferring EDAG's Data, And to Preserve EDAG's Ability to
         Recover on a Judgment. ................................................................... 12

    C.  EDAG Is Likely to Succeed on the Merits. .................................... 13

    D.  EDAG Will Suffer Irreparable Harm Absent Injunctive Relief. .......... 14

    E.  The Balance of Equities Strongly Favors EDAG. ........................... 15

    F.  A Preliminary Injunction Serves the Public Interest. ..................... 16

IV. NO BOND IS NECESSARY. ..................................................................... 17

V.  THE TDLA REQUIRES THE PARTIES TO SPLIT ARBITRATION FEES. ................. 17

VI. CONCLUSION. .......................................................................................... 18

LEWIS +
LLEWELLYN LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*
632 F. 3d 1127 (9th Cir. 2011) ............................................................................ 13

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Disease &
Related Disorders Ass'n of San Diego, Inc.*
No. 17-CV-1690-BTM-JLB, 2018 WL 1562012 (S.D. Cal. Mar. 29, 2018) .............................. 12

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*
750 F. 2d 1470 (9th Cir. 1985) ............................................................................ 15

*Arauyo v. Loc. 13*
No. CV 97-6574 ABC(RNBX), 1997 WL 912927 (C.D. Cal. Nov. 22, 1997) ........................ 16

*Bullock v. City & Cty. of San Francisco*
221 Cal. App. 3d (1990) ................................................................................... 15

*Butt v. State of California*
4 Cal. 4th 668 (1992) ...................................................................................... 12

*Cadence Design Systems, Inc. v. Avant! Corp.*
125 F. 3d 824 (9th Cir. 1997) ............................................................................. 16

*China National Metal Products Import/Export Co. v. Apex Digital, Inc.*
155 F. Supp. 2d 1174 (C.D. Cal. 2001) ............................................................ 10, 11

*DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*
502 F. Supp. 2d 1082 (C.D. Cal. 2007) .................................................................. 11

*DISH Network L.L.C. v. Fineman*
No. CV 16-3488-R, 2017 WL 2060010 (C.D. Cal. Mar. 22, 2017) ................................... 17

*Doran v. Salem Inn, Inc.*
422 U.S. 922 (1975) ........................................................................................ 15

*Earth Island Inst. v. Carlton*
626 F. 3d 462 (9th Cir. 2010) ............................................................................. 15

*eBay, Inc. v. Bidder's Edge, Inc.*
100 F. Supp. 2d 1058 (N.D.Cal.2000) .................................................................... 15

*Ferguson v. Corinthian Colleges, Inc.*
733 F. 3d 928 (9th Cir. 2013) ........................................................................... 9, 10

*Ficek v. S. Pac. Co.*
338 F. 2d 655 (9th Cir. 1964) ............................................................................. 14

LEWIS +
LLEWELLYN
LLP

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Fid. Brokerage Servs. LLC v. McNamara*
  2011 WL 2117546 (S.D. Cal. May 27, 2011) ................................................................ 17

*Fid. Fed. Bank, FSB v. Durga Ma Corp.*
  386 F. 3d 1306 (9th Cir.2004) ..................................................................................... 10

*French v. Merrill Lynch*
  784 F. 2d 902 (9th Cir. 1986) ...................................................................................... 14

*G.C. & K.B. Invs., Inc. v. Wilson*
  326 F. 3d 1096 (9th Cir. 2003) ................................................................................ 10, 14

*Johnson v. Gruma Corp.*
  614 F. 3d 1062 (9th Cir. 2010) ..................................................................................... 10

*Jorgensen v. Cassiday*
  320 F. 3d 906 (9th Cir. 2003) ...................................................................................... 17

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*
  341 F. 3d 987 (9th Cir. 2003) ...................................................................................... 13

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
  363 F. 3d 1010 (9th Cir. 2004) ..................................................................................... 13

*MCA Recs., Inc. v. Newton-John*
  90 Cal. App. 3d 18 (1979) ........................................................................................... 15

*MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*
  573 F. Supp. 2d 772 (S.D.N.Y. 2003) .......................................................................... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) .................................................. 10

*N.D. v. Haw. Dep't of Educ.*
  600 F. 3d 1104 (9th Cir.2010) ..................................................................................... 16

*Napa Valley Publ'g Co. v. City of Calistoga*
  225 F. Supp. 2d 1176 (N.D. Cal. 2002) ........................................................................ 16

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*
  323 F. Supp. 2d 1037 (N.D. Cal. 2004) ........................................................................ 15

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*
  935 F. 2d 1019 (9th Cir. 1991) ..................................................................................... 12

4

LEWIS +
LLEWELLYN
LLP

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Right Site Coal. v. Los Angeles Unified Sch. Dist.*
   160 Cal. App. 4th 336 (2008) ........................................................................ 15

*Sarhank Group v. Oracle Corp.*
   01 Civ. 1285, 2002 WL 31268635 (S.D.N.Y. Oct. 9, 2002) ............................ 12

*Shanghai Lan Cai Asset Mgmt. Co. v. Jia Yueting*
   No. 2:18-CV-10255 SJO MR WX, 2019 WL 11273229 (C.D. Cal. Sept. 3, 2019) ...................... 12

*Simula, Inc. v. Autoliv, Inc.*
   175 F. 3d 716 (9th Cir. 1999) .................................................................. 10, 11

*Smagin v. Yegiazaryan,*
   No. CV 14-9764-R, 2015 WL 13757706 (C.D. Cal. Sept. 28, 2015) .......................... 11

*Small v. Avanti Health Sys.*, LLC
   661 F. 3d 1180 (9th Cir. 2011) ................................................................... 16

*SMC Promotions, Inc. v. SMC Promotions*
   No. CV047107JFWVBKX, 2006 WL 6219155 (C.D. Cal. Jan. 19, 2006) ................. 13

*Sovak v. Chugai Pharm. Co.*
   280 F. 3d 1266 (9th Cir. 2002) ................................................................... 10

*Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*
   609 F. 3d 975 (9th Cir. 2010) ................................................................. 11, 13

*Triad Systems Corp. v. Southeastern Exp. Co.*
   64 F. 3d 1330 (9th Cir.1995) ...................................................................... 16

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*
   824 F. Supp. 2d 1003 (C.D. Cal. 2011) ........................................................ 16

**Statutes**

9 U.S.C. § 2 ............................................................................................. 9, 10

LEWIS +
LLEWELLYN LLP

## I.     INTRODUCTION.

EDAG Engineering GmbH ("EDAG") is one of the world's leading providers of automotive engineering services.  Start-up BYTON North America Corporation ("BYTON") hired EDAG to assist with BYTON's ambitious goal of building an all-electric vehicle (called the M-BYTE) from scratch.  As was addressed in detail during the two-week hearing, by late 2018 BYTON owed EDAG millions of dollars.  EDAG initiated arbitration over BYTON's breach of contract and, on June 3, 2021, Your Honor issued a 29-page Final Award finding in favor of EDAG and awarding it €23,446,649, plus 10% statutory interest and costs.

EDAG has recently learned that BYTON, which has not paid one cent of the over €23.4 million Final Award, has paid *other* vendors so that it and a related Chinese entity (which BYTON has referred to as "BYTON China") can access EDAG's intellectual property and spend resources building its M-BYTE vehicle in China.  Based on the evidence, it appears that BYTON is engaged in a scheme to transfer assets—including EDAG's intellectual property—overseas and out of the reach of U.S. authorities.  BYTON has no right to do so; under the express terms of the parties' contract, its failure to pay means EDAG still owns all of the intellectual property EDAG created.  BYTON has no right to access, let alone transfer, said property, which may be the only asset of value in its possession.  Indeed, BYTON claims that it cannot even pay the $8,400 required for Your Honor to hear this matter.

Should BYTON shunt all assets of value overseas and, perhaps, declare bankruptcy, it would render EDAG even more unlikely to recover any of the amount BYTON owes.  And BYTON may succeed in this shell game, unless EDAG obtains injunctive relief.

The Arbitrator has full power and authority to grant EDAG a preliminary injunction.  Based on the immediate risk of asset transfer, EDAG meets the standard for issuance of injunctive relief.  EDAG is not only "likely to succeed" in this action, it has already obtained a significant award from Your Honor.  While BYTON has indicated that it will file a motion to vacate the award, until the time that the matter is decided by the Court, the Final Award remains in force.  Further, BYTON is very unlikely to prevent entry of judgment in EDAG's favor.

EDAG will suffer irreparable harm from the loss of its intellectual property, and potentially

1  its entire ability to recover from BYTON, in the absence of injunctive relief.  The balance of harms

2  also favors EDAG.  Because EDAG's entire award is at significant risk, the company continues to

3  suffer significant harm in the absence of an injunction.  Whereas enjoining BYTON from

4  transferring EDAG's property would cause it no harm—it would simply preserve the status quo

5  BYTON itself created.

6      BYTON has repeatedly represented, year after year and month after month, that it has no

7  money.  The intellectual property that EDAG created is the only thing of value that remains.  If

8  BYTON is able to improperly transfer this asset to China, it will not only have breached the contract

9  with EDAG, but also flouted the law and principles of fairness and equity.

10  **II.    RELEVANT FACTS AND PROCEDURAL HISTORY.**

11      **A.    EDAG's Work For BYTON.**

12      The Arbitrator is well acquainted with the facts of this matter, and with the parties'

13  relationship.  *See* Arbitrator's Award ("AA"), Exhibit A to Declaration of Evangeline A.Z. Burbidge

14  filed herewith ("Burbidge Decl.") at 2- 11.  From 2016 to 2019, EDAG provided engineering

15  services to BYTON as part of BYTON's project to design and manufacture the all-electric M-BYTE

16  vehicle.  AA 6-7.  In 2018, BYTON stopped paying EDAG's invoices, forcing EDAG to initiate the

17  underlying arbitration pursuant to the parties' contract.  AA 7.

18      **B.    Arbitration Proceedings.**

19      On October 22, 2019, EDAG initiated arbitration proceedings against BYTON.  Your Honor

20  conducted an evidentiary hearing between February 8-12 and 16-19, 2021.

21      On June 25, 2021, Your Honor found in favor of EDAG's breach of contract claim and

22  awarded EDAG the sum of €23,446,649, plus 10% statutory interest and costs.  AA 28.  As Your

23  Honor noted, BYTON repeatedly represented that it lacks the money to pay EDAG.  *See, e.g.,* AA 3,

24  7-10.

25      On June 23, 2021, EDAG petitioned the Court to confirm the Arbitrator's Award and enter

26  judgment in its favor.  On July 16, 2021, BYTON filed a reply indicating that it intends to challenge

27  the Award.

28  / / /

LEWIS +
LLEWELLYN ᴸᴸᴾ

**C.     BYTON's Misuse of EDAG's Intellectual Property.**

The parties' agreement, the Technology and Development Licensing Agreement ("TDLA"), required EDAG to give BYTON all associated intellectual property rights for EDAG's deliverables, *in exchange for* BYTON's obligation to pay certain fees.  TDLA ¶ 6.2b, AA 6.

As Your Honor's Award made clear, BYTON breached the parties' agreement when it failed to pay those fees; BYTON owes EDAG over 23 million Euros.  AA 7-21, 28.

EDAG is informed and believes that its intellectual property for the M-BYTE vehicle is currently in the possession, custody, and control of Jama Software ("Jama").  *See* Burbidge Decl. ¶ 8.  As EDAG knew first-hand, BYTON used Jama's browser-based database to store all of the work performed by EDAG to build BYTON's product, *i.e.* the M-BYTE vehicle.  *See* Amelung Decl. ¶ 16; *see also* Burbidge Decl. ¶ 8.

BYTON's corporate witness testified that BYTON owed Jama Software (among other vendors) money for use of its cloud-based platform, and that Jama had shut off BYTON's access to that platform.  *See* Burbidge Decl. ¶ 8(a) & Ex. D (Nov. 17, 2020 BYTON Most Qualified Witness Dep.) at 242:24-245:21.  BYTON's corporate witness further testified that BYTON could not muster the roughly $500,000 it owed to its various cloud-based providers.  *See* Burbidge Decl. ¶ 8(b) & Ex. D (Nov. 17, 2020 BYTON Most Qualified Witness Dep.) at 244:4-17.  Before, during, and after the underlying arbitration, BYTON's witnesses and counsel represented that BYTON did not have any money to pay what it owed EDAG, nor the ability to pay its portion of the contractually agreed upon JAMS fees.  *See* Burbidge Decl. ¶¶ 6(a) - (f).  Those representations continued into this week.  *See* Burbidge Decl. ¶6(g).

Nonetheless, EDAG has learned that BYTON and a Chinese affiliate have spent the last nine months—including during the arbitration hearing, when BYTON pleaded poverty—attempting to regain access to the Jama database and the intellectual property EDAG created.  *See* Burbidge Decl. ¶¶ 8(e) – (g).  On September 1, 2021, EDAG learned for the first time that BYTON paid all past due invoices to Jama several months ago.  By paying for a year of access to Jama's services, BYTON has obtained access to EDAG's data.  *Id*. ¶ 8(f).

Thus, BYTON has managed to circumvent to the TDLA, which expressly states that

1   BYTON may only to receive intellectual property rights by paying ***EDAG***.  BYTON now has

2   improper access to intellectual property it does not own, and for which it has not paid.

3          Moreover, BYTON appears to be transferring its operations and any assets of value to

4   Chinese affiliate companies, which operate outside the reach of United States courts.  On August 20,

5   2021, automotive journalists reported that BYTON's M-BYTE was photographed undergoing road

6   tests in Hainan, China, despite BYTON's efforts to hide those tests.  *See* Burbidge Declaration ¶ 7;

7   Amelung Declaration Ex. D.  There can be no doubt that the test vehicle is the car that EDAG

8   designed and that it contains the work that EDAG performed and has not been paid for.  *See*

9   Amelung Declaration Ex. E.

10          On September 15, 2021, EDAG also learned that BYTON and a Chinese affiliate had been

11   actively working to transfer the IP for the M-BYTE—possibly the only thing of value left at

12   BYTON North America—from a U.S.-based cloud storage facility held by Jama to a China-only

13   server.  *See* Burbidge Declaration ¶ 8(g).  While that transfer was unsuccessful, in the absence of an

14   injunction there is nothing to stop BYTON from attempting to do it again.

15          If BYTON is successful in moving its assets overseas, it could very well load up the U.S.

16   entity with all of its debt, declare bankruptcy, and allow its Chinese affiliate to use the intellectual

17   property that EDAG built without paying a cent of the €23.4 million that EDAG is currently owed.

18   **III.    ARGUMENT.**

19          **A.    Your Honor Has The Authority to Issue Injunctive Relief.**

20          In the Ninth Circuit, "an arbitrator generally has the authority to enter injunctive relief

21   against a party that has entered into an arbitration agreement."  *Ferguson v. Corinthian Colleges,*

22   *Inc.*, 733 F.3d 928, 937 (9th Cir. 2013)[1].  However, "an arbitrator may do so only if the arbitration

23   ───────────────
    [1] The arbitrator's authority to grant injunctive relief is a procedural issue, *i.e.* an issue concerning the
24   "rules for arbitration," to which federal law applies.  The Ninth Circuit discussed the lay of the land
    as follows:
25
            The agreement in this case is a contract "evidencing a transaction
26          involving commerce" that comes within the purview of the FAA. *See* 9
            U.S.C. § 2. "The FAA, while it does not itself create independent federal
27          jurisdiction, 'creates a body of federal substantive law establishing and
            regulating' arbitration agreements that come within the FAA's

28

9

LEWIS +
LLEWELLYN
LLP

1    agreement at issue permits it." *Ibid*. Here, the TDLA explicitly permits it. "The arbitrator will have

2    full power and authority to … fashion appropriate remedies (including temporary, preliminary,

3    interim, or permanent injunctive relief)." TDLA ¶ 14.4b, Amelung Decl., Ex. B at 12.

4         In fact, arbitration is generally the preferred forum for parties to seek such relief.

> The Ninth Circuit has recognized the wisdom of sending interim relief
> issues to arbitration. In *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726
> (9th Cir. 1999), the court held "Because the district court concluded that
> all of Simula's claims were arbitrable and the ICC arbitral tribunal is
> authorized to grant the equivalent of an injunction pendente lite, it
> would have been inappropriate for the district court to grant preliminary
> injunctive relief." In *China National Metal Products Import/Export Co.
> v. Apex Digital, Inc.*, 155 F.Supp.2d 1174, 1182 (C.D. Cal. 2001), the
> district court applied the holding in *Simula* to reverse the magistrate
> court. In *China National*, the parties agreed to submit all disputes "in
> connection with" the challenged contract to arbitration in China with
> the China International Economic and Trade Arbitration Commission
> under the Commission's applicable arbitration rules. *China National*,
> 155 F.Supp.2d at 1176. After the parties had submitted their claims to
> arbitration, the plaintiff sought a writ of attachment from a magistrate

---

> purview." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th
> Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.
> Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
> When an agreement falls within the purview of the FAA, there is a
> "strong default presumption ... that the FAA, not state law, supplies the
> rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266,
> 1269 (9th Cir. 2002). "To overcome that presumption, parties to an
> arbitration agreement must evidence a 'clear intent' to incorporate state
> law rules for arbitration." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386
> F.3d 1306, 1311 (9th Cir.2004) (quoting *Sovak*, 280 F.3d at 1269).

> "[A] general choice-of-law clause within an arbitration provision does
> not trump the presumption that the FAA supplies the rules for
> arbitration." *Sovak*, 280 F.3d at 1270; *see also Fid. Fed. Bank*, 386 F.3d
> at 1312. In *Fidelity Federal Bank*, we considered an arbitration clause
> providing that controversies were to be resolved "in accordance with
> the laws of the State of California and the rules of the American
> Arbitration Association." 386 F.3d at 1312 (internal quotation marks
> omitted). We saw no "clear intent" to incorporate California arbitration
> rules and therefore read the agreement as electing state substantive law
> and federal procedural rules. *Id.* at 1311–12; *see also Sovak*, 280 F.3d
> at 1270 (reaching the same conclusion under a similar arbitration
> provision).

*Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066–67 (9th Cir. 2010).

LEWIS +
LLEWELLYN
LLP

court. *Id.* at 1177. The district court found that the arbitral rules authorized provisional relief. *Id.* at 1182. Accordingly, under the Ninth Circuit precedent of *Simula*, the district court held that it must respect the parties' agreement "and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief." *Id.*

*DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083–84 (C.D. Cal. 2007).

Your Honor's authority extends as far as "the authority that a court having jurisdiction over the Parties and the dispute would have absent this arbitration agreement." TDLA ¶ 14.4b, Amelung Decl., Ex. B at 12. That authority includes the ability to issue a temporary restraining order or preliminary injunction to protect EDAG's rights, pending confirmation of the Arbitrator's award and entry of judgment. "[A] district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied." *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010) ("*Toyo*") (copious citations omitted).

Here, injunctive relief is necessary to get EDAG the final mile to judgment. EDAG has obtained an arbitration award in its favor but requires an injunction "to ensure [its] arbitration award is not rendered ineffectual." *Smagin v. Yegiazaryan*, No. CV 14-9764-R, 2015 WL 13757706, *2 (C.D. Cal. Sept. 28, 2015) ("*Smagin*") (affirming injunction freezing assets of Respondent who "regularly conceals the true ownership of his assets through the use of shell corporations in offshore jurisdictions and through the use of nominees who hold assets on his behalf and act according to his discretion" in action where Petitioner had received an arbitration award). "This is not the beginning stage of a breach of contract claim, but instead the end stages of a protracted arbitration in which the merits of all claims and defenses have been fully presented and adjudicated." *Smagin*, 2015 WL 13757706 at *1, citing *Toyo* (additional citation omitted).

Your Honor also retains authority over this matter—and Your Honor's Final Award remains binding—while BYTON's future motion to vacate the award is pending; otherwise, arbitration awards would be meaningless. *See, e.g., Sarhank Group v. Oracle Corp.*, 01 Civ. 1285, 2002 WL

11

LEWIS +
LLEWELLYN LLP

1   31268635, at *3 (S.D.N.Y. Oct. 9, 2002) ("The confirmation of an arbitration award is characterized

2   as a summary proceeding that merely makes what is already a final arbitration award a judgment of

3   the court."); *MGM Prods. Grp., Inc. v. Aeroflot Russian Airlines*, 573 F.Supp.2d 772, 774 (S.D.N.Y.

4   2003), *aff'd*, 91 F. App'x 716 (2nd Cir. 2004) (crediting argument that an "arbitral award is

5   sufficiently final for confirmation purposes provided that no further recourse may be had to the

6   appeals division of the arbitral tribunal.... [T]he mere fact that recourse may somehow be had in

7   another court of law does not prevent the Award from being 'binding.'")

8           **B.**      **A Preliminary Injunction Should Issue, to Stop BYTON From Transferring**

9                   **EDAG's Data, And to Preserve EDAG's Ability to Recover on a Judgment.**

10        A preliminary injunction is the appropriate remedy for BYTON's attempts to circumvent the

11  Arbitrator's Final Award, and the Court's eventual judgment, by transferring assets or otherwise

12  avoiding U.S. jurisdiction.  "[E]quitable relief in arbitration may be essential to preserve assets or

13  enforce performance which, if not preserved or enforced, may render a final award meaningless."

14  *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022–23 (9th Cir. 1991).

15  *See also Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Disease & Related*

16  *Disorders Ass'n of San Diego, Inc.*, No. 17-CV-1690-BTM-JLB, 2018 WL 1562012, at *4 (S.D.

17  Cal. Mar. 29, 2018) (confirming arbitration award and affirming order enjoining party from

18  "dissipating or otherwise encumbering Currently Available Assets before such transfer for any

19  purpose, including to satisfy outstanding bills, invoices or other debts, whether for attorney fees or

20  for any other purpose."); *Shanghai Lan Cai Asset Mgmt. Co. v. Jia Yueting*, No. 2:18-CV-10255

21  SJO MR WX, 2019 WL 11273229, at *3 (C.D. Cal. Sept. 3, 2019) (issuing a "a preliminary

22  injunction, enjoining Respondent from taking any step to transfer, conceal, reduce, encumber, or

23  otherwise make unavailable—either personally or through instructions to another—any non-exempt

24  assets up to the value of this Court's judgment against Respondent").

25        To obtain injunctive relief, EDAG "must establish (1) that [it] is likely to succeed on the

26  merits, (2) that [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) that

27  the balance of equities tips in [its] favor, and (4) that an injunction is in the public interest.  *Toyo*,

28  609 F.3d at 982.  *See also Butt v. State of California*, 4 Cal. 4th 668, 677-678 (1992) (under state

LEWIS +
LLEWELLYN

1   law, a preliminary injunction is proper where moving party proves (1) likelihood of success and (2)

2   that the relative interim harm to the parties from issuance of the injunction weighs in its favor).  A

3   party that satisfies the latter three elements may obtain preliminary injunctive relief by showing the

4   existence of "serious questions going to the merits" rather than a likelihood of success on the merits.

5   *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131–32 (9th Cir. 2011).

6        EDAG easily satisfies all four elements.  Having already obtained a thorough and well-

7   reasoned opinion granting an award in its favor, EDAG is extremely likely to succeed on the merits

8   of this action.  In the absence of injunctive relief, EDAG will forever lose its ability to recover its

9   own intellectual property, and may forfeit any ability to recover the sum the Arbitrator awarded.  As

10  BYTON will suffer no cognizable harm from maintaining the status quo until entry of judgment, the

11  equities are firmly in EDAG's favor.  And a preliminary injunction would promote the strong public

12  policy that a wrongdoer may not benefit from its misconduct, or misappropriate the property of

13  another to avoid complying with the judgment of a United States district court.

14        **C.     EDAG Is Likely to Succeed on the Merits.**

15        EDAG has already successfully proved its claim for breach of contract.  Your Honor found

16  that: BYTON agreed to pay EDAG a flat fee of €50,448,045, AA 11; EDAG performed its

17  obligations to BYTON under the TDLA, for which it properly invoiced BYTON, *id*. 11-17; and

18  BYTON failed to pay invoices totaling €23,446,649.  *Id*. 11, 17-18.

19        EDAG will therefore prevail in the litigation as a whole, once the Court confirms the

20  Arbitrator's award.  Confirmation of the award, and entry of judgment in EDAG's favor, are

21  mandatory under 9 U.S.C. § 9.

22        BYTON has indicated it will move to vacate the Arbitrator's decision, but the standard is

23  highly deferential and BYTON will fail.  The FAA "gives federal courts only limited authority to

24  review arbitration decisions, because broad judicial review would diminish the benefits of

25  arbitration."  *SMC Promotions, Inc. v. SMC Promotions*, No. CV047107JFWVBKX, 2006 WL

26  6219155, at *1 (C.D. Cal. Jan. 19, 2006) (*"SMC"*), quoting *Lifescan, Inc. v. Premier Diabetic*

27  *Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004), citing *Kyocera Corp. v. Prudential-Bache Trade*

28  *Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (*en banc*).  "Confirmation is required even in the face

of erroneous findings of fact or misinterpretations of law." *Ibid.*, quoting *French v. Merrill Lynch*, 784 F.2d 902, 906 (9th Cir. 1986) (additional quotations and internal quotation marks omitted).

In fact, "[i]t is not even enough that the [arbitrator] may have failed to understand or apply the law.  An arbitrator's decision must be upheld unless it is completely irrational or it constitutes a manifest disregard for law."  *Ibid.*, quoting *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003) (additional citation omitted).

> Therefore, the federal district court's role in an arbitration confirmation proceeding is severely limited, and for the most part, the court defers to the arbitrator's determination of the award. Furthermore, "[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrator's act."

*Ibid.*, quoting *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964), *cert. denied*, 380 U.S. 988 (1965) (additional citation omitted).

Your Honor did not misunderstand or misapply the law, but painstakingly reviewed a mountain of evidence, applied the relevant standards, and appropriately analyzed each of the parties' arguments.  No grounds exist for the Court to refuse to recognize or enforce the Award.  *See* Petition to Confirm Arbitration Award, p. 8.

**D.      EDAG Will Suffer Irreparable Harm Absent Injunctive Relief.**

EDAG files this motion specifically because it has a direct and immediate need for relief, to enjoin BYTON from improperly accessing and transferring EDAG's data and intellectual property overseas.  As the Arbitrator's decision plainly establishes, BYTON has no right to the intellectual property in question, because BYTON breached its obligation to pay EDAG for it.  AA 17-18.

In the absence of an injunction, BYTON will be free to complete the scheme detailed in the declarations filed herewith.  *See* Burbidge Decl. ¶¶ 8(a) - (g); Amelung Decl. ¶¶ 16 - 20.  As evidenced by its actions to date, BYTON will access the intellectual property held by Jama and transfer that valuable asset to its affiliate in China.  Worse still, it will remove any vestige of that intellectual property from the United States—as it appears to have already attempted—making it impossible for EDAG to recover.  Having obtained the benefit of its bargain with EDAG without making payments totaling more than 20 million Euros, BYTON will have no remaining incentive to

14

LEWIS +
LLEWELLYN

1   comply with the Arbitrator's Award or the resulting judgment.  Photographs of M-BYTE prototypes

2   in China suggest that BYTON may already be making use of EDAG's proprietary technology,

3   directly contravening the Arbitrator's decision.   Burbidge Decl. ¶ 7; Amelung Decl. ¶ 20.

4          The loss of the ability to monetize EDAG's work product, and the associated inability to

5   recover a judgment from BYTON, constitutes irreparable harm.  *See eBay, Inc. v. Bidder's Edge,*

6   *Inc.*, 100 F.Supp.2d 1058, 1066 (N.D.Cal.2000) ("*eBay*") ("Harm resulting from lost profits and lost

7   customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and

8   is therefore an appropriate basis for injunctive relief."); *MCA Recs., Inc. v. Newton-John*, 90 Cal.

9   App. 3d 18, 23 (1979).  As in *eBay*, BYTON's unauthorized access and transfer of EDAG's

10  property constitutes a form of trespass, for which there is no adequate monetary compensation.  As

11  in *eBay*, BYTON would deprive EDAG "of the ability to use [a] portion of its personal property for

12  its own purposes.  The law recognizes no such right to use another's personal property.

13  Accordingly, [BYTON]'s actions appear to have caused injury to [EDAG] and appear likely to

14  continue to cause injury to [EDAG]."  *Id*. at 1071.

15         Moreover, the inability to collect on a judgment of this size imperils EDAG's continued

16  viability as a business.  Irreparable harm exists "where the conduct of [Respondent] threatens the

17  existence of the [Petitioner's] business itself." *Optinrealbig.com, LLC v. Ironport Sys., Inc*., 323 F.

18  Supp. 2d 1037, 1051 (N.D. Cal. 2004).  The "threat of being driven out of business is sufficient to

19  establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474

20  (9th Cir. 1985); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ("[S]ubstantial loss of

21  business and perhaps even bankruptcy" constitutes irreparable harm.); *Bullock v. City & Cty. of San*

22  *Francisco*, 221 Cal. App. 3d (1990) (plaintiff who filed for bankruptcy during pending proceeding

23  suffered irreparable harm).

24         **E.      The Balance of Equities Strongly Favors EDAG.**

25         In balancing equities between parties, Your Honor must use his discretion to weigh the

26  relative harm to each party.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010); *Right*

27  *Site Coal. v. Los Angeles Unified Sch. Dist*., 160 Cal. App. 4th 336, 342 (2008).

28         This factor strongly favors EDAG.  In the absence of an injunction, EDAG will suffer the

LEWIS +
LLEWELLYN

1   harms to its property, its reputation, and its bottom line detailed in the preceding section.

2   Whereas maintaining the status quo will do no cognizable harm to BYTON.  BYTON's only

3   de facto injury would result from Your Honor halting its unauthorized and illegitimate scheme to

4   misappropriate EDAG's intellectual property and avoid complying with the Arbitrator's Award or

5   paying a judgment.

6   As a matter of law, that harm does not count.  "Defendants cannot complain of the harm that

7   will befall them when properly forced to desist from their infringing activities." *Warner Bros. Ent.*

8   *Inc. v. WTV Sys., Inc.*, 824 F.Supp.2d 1003, 1014–15 (C.D. Cal. 2011), quoting *Triad Systems Corp.*

9   *v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir.1995) (quotation and alteration marks

10   removed).  "Where the only hardship that the defendant will suffer is lost profits from an activity

11   which has been shown likely to be infringing, such an argument in defense merits little equitable

12   consideration[.]" *Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997)

13   (citation omitted; quotation and alteration marks removed).  *See also Napa Valley Publ'g Co. v. City*

14   *of Calistoga*, 225 F.Supp.2d 1176, 1180 (N.D. Cal. 2002) (granting injunction to "preserve the status

15   quo" and "prevent irreparable loss of rights prior to final disposition of the litigation"); *Arauyo v.*

16   *Loc. 13*, No. CV 97-6574 ABC(RNBX), 1997 WL 912927, at *4 n.4 (C.D. Cal. Nov. 22, 1997)

17   (injunctive relief would be proper under "traditional equitable criteria" because "the proposed

18   injunction will maintain the status quo and will not impose any affirmative duty on Respondents or

19   prohibit Respondents from actions that they are entitled to undertake.").

20   The analysis is the same here: an injunction barring unauthorized access or removal of

21   EDAG's intellectual property would preserve the *status quo* without imposing any affirmative duty

22   on BYTON or prohibiting BYTON from any action it is entitled to undertake.  And if BYTON

23   claims that it is not, in fact, attempting to transfer its assets overseas, it will have no issue with

24   stipulating to the injunction.

25   **F.    A Preliminary Injunction Serves the Public Interest.**

26   The public has an interest in compliance with the law and enforcement of federal court

27   judgments.  *Small v. Avanti Health Sys.*, LLC, 661 F.3d 1180, 1197 (9th Cir. 2011) ("the public

28   interest favors applying federal law correctly"); *N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113

16

LEWIS +
LLEWELLYN

1   (9th Cir.2010) ("[I]t is obvious that compliance with the law is in the public interest."); *DISH*

2   *Network L.L.C. v. Fineman*, No. CV 16-3488-R, 2017 WL 2060010, at \*3 (C.D. Cal. Mar. 22, 2017)

3   ("the public interest will be served by a permanent injunction because it will ensure compliance with

4   federal law").

5        EDAG moves to enjoin a scheme to misappropriate its intellectual property and avoid U.S.

6   jurisdiction, as well as compliance with the Arbitrator's Award and any subsequent judgment.

7   Foiling that scheme can only serve the public interest.

8   **IV.    NO BOND IS NECESSARY.**

9        The arbitrator "may dispense with the filing of a bond when it concludes there is no realistic

10  likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320

11  F.3d 906, 919 (9th Cir. 2003).  *See also Fid. Brokerage Servs. LLC v. McNamara*, 2011 WL

12  2117546, at \*8 (S.D. Cal. May 27, 2011) (declining to issue bond requested by defendants).

13       Preserving the status quo until satisfaction of a judgment in EDAG's favor poses no realistic

14  likelihood of harm to BYTON.  As discussed above, BYTON has no protectable interest in being

15  permitted to misappropriate EDAG's intellectual property.  And BYTON will not be able to prove

16  that it suffered compensable harm from entry of an order requiring it to refrain from using EDAG's

17  work to complete the M-BYTE until EDAG has been compensated for that work.

18  **V.     THE TDLA REQUIRES THE PARTIES TO SPLIT ARBITRATION FEES.**

19       As the Arbitrator is aware, the TDLA provides that "[e]ach party will bear its own costs in

20  the arbitration."  TDLA ¶ 14.4(b), Amelung Decl. Exh. B at 12.  That provision is clear and

21  unambiguous.  There is no provision modifying it, and none requiring a party who brings a motion

22  to pay any greater share or additional amount.

23       Prior to this filing, JAMS case manager Scott Schreiber reached out to counsel for both

24  parties regarding payment of a deposit to the Arbitrator.  Burbidge Decl. Exh. H at 2 (9/22/21

25  email).  Counsel for BYTON responded as follows: "Hi, Scott. Unfortunately, my client is not in a

26  position to pay JAMS anything in connection with this matter. Presumably, EDAG will cover the

27  full cost (which would be appropriate in any event as EDAG has brought this matter to Judge Cahill

28  for resolution)."  *Id*. at 1 (Sipprelle 9/22/21 email).

17

LEWIS +
LLEWELLYN

1    In order to move things forward and obtain a ruling, EDAG has advanced the entire deposit.

2  Because BYTON's position contravenes the TDLA and has no basis in law, and because BYTON

3  duly owes half of that deposit, EDAG respectfully requests that the Arbitrator include in his order

4  resolving this motion a requirement that BYTON reimburse EDAG for its half of the deposit.

5  **VI.    CONCLUSION.**

6    For the foregoing reasons, EDAG respectfully request that Your Honor issue a preliminary

7  injunction and order BYTON to pay its portion of the costs associated with this hearing, in

8  accordance with the [Proposed] Order submitted concurrently herewith.

9                                              Respectfully submitted,

10  Dated:  September 24, 2021                 LEWIS & LLEWELLYN LLP

11

12                                  By:  *Evangeline A.Z. Burbidge*

13                                      Evangeline A.Z. Burbidge
                                        Marc R. Lewis
14                                      Kenneth M. Walczak

15                                      Attorneys for Petitioner EDAG
16                                      ENGINEERING GMBH

MPA IN SUPPORT OF EDAG'S MOTION FOR PRELIMINARY INJUNCTION
JAMS REF. NO. 1100107291

LEWIS +
LLEWELLYN