**David J. Cook (SBN 60859)**
**COOK COLLECTION ATTORNEYS, PLC**
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

**LEWIS & LLEWELLYN LLP**
**Evangeline A.Z. Burbidge (Bar No. 266966)**
eburbidge@lewisllewellyn.com
**Marc R. Lewis (**Bar No. 233306)
mlewis@lewisllewellyn.com
**Kenneth M. Walczak** (Bar No. 247389)
kwalczak@lewisllewellyn.com
**Bradley E. Estes** (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:   (415) 390-2127

Attorneys for Petitioner EDAG Engineering GmbH,
a corporation organized and existing under the laws
of the Republic of Germany

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>        Petitioner,<br><br>    v.<br><br>BYTON North America Corporation,<br><br>        Respondent. | Case No. 3:21-cv-04736-EMC<br>**NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL, TO RECOVER, SET ASIDE FRAUDULENT CONVEYANCE OF 22 PATENTS FROM BYTON LIMITED ("BYTON LTD") AND PROVIDE FOR SALE PURSUANT TO FRCP 69(a), AND RULE 66, C.C.P. SECTION 708.620 AND CIVIL CODE SECTION 3439.07(a)(3)(B) FOR PURPOSES OF THE PAYMENT OF THE JUDGMENT THEREOF.**<br><br>**Dated:  January ___, 2022**<br><br>Time:  1:30 pm.<br><br>Judge:  Honorable Edward M. Chen [Video- |



ZOOM hearing)

Petition Filed: June 23, 2021

NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL

TO BYTON NORTH AMERICA, a Delaware corporation ("BNA"), Byton Limited ("BY-LTD"), and to their attorneys and each of them and to their attorneys and each of them:

Please take notice that on the _____ day of January, 2022 at the hour of 1:30 p. m., or as soon as the matter can be heard before the Honorable Edward M. Chen, Judge of the United States District Court, of the United States District Court House of 450 Golden Gate Avenue, San Francisco, California 94102, EDAG EGINEERING Gmbh, a corporation organized and existing under the laws of the Republic of Germany, ("EDAG") hereby seeks the following relief pursuant to FRCP 69(a), 66, C.C.P. Section 708.620, C.C.P. 564, 568.5. Civil Code Section 3439.7(a)(3)(B), 3439.07(a)(1), and Section 3439.05 and SECTION 3439.004(a):

A.      Vacate, set aside and extinguish the transfer and assignment of the 22 patents issued by the United States Patents and Trademark Office (USPTO) originally held by BNA to BYTON LTD from May, 2019 to August, 2021 for the patents listed on Exhibit "A" ("***BNA Patents # 1***") on the grounds that the transfer and assignment of BNA Patents #1 is a fraudulent conveyance under Civil Code Section 3439.05 and 3439.04, restore title thereof to BNA and proceed with a sale of a receiver pursuant to California Civil Code Section 3439.07(a), C.C.P. Section 708.620 etc.  The sale would include the sale by the receiver of three (3) additional patents of BNA which are still in the name of BNA (***"BNA Patents #2"***). The total of the patents are "BNA Patents TOTAL".

B.      Appoint Michael S. Warda, Esq., as a Receiver for the BNA PATENTS TOTAL with the rights, powers, and duties herein as set forth in the Notice of Motion and Motion herein, and all rights herein under FRCP 66, C.C.P. Section 708.620, Civil Code Section 3439.07(a)(3)(b), and general powers of the court hereof.

C.      EDAG hereby moves this court that the proposed receiver, Michael S. Warda, (collectively "Receiver") be endowed with the following rights, remedies, and privileges, as follows:

1.  The Receiver shall be entitled to sell, auction, convey, transfer, license, and sublicense the BNA PATENTS TOTAL, and all rights arising therefrom. Such rights include, but are not limited to, all claims, rights, suits, arbitration, judgments and other proceeding right from any infringement or any other claim arising from the infringement of the BNA PATENTS TOTAL, all licenses or assignment of the BNA PATENTS TOTAL.

2.  The Receiver may conduct a private or public sale, subject to further order of this court, and to the highest bidder, including a credit bid by Judgment Creditor, EDAG, to sell the BNA PATENTS TOTAL, and all rights arising therefrom

3.      The Receiver may establish one or more bank accounts to deposit any and all proceeds thereof from the sale of the BNA PATENTS TOTAL, and all rights arising therefrom.

4.  The Receiver may make, execute, and deliver any types of applications, transfer notices, notes, instruments, or other writings, for and on behalf of any purchaser, and/or conveyee of the intellectual property therein, and to execute, make, and deliver any and all writings required by the United States Trademark and Patent Office, to facilitate the transfer thereunder of the BNA PATENTS TOTAL, and all rights arising therefrom; and that the Receiver, or other designee therein, be established, and appointed by the court to execute any all deeds, instruments, applications, contracts or any other writings to (a) transfer the BNA Patents original in the name of BYTON Limited, as ordered by the court under Section 3939.07(c) and Section 3439.078(a)(1) [avoidance of transfer and restore title, and enjoin BNA and BY-LTD from any transfer of the PATENTS herein.

5.  The Receiver may be authorized, if necessary, to affix the name of the Defendant on any documents which may be required by the United States Trademark and Patent Office, to facilitate the transfer of the BNA PATENTS TOTAL, and all rights arising therefrom or any other designee that the Receiver may appoint and subject to the order of the court,.

6.  That the court order an officer or agent of BNA or any designee ("BNA") to execute any assignment, writings, instruments, notices, applications, supplements to applications, or anything else required by the USPTO to facilitate the sale, transfer, or other disposition of the BNA Patents Total, and all rights arising therefrom, to the purchaser arising from the sale by the receiver, including EDAG, and in the event of noncompliance therewith, order any other judicial officer of this court, including the Clerk of this Court, to sign the name of any officer or agent on behalf of BNA to likewise execute any assignment, writings, instruments, notices, applications, supplements to applications, or anything else required by the USPTO to facilitate the sale, transfer, or other disposition of the BNA PATENTS TOTAL, and all rights arising therefrom, to the purchaser.

7.  The Receiver may retain the services of one or more attorneys, experts or consultants, by which to aid and advise the receiver in the performance of the duties thereunder and appraise or evaluate the BNA PATENTS TOTAL, and all rights arising therefrom.

8.  The Receiver may advertise and incur any expense for purposes of advertising the BNA PATENTS TOTAL, and all rights arising therefrom, to the purchaser, which would include the publication in *The Wall Street Journal*, or any similar publication, or any other activity by which to promote the sale thereunder of the BNA PATENTS TOTAL, and all rights arising therefrom.

9.  The Receiver may take and receive all funds constituting the proceeds from the sale of the BNA PATENTS TOTAL, and all rights arising therefrom, and deposit the same in a receiver's account, pending further order of this court.

10.  The Receiver may conduct a credit bid for the benefit of EDAG thereunder for the sale of the BNA PATENTS TOTAL, and all rights arising therefrom under C.C.P Section 701.590(b).

11.  The Receiver be entitled to exercise any and all other rights and remedies necessary to facilitate the transfer of the BNA PATENTS TOTAL, and all rights arising therefrom, under the auspices of the USPTO and the execution of all documents that the USPTO may require, to facilitate the transfer of all rights, title and interest, of BNA in and to the BNA PATENTS TOTAL, and all rights arising therefrom, to the purchaser thereof, under the auspices of the sale by the receiver.

12.  BNA and its agents, services, designees, employees, officers, managers or appearing on behalf of BNA shall cooperate in, or shall be ordered to, or judicially appointed agent, successor or designee shall, to execute any and all powers of attorney, applications, assignments, declarations, affidavits, and any other agreements, documents or instruments in connection with the BNA PATENTS TOTAL necessary or appropriate to perfect such rights, title and interest assigned to the purchaser, its successors, assigns and legal representatives.  BNA shall further cooperate in, or shall be ordered to, or judicially appointed agent or successor or designee shall, to communicate to the purchaser, and its successors, assigns and legal representatives, any facts known to BNA respecting the BNA PATENTS TOTAL and to provide to the purchaser all written and electronic documentation in support of BNA's ownership of the BNA PATENTS TOTAL and, at the expense of the purchaser, to testify in any legal proceedings, sign all lawful agreements, documents or instruments, make all lawful oaths and generally do everything possible to vest title in the purchaser and to aid the purchaser, its successors, assigns and legal representatives to obtain and enforce its rights under the BNA PATENTS TOTAL.

13.  The court shall keep and retain continuing jurisdiction for the sale or liquidation of the BNA PATENTS TOTAL, and all rights arising therefrom.

14.  Any and all other rights, powers or duties found necessary by the Receiver in the performance of the duties herein.

C.  The court issue an order that avoids, vacates, and extinguishes, the assignments, instruments, sale agreements, bills of sale, writings required by the USPTO, writings or anything that had or sought the claims of an assignment, sale, transfer, assignment itself of the BNA Patents #1 which were sold, assigned, and transferred to BY-LTD and restore to BNA as if the putative transfer never took place here under Civil Code Section 3439.07(a)(1).

D.  The court issues an injunction that prevents BNA and BY-LTD, and both of them and their agent, and all of them, jointly and severally from the sale, assignment, sale, hypothecation, encumbrance, transfer, lien changes names or title, release or disposition, change the names of, or

the bartering any or any one of the BNA PATENTS TOTAL or any of the same, upon the issuance of this court of the filing of this motion and remain in placed pending the sale or disposition of the BNA PATENTS TOTAL hereby, at any time, by the RECEIVER, or otherwise based on court of this court pursuant to Civil Code Section 3439.07(a)(3)(A), without bond.

On December 13, 2021, judgment has been rendered in favor of EDAG to have and recover to and against BNA in the amount of $30,231,689.48, and that the court has lifted the stay imposed by FRCP 62(a)  (Doc. # 49), and likewise granted the motion to permit registration in any district pursuant to 28 USC Section 1963 (Doc. # 50).

This motion is based upon this Notice, the Motion, the Memorandum of Points and Authorities, the Declaration of David J. Cook, Esq., the Declaration of Michael S. Warda, Declaration of Michael Berg,  Declaration of Volker Amelung, all matter subject to admission by FRFE 201, Declaration of Daniel I. Kirchert, Declaration of Gong L. Chen, Deposition of Sahda Kameswaran, the Transcript of the arbitration between EDAG and BNA JAMS 1100107291 (Arbitration), Declaration of Tony Klein, all matters upon which the court may take judicial notice, the filings with the United States Patent & Trademark Office, all papers, pleadings, and other matters on file herein, and upon all oral evidence and argument which may be presented at the hearing hereof.

Dated:  December 13, 2021                          Respectfully submitted,

                                                  COOK COLLECTION ATTORNEYS PLC

                                                  By:___/s/ David J. Cook_____

                                                   David J. Cook, Esq.
                                                   Attorneys for Petitioner EDAG
                                                   ENGINEERING GMBH

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.   APPOINTMENT OF A RECIVER PURSUANT TO FRCP 69(A), FRCP 66, C.C.P. SECTION 708.620, CIVIL CODE SECTION 3439.07(A)(3)(B) ........................................ 2

III.   PROPERTY SOUGHT TO BE ENFORCED AGAINST ....................................... 3

   A.   DESCRIPTION OF THE PATENTS............................................................... 3

   B.   THE TRANSFER OF THE BNA PATENTS #1 FROM BNA TO BY-LTD, THE COPORATE PARENT OF BNA IS A FRAUDULENT CONVEYANCE ................................. 3

IV.   WHAT IS THE RELATIONSHIP BETWEEN BNA AND BY-LTD? .................. 4

V.   BNA IS THE ORIGINAL OWNER OF THE 22 BNA PATENTS  #1 ................. 4

VI.   THE EVENTS FROM EARLY 2019 TO DECEMBER 9, 2021 ............................ 5

VII.   WHAT IS THE CONDITION OF BNA? ................................................................ 5

VIII.   THE TRANSFER OF THE BNA PATENTS FROM BNA TO BY-LTD IS A FRAUDULENT CONVEYANCE UNDER CIVIL CODE SETION 3439.05, 3439.04, COMMON LAW OF THE STATE OF CALIFORNIA, AND THEREFORE THE PUTATIVE TRANSFERS ARE VOID AS MATTER OF LAW. ........................................................................................ 5

   A.   RELIEF UNDER CIVIL CODE SECTION 3439.05. ........................................ 6

   B.   RELIEF UNDER CIVIL CODE SECTION 3439.04(a)........................................ 7

   C.   THE TRANSFER OF THE MILLION DOLLAR PATENTS OF BNA, FACED WITH MILLIONS OF DEBT, TO AN OFFSHORE CORPORATE PARENT IS PER SE A FRAUDULENT WITH THE INTENT TO HINDER, DELAY, AND DEFRAUD AS MATTER OF LAW......................................................................................................................... 10

   D.   BY-LTD IS IN HONG KONG OR ELSE WHERE, IN THE PRC...................... 12

   E.   COMMON LAW FRAUDULENT CONVEYANCE. .......................................... 12

   F. EDAG CAN PROCEED TO VACATE THE CONVEYANNCE OF THE BNA PATENTS #1 IN THE ENFORCEMENT OF EDAG'S ENFORCEMENT OF THE JUDGMENT .................. 12

     (1).   THE BNA PATENT # 1 ARE VOID TRANSFERS, I.E. NO EFFECT AND SHOULD BE DECLARED A NULLITY WHICH WOULD ENABLE THE RECEIVER TO PROVIDE "GOOD AND MARKETABLE TITLE" TO A BUYER. ................................................... 13

IX.   A RECEIVER IS THE SOLE REMEDY TO SELL THE PATENTS. ............................. 15

X.   BNA IS ADMITTING LOOTING THE EDAG IN THE HANDS JAMA SOFTWARE PURSUSNT TO C.C.P. ECTIN 1287.6 ........................................................................ 16

XI.   APPOINTMENT OF A RECEIVER. ...................................................................... 18

XII.   QUALIFICATIONS OF MICHAEL S. WARDA. .................................................. 19

XIII.   DUTIES AND RESPONSIBILITIES OF THE RECEIVER......................................... 19

XIV.   COURT KEEPS AND RETAINS CONTINUING JURISDICTION................................ 19

XV.   CONCLUSION. ............................................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION APPOINTMENT OF A RECEIVER TO MARSHAL

**TABLE OF AUTHORITIES**

**Cases**

*Ager v. Murray,* 105 U.S. 126, 130-131 (1881) ............................................................... 15, 20

*Aly v. Yousri,* No. B225097, 2012 WL 1493533, at *3 (Cal. Ct. App. Apr. 30, 2012) ...................... 6

*Bekins v. Dieterle,* 5 Cal. App. 690, 694–95, 91 P. 173, 175 (Cal. Ct. App. 1907 ........................... 14

*Bull v. Ford*, 66 Cal. 176, 177, 4 P. 1175, 1176 (1884) ............................................................. 13

*Clifton v. Herrick*, 16 Cal. App. 484, 487, 117 P. 622, 624 (Cal. Ct. App. 1911) ........................... 13

*Coppock v. State Bar,* 44 Cal. 3d 665, 683–84, 749 P.2d 1317, 1328 (1988) ................................... 10

*Hassen v. Jonas,* 373 F.2d 880, 883 (9th Cir. 1967) ............................................................... 15

*Husky Int'l Elecs., Inc. v. Ritz,* 578 U.S. 356, 361–62, 136 S. Ct. 1581, 1587, 194 L. Ed. 2d 655 (2016) ....................................................................................................................... 6

*In re James Constant, James Constant v. Advanced Micro-Devices, Inc.,* 12 F.3d 1105 (9th Cir. 1993) [unpublished opinion], 1993 WL 501665 ................................................................. 18

*In Re Levander,* 180 F.3d 1114, 1121-1122 (9th Cir. 1999) ....................................................... 2

*Inventions Corp. vs. Hobbs*, 244 F.430, 436 (1917), ............................................................... 15

*Kenyon v. Automatic Instrument Co.*, 160 F.2d 878, 884 (1947) ................................................. 16

*McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 495 (1943 .................................... 15

*Mejia v. Reed,* 31 Cal. 4th 657, 668, 74 P.3d 166, 173 (2003) .................................................... 6

*People v. Riverside Univ.*, 35 Cal. App. 3d 572, 583-84, 111 Cal. Rptr. 68, 75-76 (Ct. App. 1973) 19

*Peterson v. Sheriff of City & Cty. of San Francisco*, 115 Cal. 211, 213, 46 P. 1060 (1896) ............. 15

*Schrotel v. Banerjee*, 163 F.3d 607 (9th Cir. 1998) ............................................................... 13

*Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 4259213, at *6 (N.D. Cal. Aug. 11, 2016) ....................................................................................................... 14

**Statutes**

Uniform Voidable Transfers Act ("UVTA") ........................................................................... 6

**Rules**

(35 USC Sec. 261) ....................................................................................................... 5

C.C.P. § 564 .............................................................................................................. 19

C.C.P. § 568 ............................................................................................................ 3

C.C.P. § 708.620 ................................................................................................ 2, 19

C.C.P. §1287.6: ...................................................................................................... 5

C.C.P. § 708.620 ............................................................................................ 1 , 2, 8

Civil Code §3439.05 and 3439.04 (a.) .................................................................. 2

Civil Code § 3439.07(a)(3)(B) ........................................................................ 2, 8

FRCP 66 ...................................................................................................... 3, 8, 2, 19

FRCP 69(a) ...................................................................................................... 2, 20

Penal Code §531 .................................................................................................. 11

Section 1702(a) ...................................................................................................... 1

NOTICE OF MOTION AND MOTION APPOINTMENT OF A RECEIVER TO MARSHAL

1
2
3
4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL, TO RECOVER, SET ASIDE FRAUDULENT CONVEYANCE OF 22 PATENTS FROM BYTON LIMITED ("BYTON LTD") AND PROVIDE FOR SALE PURSUANTN TO FRCP 62(a), 66 C.C.P. SECTION 708.620 AND CIVIL CODE SECTION 3439.07(a)(C)(3). FOR PURPOSES OF THE PAYMENT OF THE JUDGMENT THEREOF.**

5
6

## I.    <u>INTRODUCTION</u>

7
8
9
10
11

EDAG ENGINEERING GMBH, a corporation existing under the law of the Republic of Germany ("EDAG") has recovered judgment against BYTON North America, a Delaware Corporation, ("BNA") on December 13 2021 in the amount of $30,231,689.48 (Doc. # 49.  Upon hearing, the court has lifted the stay under FRCP 62(a) and the stay registering the judgment in other Districts under 28 USC Sec.1963,  EDAG seeks to enforce the judgment. EDAG can engage a process server under Rule 4.1(a) to levy in substitution of the U.S. Marshal.

12
13
14
15
16

EDAG moves the court to appoint a receiver to take control of 22 Patents ("BNA Patents #1") which BNA transferred from May 16, 2019 to August 11, 2021 to Byton Limited, a Hong Kong entity, ("BY-LTD") who is the corporate parent and owner of BNA. The conveyance of BNA Patent #1, without any value, contemporaneously tracks BNA tumbling in a canyon of $30mil of debt owed to EDAG, among others.

17
18
19
20

This massive fraudulent conveyance is in the face of BNA absconding with the BNA Patent #1 in hand is masterminded by Gong L. Chen, Esq., a California attorney, no less, who, admits that he facilitated the transfer of the BNA Patents #1 from BNA to BY-LTD, for no consideration, that he was in control of both entities. Mr. Chen admits to be the IP manager in charge of all IP and related matter of the family of BYTON entities.

21
22

BNA still owns three untouched patents (BNA Patents #2).  The total of Patents is entitled BNA Patents Total, i.e., 25 patents.

23
24
25
26
27

BNA has absconded from the United States.  CT Corporation Service has resigned being an agent for service on November 19, 2021, which was the date when the parties were still filing papers in the ongoing litigation in this court.  The court granted a motion in favor of EDAG that would enable EDAG to serve the California Secretary of State pursuant to Section 1702(a).  BNA fled from their offices of 4201 Burton Way, Santa Clara, CA 95054.  Daniel I. Kirchert, apparent president, resides in Hong Kong.  BY-LTD is free of any contact with the United States.

28

In seeking to enforce the judgment under FRCP 69(a), and vacating the fraudulent conveyances of the BNA Patents #1, EDAG moves for the appointment of Michael S. Warda as the

receiver for the BNA PATENTS TOTAL and with the rights, duties, and powers to proceed with the orderly sale thereof.  Mr. Warda is an attorney experienced in general business matters and capable of managing the sale of intellectual property through the appointment of a receiver.

This motion has a two step process:

(1)     Appoint Michael Warda as the Receiver for the sale of the BNA PATENTS TOTAL (i.e. BNA Patents #1 and BNA Patents #2).

(2)     Seeking an Order that vacates, extinguishes, and voids the transfers and assignments as a complete nullity, as if the transfers did not happen at all, of the BNA Patents #1 to BY-LTD as a fraudulent conveyance under Civil Code Section 3439.05 and 3439.04 (a), and therefore, BNA is left to be the sole owner of the BNA Patents #1 and BNA Patents #2.

## II.    APPOINTMENT OF A RECIVER PURSUANT TO FRCP 69(a), FRCP 66, C.C.P. SECTION 708.620, CIVIL CODE SECTION 3439.07(a)(3)(B)

EDAG is proceeding with enforcement, after lifting of Rule 62(a), which is subject to the laws of the State of California under FRCP 69(a). The leading case is *In Re Levander,* 180 F.3d 1114, 1121-1122 (9th Cir. 1999) in which the court stated as follows:

> "We have held that Federal Rule of Civil Procedure 69(a) [8] empowers federal courts to rely on state law to add judgment-debtors under Rule 69(a), which "permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits." Cigna Property & Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 421 (9th Cir.1998) (quoting Peacock v. Thomas, 516 U.S. 349, 359 n. 7, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996)."

In addition to the relief under FRCP 66 and common law, C.C.P. § 708.620 provide for the appointment of a receiver:

> "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment."

C.C.P. § 568 permits the court to provide for various powers and duties in favor of the receiver, as follows:

> "The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize."

EDAG likewise seeks an order for the sale of the patent in the hands of the receiver pursuant to C.C.P. § 568.5 which provides as follows:

> "A receiver may, pursuant to an order of the court, sell real or personal property in the receiver's possession upon the notice and in the manner prescribed by Article 6

1    (commencing with Section 701.510) of Chapter 3 of Division 2 of Title 9. The sale is not final until confirmed by the court. "

2    EDAG can likewise move for injunctive relief and the appointment of a receiver,

3    based on the fraudulent conveyances of BNA Patents #1 per to Civil Code Section

4    3439.07(a)(3)(A)&(B) as follows:

5        "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08 , may obtain:

6
7        (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:

8        (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or other property of the transferee.

9
10       (B) Appointment of a receiver to take charge of the asset transferred or other property of the transferee."

11

12   **III.    PROPERTY SOUGHT TO BE ENFORCED AGAINST**
     **A.        DESCRIPTION OF THE PATENTS**

13       BNA Patents #1 consist of 22 patents which are set forth in the attached chart which lists the

14   Patents, the patent number, a brief description, and date of transfer, marked ***Exhibit "K"*** ("BNA

15   Patents #1").  BNA Patents #2 consist of three patents in the name of BNA and have not been

16   transfer, list on ***Exhibit "L".***  BNA Patents #1 and #2 is BNA PATENTS TOTAL ."

17   **B.        THE TRANSFER OF THE BNA PATENTS #1 FROM BNA TO BY-LTD, THE**
18   **COPORATE PARENT OF BNA IS A FRAUDULENT CONVEYANCE**
         Gong L. Chen, Esq., a ranking officer of both BNA and BY-LTD, masterminded the

19   transferring about $100,000,000 worth of BNA's Patents #1 to BY-LTD (Doc. # 30-2 ), on May 16,

20   2021 and ended on August 11, 2021.(Declaration of Kenneth Walczack (Doc. # 22, Exhibit 5, and

21   copies for assignment and transfers)  Gong L. Chen, the IP manager of the BYTON family of related

22   corporations, unabashedly stated in his declaration (Doc. # 30-2) the following:

23       "2.      I have acted as Director of IP ("intellectual property") for the Byton group of
24   companies, including Byton North America Corporation ("Byton NA"), since March 2018. During that time, I have overseen the Byton group of companies' intellectual property issues, including matters relating to Byton NA's United States patents and patent applications.
25       3.       I have reviewed a motion filed by EDAG Engineering GMBH ("EDAG") for Order
26   Granting Relief from Post-Judgment Stay. In connection with that motion, EDAG has submitted documentation relating to the transfer from Byton NA to Byton Limited (a Hong Kong company
27   that is the parent company of Byton NA) of 20 United States patents. These transfers began in May, 2019 and continued through (but ended) in August 2021. The documentation submitted by EDAG
28   showing these patent transfers is publicly available on the website of the United States Patent and

Trademark Office ("USPTO"). I was personally involved in the preparation of the documentation for each of these patent transfers.

    4.      EDAG has suggested in its Motion that the 20 patent transfers it has identified were made by Byton NA for the purpose of evading creditors or for some other improper or nefarious purpose. However, nothing could be further from the truth. The patent transfers identified by EDAG were made pursuant to a long-standing inter-company arrangement which stipulated that Byton Limited would be the ultimate owner of all patents granted by patent offices around the world (other than patents granted by the Patent Office of the People's Republic of China) based on any patent applications filed in the name of any of the Bytom group of companies, including Bytom NA. Under this arrangement, all U.S. patent applications filed by Bytom NA and the resulting U.S. patents would be assigned to Bytom Limited, and these assignments typically would have been on file with the U.S. patent office shortly before the issuance of the patents. " (Doc. # 30-2, Page 2, Para. 3-4, lines 10 to 26, and Page 3, lines 1-3).

Mr. Chen confesses that BY-LTD, the corporate parent, provided nothing of value in exchange for the transfer of the BNA Patents #1. The value of the BNA Patents #1 is between $61,000,000 to $84,000,000 pursuant to the Declaration of Volker Amelung which is hereby attached and incorporated within.

## IV.    WHAT IS THE RELATIONSHIP BETWEEN BNA AND BY-LTD?

Byton NA is the subsidiary of Byton Limited ("BY-LTD") as follows:

"BYTON Limited (f/k/a: Future Mobility Corporation Ltd.), which is the 100% owner of Defendant BYTON North America Corporation." (Doc. #14, Page 2, lines 10-11) and,

"Plaintiff Byton North America Corporation submits, pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the following corporate disclosure statement: The parent corporation of Byton North America Corporation is Byton Limited, a privately-held Hong Kong company. No publicly-held corporation owns 10% or more of Byton North America Corporation's stock."  (Doc. 13, page 1, lines 1-5)  (*Byton etc. vs. Bretfeld, etc*. USDC CD CA, 2:19-cv-10563-DMG-JEM) (*Exhibit "M"*)

Mr. Chen, Esq., a California attorney, is the IP officer for all BYTON entities as follows:

"2. I have acted as Director of IP ("intellectual property") for the Byton group of companies, including Byton North America Corporation ("Byton NA"), since March 2018. During that time, I have overseen the Byton group of companies' intellectual property issues, including matters relating to Byton NA's United States patents and patent applications." (Doc. # 30-2)

## V.    BNA IS THE ORIGINAL OWNER OF THE 22 BNA PATENTS #1

The applicant for the Application for a patent is deemed to be the owner pursuit to CFR 3.373 as follows:

"The original applicant is presumed to be the owner of an application for an original patent, and any patent that may issue therfrom, unless there is an assignment. The original applicant is presumed to be the owner of a trademark application or registration, unless there is an assignment."

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL**

The successful applicant is therefore the owners of patent.[1]   "Subject to the provisions of this title, patents shall have the attributes of personal property." (35 USC Sec. 261)

## VI.   THE EVENTS FROM EARLY 2019 TO DECEMBER 9, 2021

This is the chronology of facts  running a parallel tract with the PATENTS TRACTS as listed in the Declaration of David J. Cook which is attached and incorporated within.

Starting from before May 2019 and now even or after August, 2021, BNA debt continues to accumulate as they fail to pay multiple creditors (see chart listed in the Declaration of David J. Cook.) BNA collapses with no more than 4 employees *(Exhibit "C",* Pg 798, Lines 13-17), BNA's PPP of $10,000,000 disappears. CT Corporation System, the agent resigns November 19, 2021 during the midst of litigation before this court.  Per the November 8 Order,  BNA badgers JAMA Software Inc. to send offshore BNA's last EDAG to a Chinese Affiliate (most likely BY-LTD).

## VII.   WHAT IS THE CONDITION OF BNA?

This is the financial status of BNA provided by Judge Cahill in the November 8 Order (Doc. # 25) which was the full force as a contract pursuant to C.C.P. Section 1287.6:

"These actions have resulted in the possibility of Byton being able to circumvent portions of the TOLA, which expressly states that BYTON may only to receive intellectual property rights by paying EDAG. BYTON now has access to intellectual property it does not own, and for which it has not paid.

Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts. On August 20, 2021, automotive journalists reported that BYTON's M-BYTE was photographed undergoing road tests in Hainan, China, and EDAG has produced evidence that the test vehicle is the car that EDAG designed and that it contains the work that EDAG performed, and for which EDAG has not been paid. EDAG was unaware of this development until it was discovered in August.

On September 15, 2021, EDAG also learned that BYTON and a Chinese affiliate had been actively working to transfer the IP for the M-BYTE-possibly the only thing of value left at BYTON North America-from a U.S.-based cloud storage facility to a China-only server.

**If Byton is successful in moving its assets overseas there will be no assets in the United States that can be used to satisfy the €23.4 million judgment won in the arbitration." Doc. #25, Page 5)"** [Emphasis added]

## VIII.   THE TRANSFER OF THE BNA PATENTS FROM BNA TO BY-LTD IS A FRAUDULENT CONVEYANCE UNDER CIVIL CODE SETION 3439.05, 3439.04, COMMON LAW OF THE STATE OF CALIFORNIA, AND THEREFORE THE PUTATIVE TRANSFERS ARE VOID AS MATTER OF LAW.

These are the basic relevant cannons of fraudulent conveyance under the Uniform Voidable

---

[1]  The investors assign their rights to the patent applicant,

Transfers Act ("UVTA")  [commencing Civil Code 3l939 seq.]

"The fraudulent conveyance statutes are liberally construed to prevent debtors from placing property beyond the reach of creditors. (*Fross v. Wotton* (1935) 3 Cal.2d 384, 390–391; *Vogel v. Sheridan* (1935) 4 Cal.App.2d 298, 305.)" **Aly v. Yousri**, No. B225097, 2012 WL 1493533, at *3 (Cal. Ct. App. Apr. 30, 2012)."

"The California Legislature has a general policy of protecting creditors from fraudulent transfers, including transfers between spouses. A transfer before dissolution can be set aside as a fraudulent conveyance." *Mejia v. Reed,* 31 Cal. 4th 657, 668, 74 P.3d 166, 173 (2003)

Fraudulent conveyances are acts of common law fraud:

"Equally important, the common law also indicates that fraudulent conveyances, although a "fraud," do not require a misrepresentation from a debtor to a creditor. As a basic point, fraudulent conveyances are not an inducement-based fraud. Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration." *BFP*, 511 U.S., at 540–541, 114 S.Ct. 1757 (citing *Twyne's Case,* 3 Co. Rep. 80b, 76 Eng. Rep. 809 (K.B. 1601)); O. Bump, Fraudulent Conveyances: A Treatise Upon Conveyances Made by Debtors To Defraud Creditors 31–60 (3d ed. 1882. . . . . . *Husky Int'l Elecs., Inc. v. Ritz,* 578 U.S. 356, 361–62, 136 S. Ct. 1581, 1587, 194 L. Ed. 2d 655 (2016)  and

Michael Berg, CPA has been engaged as expert and opines that the transfer of the BNA Patents #1 is a fraudulent conveyance. Mr. Berg opines that the transfer of BNA Patents #1 is an out fraudulent conveyance, Declaration is filed herein as *Exhibit "O"*.

A.         RELIEF UNDER CIVIL CODE SECTION 3439.05.

EDAG seeks to avoid, extinguish, and set aside the transfers from BNA to BY-LTD, pursuant to Civil Code Section 3439.05 as follows:

"(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
(b) A creditor making a claim for relief under subdivision (a) has the burden of proving the elements of the claim for relief by a preponderance of the evidence."

What is undisputed under Section 3439.05 is the following:

1.         The assignment of 22 patents of BNA commencing (BNA Patents #1) in May, 2019 to August 11, 2021 in which the transferor is BNA and the transferee is BY-LTD who is the corporate owner of BNA and an insider.

2.         The transfer is without any consideration, but part of the transfer for the sole benefit of BY-LTD (See Declaration of Gong L. Chen, (Doc. # 30-2).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL**

3. The BNA Patents #1 have a value of between approximately $84,000,00 (Declaration of Volker Amelung)

4. The Debtor, i.e., BNA, was insolvent at that time or the Debtor became insolvent as a result of the transfer.

| | |
|---|---|
| October 5, 2018- Byton emails EDAG that they will miss the October 15th payment (Exhibit *"A"*, EDAG Emails) | |
| January 2019- Byton once again defaults on payments to EDAG under the TLDA (Doc. #10-4, Page 3, Final Arbitration Award) | |
| May 2019- Byton stops paying Tech Mahindra LLC (Doc. #36-1, Exhibit *"D"*, Tech Mahindra Complaint) | |
| Middle of 2019- Byton stops paying its suppliers, including EDAG (Exhibit *"B"* Page 231, Lines 9-15, most qualified witness, Kameswaran, Depo) | NA:495 Karaoke<br>Exec: 05/16/2019<br>Assignee: Byton Limited |
| | NA: 538 Display Screen<br>Exec: 06/23/2019<br>Assignee: Byton Limited |

BNA was insolvent at the time of the transfers pursuant to Section 3439.02 as follows:

"(a) A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets.

(b) A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence.

(c) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.

(d) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset."

Starting from October 2018, BNA stopped paying its suppliers. Upon non-payment of the suppliers, BNA is insolvent as a matter of law pursuant to Section 3439.02(b), and likewise accrual of bad listed on the Chronicle for the following dates (Per number):

**B. RELIEF UNDER CIVIL CODE SECTION 3439.04(a)**

EDAG seeks to avoid, extinguish and set aside the transfers of BNA Patents #1 from BNA to BY- LTD, pursuant Civil Code Section 3439.04 as follows:

" (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due"

Just as the relief under Section 3439.05, these facts are not in dispute:

1.      The assignment of 22 patents of BNA commencing in May, 2019 to August 11, 2021 in which the transferor is BNA and the transferee is BY-LTD (BNA Patents #1)

2.      The transfer is without any consideration, but part of the transfer for the sole benefit of BY-LTD (See Declaration of Gong L. Chen, ((Doc. # 30-2)

3.      The BNA Patents #1 have a value of approximately $84,000,000 (Declaration of Volker Amelung)

4.      The Debtor, i.e., BNA, was insolvent at that time or the Debtor became insolvent pursuant to Section 3439.02.

These are the additional facts:

A.      Gong L. Chen, Esq., was in charge and in control of the BNA and BY-LTD as follows:

"2. I have acted as Director of IP ("intellectual property") for the Byton group of companies, including Byton North America Corporation ("Byton NA"), since March 2018. During that time, I have overseen the Byton group of companies' intellectual property issues, including matters relating to Byton NA's United States patents and patent applications."  (Doc., 30-2), i.e. insider

B.      The transferee of the transfer is the corporate parent of BNA as follow:

""Plaintiff Byton North America Corporation submits, pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the following corporate disclosure statement: The parent corporation of Byton North America Corporation is Byton Limited, a privately-held Hong Kong company. No publicly-held corporation owns 10% or more of Byton North America Corporation's stock."  (Doc. 13, page 1, lines 1-5) (***Exhibit "M"***)

C.  These are the badges of fraud which match the contour of this case:

"b) In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:

(1)      Whether the transfer or obligation was to an insider:

Answer:  Byton Limited (Hong Kong) who is the corporate parent and owner of BNA.

(2)      Whether the debtor retained possession or control of the property transferred after the transfer:

Answer: Gong L. Chen, Esq., was in charge and control of the BNA and BY-LTD as follows:  "2. I have acted as Director of IP ("intellectual property") for the Byton group of companies, including Byton North America Corporation ("Byton NA"), since March 2018."

(3)     Whether the transfer or obligation was disclosed or concealed:

Answer:  The name of the holder and owner of the BNA Patents #1, i.e., the 22 patents is BYTON LIMITED on the records of the USPTO.

(4)     Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit:

Answer:  The transfer of the BNA Patents #1 from May 2019 to August 2021 in the following lawsuits, claims, non-payment of obligations all owed to third parties (see chart attached to Declaration of David J. Cook) which commenced from middle 2019.

(5)     Whether the transfer was of substantially all the debtor's assets:

Answer:  The BNA Patents #1, other than the IP, were the only assets, some IP in the hands of JAMA Software of unknown immediately value and somewhere, if at all, some $10,000,000.

(6)     Whether the debtor absconded:

Answer: On November 19, 2021, CT Corporation resigned as the agent for service of process of BNA. Doc. 36-1 Exhibit "A").  The building of 4201 Burton Way, Santa Clara, Cal, 95054 is now empty.  As of February 2021, the BNA was down to four employees, which was down from 550 employees.  BNA stopped paying its suppliers in mid  2021.  (Exhibit "B" Page 231, Lines 9-15)

(7)     Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred:

Answer: No consideration.

(8)     Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred:

Answer:  BNA was insolvent starting in the middle of 2020, and their afterward with a whole host of other creditors, including the $30m judgment owed to EDAG when the BNA stopped paying, and initiated arbitration proceedings in October 2019.

(9)     Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

Answer:  $25 mil for EDAG and about $1mil for Tech Mahindra LLC accrued close or at the near of the transfers which started in May of 2019.

The facts are basic:  Sometime about August, 2019 BNA announces that BNA ceased making payments to EDAG to the tune of about $25 mil About exactly that time, Gong L. Chen, a California attorney, commenced with a campaign that transfers out of the name of BNA and into the name of BY-LTD, a Hong Kong entity, some $100,000,000 value of patents, at a time when BNA was insolvent or rendered insolvent. and for no consideration. Other creditors are falling from trees.

**C.    THE TRANSFER OF THE MILLION DOLLAR PATENTS OF BNA, FACED WITH MILLIONS OF DEBT, TO AN OFFSHORE CORPORATE PARENT IS PER SE A FRAUDULENT WITH THE INTENT TO HINDER, DELAY, AND DEFRAUD AS MATTER OF LAW.**

Chen is a licensed California attorney, SBC #165139. In executing the 22 separate assignments that cemented the transfer of BNA Patents #1  from BNA to BY-LTD in the midst of BNA's financial crash and irretrievable collapse that leaves EDAG empty handed  (Doc. # 25, PAGE 5-6), Chen engaged in an action of moral turpitude as follow:

"Petitioner's conduct, although it did not harm his clients, nonetheless warrants discipline. (See 1 Witkin, Cal.Procedure (3d ed. 1985) Attorneys, § 408, pp. 459–460, and cases cited.) It is clearly established that participation in a scheme to defraud a client's creditors is a crime and subjects an attorney to discipline. ( *Allen v. State Bar* (1977) 20 Cal.3d 172, 178, 141 Cal.Rptr. 808, 570 P.2d 1226; Pen.Code, § 531.) In Townsend *v. State Bar* (1948) 32 Cal.2d 592, 197 P.2d 326, an attorney advised his client to make a conveyance of certain real property for  the purpose of delaying and defrauding creditors. This conduct was found to violate sections 6103 and 6106 (id., at pp. 595–596, 197 P.2d 326), and in light of the attorney's prior disciplinary record we ordered him actually suspended for three years. (Id., at p. 598, 197 P.2d 326.) In *Yokozeki v. State Bar* (1974) 11 Cal.3d 436, 445, footnote 4, 113 Cal.Rptr. 602, 521 P.2d 858, we noted that the attorney "participated in a scheme to defraud [a client's] potential judgment creditors, which is a crime (Pen.Code, § 531), and a proper subject for disciplinary action." *Coppock v. State Bar,* 44 Cal. 3d 665, 683–84, 749 P.2d 1317, 1328 (1988),

This fraudulent conveyance when the purpose is to put the million dollar BNA Patent #1 is a crime pursuant to Penal Code Section 531:

"Every person who is a party to any fraudulent conveyance of any lands, tenements, or hereditaments, goods or chattels, or any right or interest issuing out of the same, or to any bond, suit, judgment, or execution, contract or conveyance, had, made, or contrived with intent to deceive and defraud others, or to defeat, hinder, or delay creditors or others of their just debts, damages, or demands; or who, being a party as aforesaid, at any time wittingly and willingly puts in, uses, avows, maintains, justifies, or defends the same, or any of them, as true, and done, had, or made in good faith, or upon good consideration, or aliens, assigns, or sells any of the lands, tenements, hereditaments, goods, chattels, or other things before mentioned, to him or them conveyed as aforesaid, or any part thereof, is guilty of a misdemeanor."

This is the putative justification:

"The patent transfers identified by EDAG were made pursuant to a long-standing inter-company arrangement which stipulated that Byton Limited would be the ultimate owner of all

1   patents granted by patent offices around the world (other than patents granted by the Patent Office of
2   the People's Republic of China) based on any patent applications filed in the name of any of the
    Byton group of companies, including Byton NA." (Doc. # 30-2, Page 2, para. 3-4, lines 10 to 26,
3   and Page 3, lines 1-3).

4          This putative justification is to "re-title" the patents in the name of BY-LTD as the "ultimate
5   owners of all patents granted by patent offices around the world."  Omitted by Chen, an attorney of
6   28 years, is that BY-LTD is NOT the "ultimate owner" who plans to pay the vast debts owed by the
7   patent holders, i.e., BNA "around the world."  This was not an error because "I was personally
    involved in the preparation of the documentation for each of these patent transfers."  (Doc. # 30-2,
8   Page 2, Para. 3-4, lines 10 to 26, and Page 3, lines 1-3), and " I have acted as Director of IP
9   ("intellectual property") for the Byton group of companies, including Byton North America
10  Corporation ("Byton NA"), since March 2018. During that time, I have overseen the Byton group of
    companies' intellectual property issues, including matters relating to Byton NA's United States
11  patents and patent applications."

12         Mr. Chen is at the core of BY-LTD as follows: "I am the Director of Intellectual Property for
13  the Byton Group of companies.  I have been employed by Byton North America Corporation since
14  March 20218. I reported to Matt Barter, the Byton's group of General Counsel and Byton Executive
    Leadership Team Member, until his departure from Byton in or about September 2020.  As a result
15  of my role with the Byton group of companies, and my review of corporate records and statement
16  from current and former employees with personal knowledge, I could and would competently testify
17  to all of the following statements."  (Supplemental Declaration of Gong L Chen, *Breitfeld vs.  Byton*
18  *North America, etc,* Santa Clara County Santa Clara County Superior Court, case # 21CV376532,
19  Page 1, Paragraph 1, lines 2 to 8).

20         The intent evidenced by the statements of Chen is to re-title the patents in the name of an
21  offshore (PRC) parent entity (BY-LTD), without any value, for the benefit of the BY-LTD and
22  ostensibly itself inaccessible to the creditors of BNA who, except the IP in the hands of JAMA
    Software, and the $10,000,000 somewhere awash or just gone, is stone cold broke.
23
24         The conduct of Chen, and BNA, and BY-LTD, is contemptuous, arrogant, and disdainful in
    the virtual harvesting of worldwide of valuable patents without reciprocal recompense of payment
25  due the patent holders and payment of their creditors, i.e., EDAG,  Tech Mahindra LLC, and Steven
26  Ivsan for his $20,000 wage claim, and were BY-LTD is offshore.
27         These are facts that evidence "intent to hinder, delay, and defraud" under Civil Code Section
28  3439.04(a)(1) but proof of the finding of intent to hinder, delay and defraud is the specialized legal

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A
RECEIVER TO MARSHAL**

training in 22 instances at the direction of BY-LTD by harvesting a million down bounty of patents for the benefit of an offshore corporate parent for nothing in return.

**D.    BY-LTD IS IN HONG KONG OR ELSE WHERE, IN THE PRC**

BY-LTD's apparent local is Hong Kong:  "7. Hong Kong, Byton's Ltd's corporate residence, is where the physical evidence and witness regarding Mr. Breitfeld 2015 Employment Contract and 2018 Amendments are primarily located." (Breitfeld vs. Byton etc., Santa Clara County Superior Court, Case # 21CV376532, Page 2, Par 7, lines 9-11).

According to Matt Barter, General Counsel of BNA, BY-LTD is domicile is PRC:

" 4.    Byton Limited is a Hong Kong company which has its registered office at 22/F Tai Yau Building, 181 Johnston Road, Wanchai, Hong Kong. Byton Limited has been duly organized under Hong Kong law since 2016.

5.    From 2016 until present, Byton Limited's global headquarters have been located at Nanjing, China.

6.    Byton Limited has no offices, plants, or facilities in the United States.  (Declaration of Matt Barter, *Byton North America vs. Iconiq Motors etc.* USDC CD CA, Case number: 2:19-cv-10563-DMG-JEM, Doc. 38-2. Page 1, Para. 4, lines 25 - 26, page 2, Para. 5-6, liens line 1-3)

**E.    COMMON LAW FRAUDULENT CONVEYANCE.**

"Traditionally, creditors could bring fraudulent transfer cases under common law. (See, e.g., *Macedo*, *supra*, 86 Cal.App.4th at p. 1051, 104 Cal.Rptr.2d 1; *Wisden v. Superior Court*, *supra*, 124 Cal.App.4th at p. 758, 21 Cal.Rptr.3d 523 [UVTA does not supersede common law of fraudulent transfer].   ." . . . . . UVTA is not intended to replace such common law but merely supplement it, we conclude Berger may bring such a claim under common law." *Berger v. Varum*, 35 Cal. App. 5th 1013, 1019, (2019).  See also "In re Cass, 476 B.R. 602, 614–15 (Bankr. C.D. Cal. 2012) , aff'd, No. ADV 12-1235-RK, 2013 WL 1459272 (B.A.P. 9th Cir. Apr. 11, 2013), aff'd, 606 F. App'x 318 (9th Cir. 2015) as follows:

**"**The law of creditors' rights regarding fraudulent transfers is a bit of a patchwork in this area. A creditor has remedies under common law as well as the California Uniform Fraudulent Transfer Act ("CUFTA"), which was adopted on January 1, 1987. Both case law and the CUFTA recognize that remedies available to a creditor are cumulative."

**F. EDAG CAN PROCEED TO VACATE THE CONVEYANNCE OF THE BNA PATENTS #1 IN THE ENFORCEMENT OF EDAG'S ENFORCEMENT OF THE JUDGMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL**

EDAG is not obligated to bring an independent to vacate, extinguish or avoid a fraudulent conveyance when under Civil Code Section 3439.7(c) that judgment can vacate, extinguish and avoid transfer in the process of enforcing the judgment as follows:

"(c) If a creditor has obtained a judgment on a claim against the debtor, the creditor may levy execution on the asset transferred or its proceeds."

The code comments are as follow:

"The provision in subdivision (c) for a creditor to levy execution on a fraudulently transferred asset continues the availability of a remedy provided in Section 9(b) of the Uniform Fraudulent Conveyance Act.  A creditor can levy on a "transferred assets" and the court can extinguish the conveyance as follow:

"The district court provided in the judgment "that pursuant to Section 3439.07(c) of the California Civil Code, plaintiffs Stephen White, Read Schrotel, and Adonis Management Company, Inc. may execute their judgments on the assets transferred by and between Somen Banerjee and Irene Banerjee, or on the proceeds thereof." The district court did not abuse its discretion in granting relief pursuant to § 3439.07(c) rather than § 3439.07(a) or § 3439.07(b)(1), as the plaintiffs would have preferred.  . . . . . ." *Schrotel v. Banerjee*, 163 F.3d 607 (9th Cir. 1998)

A creditor can seek to avoid and extinguish a fraudulent conveyance in execution under a judgment:

""The conveyance to defendant being void as against Alvarado's creditors, the creditors were authorized to levy upon and sell the property as if no conveyance had ever been made by their debtor. Freem. Ex'ns, § 136, and authorities there cited. This, the creditor under whom the plaintiff claims did, and by virtue of that sale the interest of Alvarado in the property became vested in the plaintiff."  *Bull v. Ford*, 66 Cal. 176, 177, 4 P. 1175, 1176 (1884)

More of the same:

"The fraudulent intent being established, the transfer of the property as against Herrick, the holder of the judgment, was void. Section 3439, Civ.Code. Being void, the property remained that of Kate Cockran, the judgment debtor, and Herrick was authorized to levy upon and sell the same as though no transfer had been attempted. 1 Freeman on Executions, § 136; Bull v. Ford, 66 Cal. 176, 4 Pac. 1175; Bekins v. Dieterle, 5 Cal.App. 690, 91 Pac. 173." *Clifton v. Herrick*, 16 Cal. App. 484, 487, 117 P. 622, 624 (Cal. Ct. App. 1911)

**(1).    THE BNA PATENT # 1 ARE VOID TRANSFERS, I.E. NO EFFECT AND SHOULD BE DECLARED A NULLITY WHICH WOULD ENABLE THE RECEIVER TO PROVIDE "GOOD AND MARKETABLE TITLE" TO A BUYER.**

A fraudulent conveyance is void and not voidable in favor the creditors as follows:

"California case law has well established that a judgment lien attaches to real property that is fraudulently transferred by treating the transfer as void in the first place, and not just voidable. *Bull v. Ford,* 66 Cal. 176, 177, 4 P. 1175 (1884) ("The conveyance to defendant being void as against Alvarado's creditors, the creditors were authorized to levy upon and sell the property as if no conveyance had ever been made by their debtor.") (citations omitted); *Hassen v. Jonas,* 373 F.2d

880, 883 (9th Cir.1967) ("**The effect of [§ 3439.07] that transfers within the statute are fraudulent is that such transfers are deemed void as to creditors.");** *First National Bank of Los Angeles v. Maxwell,* 123 Cal. at 371, 55 P. 980 (**holding that the title and ownership of the property remains in the fraudulent grantor as fully as though no transfer had been attempted);** *McGee v. Allen,* 7 Cal.2d 468, 473, 60 P.2d 1026 (1936) (holding that a judgment is a lien on property of the judgment debtor fraudulently conveyed) (citation omitted); *Liuzza v. Bell,* 40 Cal.App.2d 417, 429, 104 P.2d 1095 (1940) ("In fraudulent transactions, for the protection of creditors it has been held that ownership and title remain in the grantor."); *Kinney v. Vallentyne,* 15 Cal.3d at 479 n. 6, 124 Cal.Rptr. 897, 541 P.2d 537 ("If the transfer is in fraud of the creditor, the creditor may follow the property into the hands of the transferee even if the transfer took place before the [judgment] lien attached."). Because the fraudulent transfer is disregarded, a perfected judgment lien reaches the interest of a judgment debtor in property that has been fraudulently transferred to another—even if the transfer took place before the judgment lien attached." *In re Cass,* 476 B.R. 602, 614–15 (Bankr. C.D. Cal. 2012), aff'd, No. ADV 12-1235-RK, 2013 WL 1459272 (B.A.P. 9th Cir. Apr. 11, 2013), aff'd, 606 F. App'x 318 (9th Cir. 2015).

A fraudulent conveyance is void:

"Regardless of whether SHST had rightful ownership of the MOVA Assets based on the February 2013 transaction, VGH's subsequent acquisition of those rights through a fraudulent transfer in December 2015 would render its purchase void and therefore defeat its claim for declaratory relief with respect to ownership. See In re Cass, 476 B.R. 602, 614 (Bankr. C.D. Cal. 2012), aff'd, No. ADV 12-1235-RK, 2013 WL 1459272 (B.A.P. 9th Cir. Apr. 11, 2013), aff'd, 606 Fed.Appx. 318 (9th Cir. 2015) ("It is a deeply rooted principle of case law that a fraudulent transfer is inherently wrong and, is thus, void."). For that reason, adjudicating these claims at the same time will also promote judicial economy. *'Virtue Glob. Holdings Ltd. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 4259213, at *6 (N.D. Cal. Aug. 11, 2016)

More of the same:

"Under these findings, the conveyance was void as against respondents, and as to their judgment the title and ownership of the property remained in M. Bekins as fully as though no transfer had been attempted. "A void thing is nothing." The deed was a nullity. "As against the fraudulent transferee, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution." 1 Freeman on Executions, § 136. In Bull v. Ford, 66 Cal. 176, 4 Pac. 1175, the court, in discussing a transfer made with fraudulent intent, said: "The conveyance to defendant being void, as against Alvarado's creditors, the creditors were authorized to levy upon and sell the property as if no conveyance had ever been made by their debtor." Judson v. Lyford, supra; First Nat. Bank v. Maxwell, 123 Cal. 360, 55 Pac. 580, 69 Am.St.Rep. 64;69 Am.St.Rep. 64; Hemenway v. Thaxter (Cal.Sup.) 90 Pac. 116; Bull v. Bray, 89 Cal. 300, 26 Pac. 873, 13 L.R.A. 576." *Bekins v. Dieterle,* 5 Cal. App. 690, 694–95, 91 P. 173, 175 (Cal. Ct. App. 1907

More of the same:

"To so employ it under the facts of this case was, we believe, a misapplication of the quoted section. The effect of the legislative declaration that transfers within the statute are fraudulent is that such transfers are deemed void as to creditors. Heffernan v. Bennett & Armour, 110 Cal.App.2d 564, 584, 243 P.2d 846 (1952). The transfer being void, a creditor can reach the property as though the

transfer had not been made. Bekins v. Dieterle, 5 Cal.App. 690, 91 P. 173 (1907). Where the person responsible for the fraudulent transfer has himself remedied the situation by returning the transferred property, the statutory purpose has been satisfied." *Hassen v. Jonas,* 373 F.2d 880, 883 (9th Cir. 1967)

With "good and marketable title" at hand the receiver can sell the BNA PATENTS TOTAL to anyone who is interest in designing and building EV Vehicles, and all for the benefit of the climate.

## IX.   A RECEIVER IS THE SOLE REMEDY TO SELL THE PATENTS.

Patents are subject to enforcement through a receivership.  *Peterson v. Sheriff of City & Cty. of San Francisco*, 115 Cal. 211, 213, 46 P. 1060 (1896) held that intellectual property, principally consisting there of a patent, is not reachable by way of a Writ of Execution but reachable by a receiver:

> ". . . And if a creditor of the patentee can have the patent right subjected to the satisfaction of his judgment at all, it can be done only by a court of equity, acting *in personam* and compelling the patentee to make an assignment. . . ."

*Ager v. Murray,* 105 U.S. 126, 130-131 (1881) stated as follows:

> "There are, indeed, decisions in the Circuit Courts that an assignee in insolvency, or a receiver, of all the property of a debtor, appointed under the laws of a State, does not, by virtue of the general assignment or appointment merely, without any conveyance made by the debtor or specifically ordered by the court, acquire a title in patent-rights. *Ashcroft* v. *Walworth*, 1 Holmes, 152; *Gordon* v. *Anthony*, 16 Blatchf. 234. But in *Ashcroft* v. *Walworth* Judge Shepley clearly intimated that the courts of the State might have compelled the debtor to execute such a conveyance. And the highest courts of New York and California have affirmed the power, upon a creditor's bill, to order the assignment and sale of a patent-right for the payment of the patentee's judgment debts. *Gillette* v. *Bate*, 86 N. Y. 87; *Pacific Bank* v. *Robinson*, 57 Cal. 520. In *Carver* v. *Peck* (131 Mass. 291), the court reserved the expression of any opinion upon that question, because unnecessary to the decision. And the assumption in *Cooper* v. *Gunn, &c.* (4 B. Mon. (Ky.) 594), that an author could not be deprived, against his will, and in favor of any of his creditors, of any of the rights secured to him by the copyright acts, was merely *obiter dictum*, unsupported by reasoning or authority. *Ager v. Murray*, 105 U.S. 126, 131, 26 L. Ed. 942 (1881)."

The remedy therefore is the appointment of a receiver of the BNA PATENTS.[2]  Likewise, see *Inventions Corp. vs. Hobbs*, 244 F.430, 436 (1917), in which the court held that the court of equity has the power to order an assignment to be executed by a proper person.  *See also, McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 495 (1943) where the court stated as follows:

---

[2]   David J. Cook, *Post-Judgment Remedies in Reaching Patents, Copyrights and Trademarks in the Enforcement of A Money Judgment*, 9 Nw. J. Tech. & Intell. Prop. 128 (2010).

' The term 'legal representatives' used in R.S. Sec. 4898 is broad enough not only to include a master or a trustee appointed by a court possessing adequate equity power but also a trustee under a trust indenture, a guardian of property, or an executor or administrator, an assignee of an insolvent debtor, or some other officer designated to assign a patent. The tests are the powers of the court and the extent of the authority conferred by it on its officer. In the present state of the law, the authority to assign a patent must come from some proceeding akin to a creditor's bill or a petition seeking the aid of the equity side of the court to enforce a judgment at law, through the appointment of a legal representative. Our inquiry, therefore, must be directed to the question as to whether the Court of Common Pleas of Allegheny County possessed the equitable power to assign the patent to McClaskey by the sheriff at the sale we have described*." McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 495 (3d Cir. 1943)

In *Kenyon v. Automatic Instrument Co.*, 160 F.2d 878, 884 (1947), the court held that the receiver can execute an assignment on behalf of the debtor.

## X.    BNA IS ADMITTING LOOTING THE EDAG IN THE HANDS JAMA SOFTWARE PURSUSNT TO C.C.P. ECTIN 1287.6

BNA and affiliates seek to loot the intellectual property which EDAG provided under their agreement as follows:

"From 2016 to 2019, EDAG provided engineering services to BYTON as part of BYTON's project to design and manufacture the all-electric M-BYTE vehicle. Final Award, p. 6-7. In 2018, BYTON stopped paying EDAG's invoices, forcing EDAG to initiate the underlying arbitration pursuant to the parties' contract. Final Award p. 7."(Doc. #25, page 5)

"Paragraph 6.2b of the TDLA requires EDAG to give BYTON all associated intellectual property rights for EDAG's deliverables, in exchange for BYTON's obligation to pay certain fees. BYTON breached the parties' agreement when it failed to pay those fees. As the Final Award finds, BYTON owes EDAG over 23 million Euros in unpaid fees. Arbitration Award, p. 7-21, 28.

The evidence shows that BYTON's intellectual property for the M-BYTE vehicle is currently in the possession, custody, and control of Jama Software ("Jama"). BYTON used Jama's browser-based database to store all of BYTON data's and build BYTON's product, i.e. the MBYTE vehicle." (Doc. # 25, page 5)

"Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts. On August 20, 2021, automotive journalists reported that BYTON's M-BYTE was photographed undergoing road tests in Hainan, China, and EDAG has produced evidence that the test vehicle is the car that EDAG designed and that it contains the work that EDAG performed, and for which EDAG has not been paid. EDAG was unaware of this development until it was discovered in August.

On September 15, 2021, EDAG also learned that BYTON and a Chinese affiliate had been actively working to transfer the IP for the M-BYTE-possibly the only thing of value left at BYTON North America-from a U.S.-based cloud storage facility to a China-only server.

If Byton is successful in moving its assets overseas there will be no assets in the United States that can be used to satisfy the €23.4 million judgment won in the arbitration." (Doc. #25, Page 4)

"In the absence of an injunction, BYTON will be able to access the intellectual property held by Jama and transfer that valuable asset to its affiliate in China. It would be free to remove all intellectual property from the United States making it impossible for EDAG to recover what it is owed. Having obtained the benefit of its bargain with EDAG without making payments totaling more than 20 million Euros, BYTON would have no remaining incentive to comply with the Arbitrator's order or the resulting judgment.

The loss of the ability to monetize EDAG's work product, and the associated inability to recover a judgment from BYTON, constitutes irreparable harm. See eBay, Inc. v. Bidder's Edge, Inc., 100 F.Supp.2d 1058, 1066 (N.D.Cal.2000) ("eBay") ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief."); MCA Recs., Inc. v. Newton-John, 90 Cal. App. 3d 18, 23 (1979)" (Doc. # 25. page 6)

No doubt the BNA IP, fused with EDAG work product, is headed to the PRC:

"In the absence of an injunction, BYTON will be able to access the intellectual property held by Jama and transfer that valuable asset to its affiliate in China. It would be free to remove all intellectual property from the United States making it impossible for EDAG to recover what it is owed. Having obtained the benefit of its bargain with EDAG without making payments totaling more than 20 million Euros, BYTON would have no remaining incentive to comply with the Arbitrator's order or the resulting judgment. " (Doc. 25, Page 6)

The Chinese affiliate is most likely BY-LTD which would be consistent with the statement from Gong L. Chen when he stated the following:

" . . . . . . . The patent transfers identified by EDAG were made pursuant to a long-standing inter-company arrangement which stipulated that **Byton Limited would be the ultimate owner** of all patents granted by patent offices around the world (other than patents granted by the Patent Office of the People's Republic of China) based on any patent applications filed in the name of any of the Bytom group of companies, including Bytom NA.

Judge Cahill found that BNA seeks to transfer the EDAG IP to the Chinese affiliate which is for the sole purpose of "If Byton is successful in moving its assets overseas there will be no assets in the United States that can be used to satisfy the €23.4 million judg[e]ment won in the arbitration." (Doc. #25, Page 4).   If nothing else in this case, the success in transferring the EDAG IP in the hand of BNA to the Chinese Affiliate is a fraudulent conveyance pursuant to Section 3439.05 and 3439.04(a) with all of the badges of fraud under Section 3439.04(b) given the lack of any value in return, that the Chinese Affiant has paid nothing, and BNA has a and remains insolvent, and other absconded from the United States

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL**

## XI.    APPOINTMENT OF A RECEIVER.

EDAG moves this court for the appointment of Michael S. Warda as receiver under C.C.P. § 708.620, to take possession of the BNA PATENTS TOTAL. Judgment creditor likewise is entitled to proceed under C.C.P. § 564, and moreover FRCP 66. EDAG no longer needs to show "exhaustion of remedies" otherwise as required.  The Legislative Comment states as follows:

> "Section 708.620 supersedes portions of Section 564 that authorize the appointment of a receiver to enforce a judgment.  It eliminates as a prerequisite to the appointment of a receiver a showing that a writ of execution has been returned unsatisfied or that the judgment debtor refuses to apply property in satisfaction of the judgment as formerly required by subdivision 4 of Section 564.  See *Olson v. Comora*, 73 C.A.3d 642, 647-649; 140 C.R. 835 (1970).

> Under Section 708.620, a receiver may be appointed where a writ of execution did not reach certain property and other remedies appear inadequate.  A receiver may be appointed in examination proceedings under Article 2 (commencing with Section 708.110) where the requisite showing is made under this section.  Cf. *Tucker v. Fontes*, 70 C.A.2d 768, 771-772; 161 P.2d 697, 699 (1945); *Medical Finance Associates v. Short*, 36 C.A.2d Supp. 745, 747; 92 P.2d 961, 962 (1939) (appointment of a receiver and supplementary proceeding under former law.)"

The appointment of a receiver is the appropriate remedy.  *See In re James Constant, James Constant v. Advanced Micro-Devices, Inc.,* 12 F.3d 1105 (9th Cir. 1993) [unpublished opinion], 1993 WL 501665, in which the court stated:

> "A district court has authority to enforce its money judgment in accordance with the practice and procedure of the state in which it sits. Fed.R.Civ.P. 69(a); Duchek v. Jacobi, 646 F.2d 415, 416 (9th Cir.1981). Under California law, all property of the judgment debtor is subject to enforcement of a money judgment, including intangible property such as patents and copyrights. Cal.Civ.Proc.Code Sec. 695.010; Pacific Bank v. Robinson, 57 Cal. 520, 524 (1881). The proper procedure to execute on a patent is to obtain an order of the court directing the patent holder to assign the patent. Peterson v. Sheriff of San Francisco, 115 Cal. 211, 213 (1896). The assignment need not be executed personally by the patentee; the court may authorize a court officer to execute the assignment and the assignment will be binding on the patentee. Id.; Zanetti v. Zanetti, 77 Cal.App.2d 553, 559 (1947)".

> Here, defendants moved for an order to enforce the judgment against Constant's patents and copyrights, which represented his only assets. The district court granted the motion and entered an order directing Constant to assign the patents and copyrights to the U.S. marshal. The order further provided that if Constant failed to do so within seven days, the U.S. marshal was directed to execute an assignment which would have the same binding effect as if executed by Constant. This order was within the district court's authority to enforce its judgment, see Duchek, 646 F.2d at 416; Pacific Bank, 57 Cal. at 524, and was carried out in compliance with the applicable state procedure and practice, see Peterson, 115 Cal. at 213; Zanetti, 77 Cal.App.2d at 559. We have considered Constant's numerous arguments on appeal and find them to be without merit. Accordingly, we affirm the district court's order assigning Constant's patents and copyrights to the U.S. marshal to satisfy the court's judgment."

The goal of this receivership is the orderly sale of the BNA PATENTS TOTAL pursuant to C.C.P. § 568.5.  At this point in the proceedings, EDAG seeks an order appointing the receiver. Once the receiver is appointed, EDAG will direct the receiver to establish a protocol for a sale and set the matter on the court's calendar for a motion for a sale which would start with a credit bid, and therefore credit overbids.  However, at this point, before the court, EDAG moves the court for the appointment of a receiver.

## XII.  QUALIFICATIONS OF MICHAEL S. WARDA.

Michael S. Warda is an experienced trustee and receiver, and his Resume is attached to his declaration. EDAG seeks an order limiting the receiver's bond to $10,000.

Mr. Warda's hourly rate is $450 an hour (see paragraph 9 of Michael Warda Declaration, page 2, lines 17-19).

## XIII.  DUTIES AND RESPONSIBILITIES OF THE RECEIVER.

The duties and responsibilities of the receiver under C.C.P. § 568 are set forth in the Notice, commencing at and incorporating on Page 2, Lines 19-27, Page 3, Page 4, and Page 5, Lines 1-2.

Upon the appointment of Mr. Warda, Mr. Warda would execute an oath under C.C.P. § 567, in which the receiver would be sworn to perform the duties faithfully and provide an undertaking in favor of the State of California.

## XIV.  COURT KEEPS AND RETAINS CONTINUING JURISDICTION.

EDAG requests that the court keeps and retains continuing jurisdiction to issue any orders, judgments, or decrees as may be necessary to facilitate the administration of this receivership estate. Not only does this court have the power to appoint a receiver under the regime allowed under FRCP 69(a), but moreover, under the court's broad plenary powers under FRCP 68.

As the California courts have held, a court has broad supervisory control over the management of a receiver and the disposition of assets. *See People v. Riverside Univ.*, 35 Cal. App. 3d 572, 583-84, 111 Cal. Rptr. 68, 75-76 (Ct. App. 1973), in which the court stated as follows:

> "  . . . .Consequently, unless regulated by statute, the court has full power to order the receiver to dispose of property in such a manner as the court may deem to be for the best interest of the parties concerned and the advice of the receiver and his opinion in regard to the value of the property, the manner, time and place of its disposition are entitled to great respect and weight.

1   **XV.    CONCLUSION.**

2          After entry of judgment and without the restrains of FRCP 62(a) or 28 USC Section 1963,

3   EDAG seeks to enforce the judgment in the amount of $30,231,689.48 as December 13, 2021.

4          EDAG seeks to liquidate the judgment debtor's interest in the BNA PATENTS  TOTAL.

5   The sole remedy is the appointment of a receiver, as authorized under *Ager v. Murray*.  EDAG seeks

6   an order which entitles the receiver to proceed with a sale, which would include a credit bid, in part,

7

8   by this judgment creditor, as the initial offer.

9   Dated: December 14, 2021                    Respectfully submitted,

10                                             COOK COLLECTION ATTORNEYS PLC.

11                                        By:    /s/ David J. Cook

12                                             DAVID J. COOK, Esq.
                                              Attorneys for Petitioner EDAG
13                                             ENGINEERING GMBH

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF A RECEIVER TO MARSHAL**