**David J. Cook (SBN 60859)**
**COOK COLLECTION ATTORNEYS, PLC**
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

**LEWIS & LLEWELLYN LLP**
**Evangeline A.Z. Burbidge (Bar No. 266966)**
eburbidge@lewisllewellyn.com
**Marc R. Lewis (**Bar No. 233306)
mlewis@lewisllewellyn.com
**Kenneth M. Walczak** (Bar No. 247389)
kwalczak@lewisllewellyn.com
**Bradley E. Estes** (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:   (415) 390-2127

Attorneys for Petitioner EDAG Engineering GmbH,
a corporation organized and existing under the laws
of the Republic of Germany

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>Petitioner,<br><br>v.<br><br>BYTON North America Corporation,<br><br>Respondent | Case No. 3:21-cv-04736-EMC<br>**EX PARTE APPLICATION FOR ISSUANCE OF THE FOLLOWING:  (A) TURNOVER OF INTELLECTUAL PROPERTY OF BYTON NORTH AMERICA CORP. ("BNA") to the U.S. MARSHAL ED CA ("MARSHAL") PURSUANT TO C.C.P. SECTION 699.040(a)&(b); (B) APPOINT A RECEIVER AS SURROGATE FOR BNA TO DIRECT JAMA SOFTWARE AS CUSTODIAN OF BNA IP TO TURNOVER TO THE MARSHAL, AND SALE BY MARSHAL PURSUANT TO C.C.P. SECTION 701.520(b) .** |

(Judge: Honorable Edward M. Chen [Video-ZOOM hearing)

Petition Filed: June 23, 2021

TO BYTON NORTH AMERICA, a Delaware corporation ("BNA"), Byton Limited ("BY-LTD"), and to their attorneys and each of them:

EDAG ENGINEERING GMBH, a corporation organized and existing under the law of the Republic of Germany, ("EDAG") hereby seeks the following relief the following relief:

A.      Turnover of Intellectual Property of Byton North America Corporation ("BNA") in the hands of JAMA SOFTWARE INC. (as a conduit, bailee and custodian, and in possession ) to the U.S. Marshal, Eastern District of California ("Marshal") pursuant to C.C.P. Section 699.040(a)&(b)

B.      Appoint Michael Warda as a receiver under C.C.P Section 699.070(a) to act as the surrogate and designee to direct Jama Software Inc., who is the conduit, bailee and custodian and in possession of the BNA IP, to turn over the BNA IP to the Marshal, and  proceed with a Marshal's sale thereof under C.C.P. Section 701.520(a)(3) [general intangible under Section 700.170 (general intangible subject to a levy),] or, alternatively  by a sale by the Receiver under C.C.P. Section 699.070 (b), FRCP 66, C.C.P. Section 708.620, Section 564, 568 and 568.5 etc.

The basis hereof is that Jama Software Inc. ("Jama") is the conduit, bailee and custodian and in the possession of the BNA IP intellectual property as follows:

"Paragraph 6.2b of the TDLA requires EDAG to give BYTON all associated intellectual property rights for EDAG's deliverables, in exchange for BYTON's obligation to pay certain fees. BYTON breached the parties' agreement when it failed to pay those fees. As the Final Award finds, BYTON owes EDAG over 23 million Euros in unpaid fees. Arbitration Award, p. 7-21, 28.
The evidence shows that BYTON's intellectual property for the M-BYTE vehicle is currently in the possession, custody, and control of Jama Software ("Jama"). BYTON used Jama's browser-based database to store all of BYTON data's and build BYTON's product, i.e. the MBYTE vehicle." (Order Granting Claimant EDAG's Motion for Preliminary Injunction," Doc. #25, Page 5 ("November 8 Order") [collectively "BNA IP")[1]

An arbitration award, which is not confirmed, is a contract between the parties. C.C.P. Section 1287.6. ["An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration."], and therefore admissible under FRE 801(d)(3)(A) & (D).

EDAG has a basis of good cause as follows:

---

[1]  The BNA IP is subject to a more specific description thereof which would be attached to the subsequent orders, decrees, and judgments of this court.

"Nonetheless, EDAG has now, in its moving papers in this Motion, has produced evidence that BYTON and a Chinese affiliate have spent the last nine months attempting to regain access to the Jama database and the intellectual property EDAG created. On September 1, 2021, EDAG learned that BYTON had paid all past due invoices to Jama several months earlier. By paying for a year of access to Jama's services, BYTON obtained access to EDAG's data.

These actions have resulted in the possibility of Byton being able to circumvent portions of the TOLA, which expressly states that BYTON may only to receive intellectual property rights by paying EDAG. BYTON now has access to intellectual property it does not own, and for which it has not paid.

Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts. On August 20, 2021, automotive journalists reported that BYTON's M-BYTE was photographed undergoing road tests in Hainan, China, and EDAG has produced evidence that the test vehicle is the car that EDAG designed and that it contains the work that EDAG performed, and for which EDAG has not been paid. EDAG was unaware of this development until it was discovered in August.

On September 15, 2021, EDAG also learned that BYTON and a Chinese affiliate had been actively working to transfer the IP for the M-BYTE-possibly the only thing of value left at BYTON North America-from a U.S.-based cloud storage facility to a China-only server.
If Byton is successful in moving its assets overseas there will be no assets in the United States that can be used to satisfy the €23.4 million judgement won in the arbitration." (*Supra*, Page 4)

EDAG seeks an order under Section 699.040(a)&(b) and C.C.P. Section 699.070(a) which is directed at BNA (not third parties) to turn and hand over BNA IP to the Marshal or Receiver, and given that BNA will be and is uncooperative (or inert, defunct, and insolvent), that the Court appoint a receiver under Section 699.070(a), Section 708.620 and FRCP 66, to act in BNA's place as surrogate and designee to execute all instruments to facilitate the turnover of the BNA IP to the Marshal. Upon receipt by the Marshal, EDAG will proceed with a Marshal's sale of the BNA IP under Section 701.520(b), and the court's inherent equitable powers under Section 699.070(a) and equitable powers under FRCP 66.

This Ex Parte Motion is based on the Order Granting Claimant EDAG's Motion for Preliminary Injunction, Doc. #25, Page 5 ("November 8 Order"), the Declaration of Gong L. Chen (Doc. # 30-2), Declaration of Daniel I. Kirchert (*Exhibit "A"*), the Order lifting the seal of records (Doc. # 43), the Order to confirm the Final Award and the Judgment (Doc. # 49), the Order Appointing California Secretary of State pursuant to Corporations Code Section 1702 (a) (Doc. # 44), the Order appointing Process Servers instead of the U.S. Marshal under Rule 4.1(a) (Doc. # 43), Order lifting the 30 days under 28 U.S.C. Section 1963 (Doc. # 50), all matters upon which the court may take judicial notice pursuant to FRE 201, all papers, pleadings and other matters on file

herein, and all oral and written evidence and argument at the hearing hereof.

Dated: December 20, 2021                    Respectfully submitted,

COOK COLLECTION ATTORNEYS PLC

By:   /s/ David J. Cook
 David J. Cook, Esq.
Attorneys for Petitioner EDAG
ENGINEERING GMBH

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR ISSUANCE OF THE FOLLOWING:  (A) TURNOVER OF INTELLECTUAL PROPERTY OF BYTON NORTH AMERICA CORP.("BNA") to the U.S. MARSHAL ED CA ("MARSHAL") PURSUANT TO C.C.P. SECTION 699.040(a)&(b); (B) APPOINT A RECEIVER AS SURROGATE FOR BNA TO DIRECT JAMA SOFTWARE AS CUSTODIAN OF BNA IP TO TURNOVER TO THE MARSHAL, AND SALE BY MARSHAL PURSUANT TO C.C.P. SECTION 701.520(b) (Collectively "Receiver LEVY Motion").**

## I.  RELIEF SOUGHT

### A.  BRIEF INTRODUCTION

EDAG ENGINEERING GMBH, a corporation, existing under the law of the Republic of Germany ("EDAG") has recovered judgment against BYTON North America, a Delaware Corporation, ("BNA") on December 13, 2021 in the amount of $30,231,689.48 (Doc. # 49).  Upon hearing, the court has lifted the stay under FRCP 62(a) and the stay registering the judgment in other Districts under 28 U.S.C Section 1963, EDAG seeks to enforce the judgment. EDAG can engage a process server under Rule 4.1(a) to levy in substitution of the U.S. Marshal. (Lifting the 30 days stay under FRCP 62) relief under 28 USC Sec. 1963.(Doc. # 43, 44, 45, 49, & 50 etc.).

BNA is now defunct, insolvent and fled.  (Declaration of Tony Klein (Doc. #42-1 Exhibit "B" ), Order for service upon the Secretary of State (Doc. # 44), the $30mil judgment (Doc. #49), the lifting of the Seal of documents (Doc. # 43), the unpaid Labor Judgment (Doc. 36-1 Exhibit "F"), the locale of Daniel I. Kirchert in Hong Kong (*Exhibit "A"*). BNA therefore lacks any standing or interest in retaining the BNA IP when BNA is stone cold non-functional.

### B.     SUMMARY OF RELIEF

EDAG seeks a turnover order under Section 699.040(a)&(b) of the BNA IP to the U.S. Marshal, ED CA [or appointment of a limited receiver pursuant to C.C.P. Section 699.070(a)] for purpose of execution under Section 701.520(b), i.e., sale of a general intangible by a levying officer upon order of the court [intellectual property is a general intangibles].

## II.  WHAT IS THE PROPERTY SUBJECT TO SECTION 699.040(a) & (b)?

### A.     IP IS A GENERAL INTANGIBLE AND SUBJECT TO A LEVY UNDER C.C.P.  SECTION 700.170.

IP is a general intangibles as follows:

"Effective July 1, 2001, Article 9 of the Uniform Commercial Code was substantially revised. The definition of general intangibles was incorporated into a new Section 9–102 containing other definitions. The new definition is similar to the old definition in that it provides " '[g]eneral intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before

extraction. The term includes payment intangibles and software." The Official Comment to that definition now provides:

"General intangible" is the residual category of personal property, including things in action, that is not included in the other defined types of collateral. Examples are various categories of intellectual property * * *.As used in the definition of "general intangible," "things in action" includes rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement." *In re Phoenix Sys. & Components, Inc.*, No. ADV.06-08122, 2007 WL 6444551, at *2–3 (Bankr. D. Neb. Feb. 23, 2007).

The commentary of Commercial Code Section 9201(42) is the following:

" "General Intangible"; "Payment Intangible." "General intangible" is the residual category of personal property, including things in action, that is not included in the other defined types of collateral. Examples are various categories of intellectual property and the right to payment of a loan of funds that is not evidenced by chattel paper or an instrument. As used in the definition of "general intangible," "things in action" includes rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement
Cal. Com. Code § 9102 (West)

As intellectual property is a general intangible, therefore, an intellectual property is subject to a levy by a levying office pursuant to C.C.P. Section 700.170 as follows:

"(a) Unless another method of levy is provided by this article, to levy upon an account receivable or general intangible, the levying officer shall personally serve a copy of the writ of execution and a notice of levy on the account debtor.
(b) If a levy is made under subdivision (a) and payments on the account receivable or general intangible are made to a person other than the judgment debtor (whether pursuant to a security agreement, assignment for collection, or otherwise), the levying officer shall, if so instructed by the judgment creditor, personally serve a copy of the writ of execution and a notice of levy on such third person. Service of the copy of the writ and notice of levy on such third person is a levy on any amounts owed to the judgment debtor by such third person." Cal. Civ. Proc. Code § 700.170 (West)

EDAG is therefore entitled to levy enforcement against general intangibles, which includes "intellectual property," which is as form of personal property under C.C.P. Section 700.170(a).

**B.   SECTION 699.040(a) & (b) PROVIDES FOR AN ORDER FOR A TURNOVER OF THE LEVIABLE ASSET TO THE LEVYING OFFICER.**

Section 699.040(a) & (b) provides for an order directed at the Judgment Debtor to turnover over leviable property to the levying officer as follow:

"(a) If a writ of execution is issued, the judgment creditor may apply to the court ex parte, or on noticed motion if the court so directs or a court rule so requires, for an order directing the judgment debtor to transfer to the levying officer either or both of the following:
(1) Possession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody.
(2) Possession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon. An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter.

2
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION**

(b) The court may issue an order pursuant to this section upon a showing of need for the order.

(c) The order shall be personally served on the judgment debtor and shall contain a notice to the judgment debtor that failure to comply with the order may subject the judgment debtor to arrest and punishment for contempt of court." Cal. Civ. Proc. Code § 699.040 (West)

The order is directed solely against the Judgment Debtor, and not third parties, and the recipient is solely the levying officer, and not the judgment creditor.

No doubt, *Enforcing Judgment and Debts* (Judge Alan Ahart) offers the best explanation of relief under Section 699.040:

"***PRACTICE POINTER:*** It may be difficult for a levying officer to effect such levies where the judgment debtor is uncooperative. All the levying officer can do is demand possession of the instrument, etc. from the judgment debtor. If the debtor refuses or denies having possession, the levying officer cannot proceed further. The judgment creditor would then have to seek a court order directing the debtor to deliver the asset to the levying officer. (In the meantime, of course, the judgment debtor may be able to transfer or sell the instrument—frustrating the judgment creditor's attempts to reach it.)
Accordingly, if you know the judgment debtor has such assets and you can specifically describe them, the best way of reaching them is to *seek a "turnover" order at the outset—*even before attempting to effect a levy (see CCP § 699.040, ¶ *6:359*).

Also consider obtaining a *TRO* to restrain the debtor from selling, transferring or encumbering the assets prior to the levy. The TRO should specifically describe each such asset."
4. [6:449] Levy on Specific Property:, Cal. Prac. Guide Enf. J. & Debt Ch. 6D-4

Judge Ahart (USBC CD CA) offers that EJL with the "*TRO* to restrain the debtor from selling, transferring or encumbering the assets prior to the levy. The TRO should specifically describe each such asset," which enables this court to impound and restrain disposition of the BNA IP.

**C.    BNA IS AN UNCOOPERATIVE JUDGMENT DEBTOR.**

First, CT Corporation System resigned as agent for service of process for BNA on November 19, 2021 and without any replace.  Daniel I. Kirchert (***Exhibit "A"***) is the last known president, but resides in Hong Kong and inaccessible. (***Exhibit "A")***

Second EDAG has obtained a writ of execution from the USDC ND CA (***Exhibit "B"***), which is in the midst of a levy upon Jama Software Inc. and therefore complies with Section 699.040)(" If a writ of execution is issued. . .)

C.C.P. Section 699.070(a) enables the court to fashion a remedy as follows:

" (a) The court may appoint a receiver or order the levying officer to take any action the court orders that is necessary to preserve the value of property levied upon, including but not limited to selling the property, if the court determines that the property is perishable or will greatly deteriorate or greatly depreciate in value or that for some other reason the interests of the parties will be best served by the order. . . . . . )

The " . . . . other reason the interests of the parties will be best served by the order" is that the receiver (Michael Warda) who stand in the shoes of, surrogate, and designee of BNA, to direct Jama Software Inc. to turn over the "general intangibles" to the U.S. Marshal. JAMA Software Inc. would hold the BNA IP in trust for the Michael Warda as Receiver of the BNA IP asset (on behalf of the BNA) for purpose of levy and execution under Section 701.520(b)

Similarly, the court can issue "*TRO* to restrain the debtor from selling, transferring or encumbering the assets prior to the levy. The TRO should specifically describe each such asset."[2]

### III. APPOINTMENT OF A RECEIVER PURSUANT TO FRCP 69(a), FRCP 66, C.C.P. SECTIONS 708.620, C.C.P. SECTION 564, 568, AND 568.5 AND, AND SECTION 699.070(a) EQUITABLE RELIEF.

Given that the Rule 62(a) stay has been lifted (Doc. # 49) under *In Re Levander,* 180 F.3d 1114, 1121-1122 (9th Cir. 1999) and therefore § 708.620, which provide as follows:

> **§ 708.620. Circumstances under which appointment of receiver appropriate**
> The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment.

Likewise, EDAG can proceed under Rule 66 and may proceed under C.C.P. Section 568 as follows[3]:

> "The receiver has, under the control of the Court, power to bring and defend actions in his own name, as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may authorize."

Based on its equitable powers, the federal court has the power to appoint a receiver as follows:

> "Finally, although a state statute may provide a vehicle for the appointment of a receiver, such a statute does not change the nature of the federal courts' equitable powers. Indeed, a federal court sitting in diversity may exercise equitable powers independent of state law. *See* 12 Wright, Miller & Marcus § 2983 (citing *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), which affirmed the independent vitality of federal equitable powers). In *York,* the Court acknowledged that a federal court sitting in equity is not constrained by what remedies are available under state law. 326 U.S. at 105, 65 S.Ct. 1464. Thus, regardless of whether state law provides a vehicle by which to appoint a receiver, the federal courts are free to provide that

---

[2] EDAG has placed a writ of execution for the Eastern District of California in the hands of the U.S. Marshal ED CA.

[3] C.C.P. Section 699.070(a) enables the court to appoint a receiver in lieu of a Levying officer: "The court may appoint a receiver or order the levying officer to take any action the court orders that is necessary to preserve the value of property levied upon, including but not limited to selling the property, if the court determines that the property is perishable or will greatly deteriorate or greatly depreciate in value or that for some other reason the interests of the parties will be best served by the order.

4
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION**

remedy solely by virtue of their equitable powers. Based on the foregoing, we join the Eleventh and Eighth Circuits in holding that federal law governs the issue of whether to appoint a receiver in a diversity action.[12]" *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843–44 (9th Cir. 2009)

### IV.   BNA LACKS ANY STANDING TO OPPOSE THE TURNOVER ORDER OF THE BNA IP TO THE MARSHAL UNDER SECTION 699.040(a), 699.070(a) OR A SALE UNDER SECTION 701.520(b)

All property of the judgment debtor is subject to enforcement under C.C.P. Section 695.010 as follows:

"(a) Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment.
(b) If property of the judgment debtor was attached in the action but was transferred before entry of the money judgment in favor of the judgment creditor, the property is subject to enforcement of the money judgment so long as the attachment lien remains effective."

Intellectual property, which is a subset of "general intangibles", is subject to enforcement of writ of execution as follows:

"Except as otherwise provided by law, all property that is subject to enforcement of a money judgment pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 is subject to levy under a writ of execution to satisfy a money judgment."

Corporations are not entitled to any exemptions under Section 703.020(a). General intangibles are subject to levy and execution, and sale by the levy officer pursuant to C.C.P. Section 701.520(b) as follows:

(a) Except as provided in this section, any of the following property that has been levied upon shall be collected rather than sold:
 (3) General intangibles.
(b) At the time of levy on property described in subdivision (a) or thereafter, the judgment creditor may serve a notice of intended sale of the property on the judgment debtor. Service shall be made personally or by mail. A copy of the notice of intended sale and proof of service on the judgment debtor shall be filed with the court and with the levying officer. The notice of intended sale shall describe the property and state that it will be sold at an execution sale unless, within the time allowed after service of the notice of intended sale, the judgment debtor applies to the court on noticed motion for an order that the property be collected rather than sold. . . . Cal. Civ. Proc. Code § 701.520 (West)"

The court can order the levying officer to sell the general intangibles under Section 701.520 as follows:

(c) Within 10 days after service of the notice of intended sale, the judgment debtor may apply to the court on noticed motion for an order that the property be collected rather than sold. A judgment debtor who so applies shall, within the time allowed for the application, serve a copy of the notice of motion on the judgment creditor and file a copy of the notice of motion with the levying officer. Service of the copy of the notice of motion on the judgment creditor shall be made personally or by mail. If the copy of the notice of motion is not filed with the levying officer within the time allowed, the levying officer shall proceed to sell the property. If a copy of the notice of

motion is filed with the levying officer within the time allowed, the levying officer shall continue to collect the property until otherwise ordered by the court.

(d) At the hearing on the motion, the court may in its discretion order that the property be sold or be collected depending on the equities and circumstances of the particular case. If the court orders that the property be sold, the order may specify terms and conditions of sale. If the court orders that the property be collected, the court may condition its order on an assignment of the property by the judgment debtor to the judgment creditor pursuant to Article 6 (commencing with Section 708.510) of Chapter 6."

EDAG has the right of a credit bid under Section 701.590(b) as follows:

"(b) The judgment creditor may bid by giving the levying officer a written receipt crediting all or part of the amount required to satisfy the judgment, except that the levying officer's costs remaining unsatisfied and the amount of preferred labor claims, exempt proceeds, and any other claim that is required by statute to be satisfied, shall be paid in cash or by certified check or cashier's check."

## V.  BNA LACKS ANY STANDING IN THE SALE OF THE BNA IP

BNA has forfeited any claim of standing when BNA stands on the verge of shipping its assets offshore to PRC to prevent EDAG (if not all others) from reaching those assets, i.e., "which operate outside the reach of United States courts.

"Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts. On August 20, 2021, automotive journalists reported that BYTON's M-BYTE was photographed undergoing road tests in Hainan, China, and EDAG has produced evidence that the test vehicle is the car that EDAG designed and that it contains the work that EDAG performed, and for which EDAG has not been paid. EDAG was unaware of this development until it was discovered in August  (Doc. # 25, Page 4) and

"If Byton is successful in moving its assets overseas there will be no assets in the United States that can be used to satisfy the €23.4 million judgment won in the arbitration" (*Supra.*):

Given the risk borne by EDAG (if not other creditors) of assets ready to flee from the California courts, BNA forfeits any standing in opposing the campaign of enforcement under Federal and California law in reaching the assets of BNA for purpose of payment of the $30mil judgment of EDAG.

## VI.  MORE MELTDOWNS ON THE WAY TO COME

BNA sought and received a $10,000,000 PPP loan through the SBA and managed by HSBC USA BAN, National Association.  The source is the spread sheet from the SBA (***Exhibit "C"*** from the Cook Declaration) ("PPP Loan"). Based on the PPP Loan spread sheet, SBA authorized a $10mil loan on April 15, 2020, and which was -0- undisbursed amount (***Exhibit "C"***). The SBA provided a

100% guaranty to HSBC. The purpose was "payroll proceed." The PPP Loan was forgiven (i.e., Forgiveness Date) on June 11, 2021. (***Exhibit "C"***).

Sadha Kameswaran is the PMK deposition during the pending of the arbitration and testified as follows:

Deposition of Sadha Kameswaran, PMK, November 17, 2020 (***Exhibit "D"***)

Page 33, lines 4 to 13:

```
4. Q.   Why are you the person most qualified at        10:12:31
5 Byton to testify regarding fundamental errors in the  10:12:33
6 high-voltage battery/floor systems interfaces?        10:12:36
7 A.    I think the answer is the same to every         10:12:45
8 question there. There is no other engineering         10:12:48
9 person currently on the Byton North America payroll   10:12:51
10 that is qualified that is available to answer this   10:12:55
11 question, so I'm the most appropriate person to      10:12:58
12 answer this question representing Byton, as one of   10:13:03
13 the few employees that remains in North America.     10:13:08
```

*****

Page 237 Lines 16 to 25:

```
16. Q. How many employees does Byton currently          17:18:18
17 have on payroll?                                     17:18:20
18 MR. SIPPRELLE: By "Byton," I assume                  17:18:27
19 you're referring to Byton North America.             17:18:28
20 MR. ESTES: Thanks for the clarification.             17:18:30
21       Yes.                                           17:18:32
22 Q.   How many employees does Byton North             17:18:32
23 America currently have on payroll?                   17:18:34
24 A. Sixteen.                                          17:18:39
25 Q. How many employees are furloughed at Byton        17
       Page 238:

1 North America Corporation?                            17:18:46
2 A.   The 16 included the furloughed people, so       17:18:51
3 there is eight people on furlough.                    17:18:54
4 Q.   And where are the eight people who are not      17:18:59
5 on furlough working from? Are they all in             17:19:01
6 California?                                           17:19:05
7 A.   All but one in California. One is in            17:19:20
8 Germany.                                              17:19:23
9 Q.   And what are the job duties of the eight        17:19:26
10 people who are still on payroll?                     17:19:29
11 A. There's myself in finance. We have one            17:19:43
12 person in legal. We have one person in IT. We have   17:19:46
13 one person in HR. I'm sorry. In finance, other       17:19:57
14 than me, there is one more -- one more person who    17:20:08
```

15 does banking-related activities. 17:20:18
16 Q.   And is that -- oh, sorry. Go ahead. 17:20:23
17 A.   And then one person who's in business 17:20:25
18 development. He's the person in Germany. 17:20:27
19 Q.   **Are any of the furloughed employees 17:20:33
20 engineers? 17:20:36**
21 A.   Just thinking through. Sorry. Give me a 17:21:04
22 moment. 17:21:06
23 Q.   Sure. Of course. 17:21:07
24 A.   I do not know the exact list of those 17:21:36
25 people, but I know for a fact that there is no one 17:21:39

   Page 239

**1 from vehicle engineering or any of these body 17:21:44
2 engineering, interior engineering, exterior 17:21:50
3 engineering folks, they're not on furlough. 17:21:57**
4 Q.   Did Byton ever initiate bankruptcy 17:22:01
5 proceedings in North America? 17:22:04
6 A.   No. 17:22:14
7 Q.   **Byton North America Corporation is a 17:22:16
8 wholly-owned subsidiary of Byton Limited, a Hong 17:22:18
9 Kong corporation? 17:22:20**
10 A.   That is correct. 17:22:25
11 Q.   **Byton North America Corporation is the 17:22:26
12 sister company of Nanjing Byton Electric Vehicle 17:22:28
13 Company Limited, a Chinese corporation? 17:22:32**
14 A.   That is correct. 17:22:38
15 Q.   **And Nanjing Byton Electric Vehicle Company 17:22:39
16 Limited, a Chinese corporation, is a wholly-owned 17:22:39
17 subsidiary of Byton Limited? 17:22:45**
18 A.   Correct. 17:22:50[4]

  BNA stopped paying its suppliers in the middle of 2019:

Page 231:

6.Q   Has Byton paid all of its suppliers 17:06:27
7 besides EDAG? 17:06:31
8 A.   No. 17:06:33
9 Q.   **When did Byton stop paying its other 17:06:34
10 suppliers besides EDAG? 17:06:36
11 A.   From around the middle of 2019.** 17:06:47
12 Q.   At the time Byton stopped paying EDAG, did 17:06:53
13 it stop also paying its other suppliers? 17:06:55
14 A. That's absolutely correct. 17:06:59
15 Q.   **What's the -- what is Byton's estimate of 17:07:03**

---

[4] The ending is added to upgrading the readability. Bold type highlights the key issues but did not appear in the original transcript. Original copy in the Cook Declaration.

```
16 the total amount its other suppliers besides EDAG 17:07:06
17 claim they are owed? 17:07:09
18 A.   Besides EDAG in North America? 17:07:23
19 Q.   Correct. 17:07:25
20 A.   I would say roughly $60 million. 17:07:33
21 Q.   What about besides EDAG outside of North 17:07:36
22 America? 17:07:40
23 A. 120 to $140 million. 17:07:53
```

The fact that BNA stopped paying suppliers leads to an inference that BNA laid off some or many or all employees sometime in middle 2019 because BNA collapsed. The layoff is further supported by the statement: "Q. How many employees does Byton North America currently have on payroll?" and Answer: "Sixteen" and therefore BNA has collapsed irrevocably.

The $10,000,000 is gone by way of the "forgiveness" of June 11, 2021 and raises many questions of who has the funds; do the funds exist, or have the funds been expended and can the funds be recovered etc.[5]  (***Exhibit "C"***)

At a minimum, EDAG seeks a turnover order of the BNA IP in order to either sell the BNA IP through the Marshal or receiver, or EDAG would acquire the BNA IP based on a credit bid. Section 701.590(b) in light of a debacle BNA is management of its financial affairs.

## VII.  ANOTHER FRAUDULENT CONVEYANCE IN PLAIN SIGHT

The November 8 Order (Doc. # 25) chronicles an undisputed and stipulated fraudulent conveyances under Civil Code Section 3439.05 (Constructive fraudulent conveyance), and Civil Code Section 3439.04(a)(1) (intent to hinder, delay and defraud) and facts stipulated by BNA pursuant to C.C.P. Section 1287.6. The transfers under Civil Code Section 3439.01(m) are as follows:

"Nonetheless, EDAG has now, in its moving papers in this Motion, has produced evidence that BYTON and a Chinese affiliate have spent the last nine months attempting to regain access to the Jama database and the intellectual property EDAG created"

"Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts."

"Moreover, BYTON may be transferring or attempting to transfer its operations and its assets of value to Chinese affiliate companies, which operate outside the reach of United States courts."  (Doc. # 25, Page 4)

---

[5] EDAG has commenced service of subpoena and document production for HSBC (the serving bank for PPP), JPMORGAN Chase Bank and Silicon Valley Bank who apparently provided banking service for BNA.

A transfer of an asset out of state and transformation of the asset is a transfer under Section 3439.01(m)[transfer], and subject to avoidance, as follows:

> "We hold that under the UVTA, physically relocating personal property and transmitting or transporting sale proceeds out of state, then transmuting them into a different legal form, may constitute a direct or indirect mode of parting with assets or one's interest in those assets. As such, Nagel adequately alleged a "transfer" under the UVTA. In this posture the trier of fact must now determine if grantor's title is but, "a mere cloak under which is hidden the hideous skeleton of deceit ...."[6] *Nagel v. Westen*, 59 Cal. App. 5th 740, 749, 274 Cal. Rptr. 3d 21, 27 (2021), as modified on denial of reh'g (Feb. 1, 2021).

Pulling the BNA IP out of the hands of Jama Software Inc., and hold the BNA IP for sale, would fall within the equitable remedies under Section 3439.07(a) etc as follow:

> "The UVTA provides a variety of tools to achieve its ends. For example, the court may void a transfer of assets, attach assets, or employ equitable remedies such as injunctive relief or receivership. (§ 3439.07.) A creditor may also supplement the UVTA's remedies with any others available at law or in equity. (§ 3439.12 ["Unless displaced by the provisions of this chapter, the principles of law and equity, ... supplement its provisions"].) The UVTA enumerates eleven characteristics or " 'badges of fraud' " to help the trier of fact discern when a debtor has crossed the often blurry line between legitimate asset protection planning and voidable maneuvering. (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 174, 221 Cal.Rptr.3d 353 (*PGA West*); § 3439.04, subd. (b).)" *Nagel v. Westen*, *supra,* p.748

### VIII. CERTIFICATE OF NOTICE UNDER RULE 7-10

EDAG has provided all relevant parties with notice of ex parte application in seeking an order under C.C.P. Section 699.040(a)&(b). (***Exhibit "E1" and "E2"***)

### IX. A TOTAL MELTDOWN

In the midst of a roaring financial meltdown, BNA spins off a multi-million dollar inventory of US Patents to BYTON Limited, the corporate owner and holder of BNA, as the 100% subsidiary without anything in return.

After BNA irrevocably collapses in failing to pay its suppliers to $90mil (US suppliers) to $150mil up to $200mil (outside US) middle 2019 (inclusive of the $30mil due EDAG), BNA received a $10mil PPP Loan on April 15, 2020 and received the forgiveness on June 11, 2021 of the total, when the number of apparent employees are 16 or so, or less.

Warehousing the BNA's valuable IP in the hands of Jama Software Inc., BNA seeks to palm off the BNA IP in the hands of the "to Chinese affiliate companies, which operate outside the reach of United States courts" and a plain fraudulent conveyance under Civil Code Section 3439.05 and Section 3439.04(a)(1) and *Nagel vs. Westen, supra*.

Issuing a turnover order under Section 699.040, and followed by the EJL and federal equity remedies are a start in the right direction.

| | |
|---|---|
| Dated: December 20, 2021 | Respectfully submitted,<br><br>COOK COLLECTION ATTORNEYS PLC.<br><br>By: /s/ David J. Cook<br>DAVID J. COOK, Esq.<br>Attorneys for Petitioner EDAG<br>ENGINEERING GMBH |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION**