EXHIBIT "A"

KEITH A. SIPPRELLE #143358
**VAN ETTEN SIPPRELLE LLP**
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone: (805) 719-4900
Facsimile: (805) 719-4950
ksipprelle@vstriallaw.com

Attorneys for Defendant
BYTON NORTH AMERICA CORPORATION

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

| | |
|---|---|
| HANON SYSTEMS, HANON SYSTEMS USA, LLC, HANON SYSTEMS DEUTSCHLAND GMBH, HANON SYSTEMS (DALIAN) CO., LTD., and HANON JIE XI SI SYSTEMS (NANJING) CO., LTD.<br><br>                    Plaintiffs,<br><br>          v.<br><br>BYTON NORTH AMERICA CORPORATION,<br><br>                    Defendants. | Case No.: 20-cv-01983-YGR<br><br>**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF DEFENDANT BYTON NORTH AMERICA CORPORATION'S IN OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**<br><br>Date: June 30, 2020<br>Time: 2:00p.m.<br>Courtroom: 1<br><br>[Hon. Yvonne Gonzalez Rogers] |

**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**

I, Dr. Daniel Kirchert, declare as follows:

1. My name is Dr. Daniel Kirchert.  I am an adult resident of Hong Kong.  I make this declaration of my own personal knowledge and, if called upon as a witness, I could and would competently testify to the truth of same.  I make this declaration in support of the Opposition of Defendant Byton North America Corporation ("Byton") to Plaintiffs' Motion for Right to Attach Order and Writs of Attachment (the "Motion").

2. I am an employee of Byton and currently hold the position/title of Chief Executive Officer ("CEO") with Byton.  I have been employed continuously by Byton since April 2016.   My duties and responsibilities as Byton's CEO include general management and final oversight and authority pertaining to all Byton supplier relationships.

3. I have reviewed all of the papers filed by Plaintiffs Hanon Systems, Hanon Systems USA, LLC, Hanon Systems Deutschland GMBH, Hanon Systems (Dalian) Co., LTD., and Hanon Jie Xi Si Systems (Nanjing) Co., LTD. (collectively "Plaintiffs") in support of the Motion.  During my tenure with Byton, Plaintiffs were suppliers to Byton.  Based on that review, it is my understanding that Plaintiffs Hanon Systems USA, LLC ("Hanon USA") and Hanon Systems Deutschland GmbH ("Hanon Germany"), seek a right to attach order and two writs of attachment against Byton in the amounts of $488,968.54 (for Hanon USA) and $61,547.88 (for Hanon Germany).  Byton disputes that these claimed amounts are owed by Byton.

4. Of the $488,968.54 claimed by Hanon Systems USA, LLC ("Hanon USA") in the Motion, Byton disputes a minimum of $391,130 of this amount, which amount is reflected in the Hanon USA invoice attached as Exhibit D to the Declaration of Davide Piccirilli filed in support of the Motion.  Payment of this amount was contingent on Byton's approval of both the hours worked and the invoiced amount, as well as the issuance by Byton of a Certificate of Completion for the work performed and invoiced by Hanon USA as reflected in Exhibit D.  Byton never communicated to Hanon USA approval of the amount invoiced in Exhibit D, nor of the hours worked by Hanon USA which support the charges reflected in Exhibit D.  In addition, Byton never issued a

2

**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**

Certificate of Completion for the work performed and invoiced by Hanon USA as reflected in Exhibit D.  Byton disputes both the hours worked and fee amount invoiced by Hanon USA reflected in Exhibit D.

5.  Of the $61,547.88 claimed by Hanon Systems Deutschland GMBH ("Hanon Germany") in the Motion, Byton disputes a minimum of 39,500 EUR of this amount, which is reflected in the Hanon Germany invoice attached as Exhibit F to the Declaration of Davide Piccirilli filed in support of the Motion.  Invoice #19000408 to Exhibit F reflects charges of 19,750 EUR for ED&T Cooling System Soft Prototypes. However, these soft prototypes parts were never delivered to Byton.  Without Byton's ability to inspect these soft prototypes parts, Byton has no way to verify that the related tooling was ever manufactured by Hanon. Furthermore, to the extent that Hanon Germany has not started tooling, Byton is not responsible for the 19,750 EUR charged by Hanon Germany in Invoice #19000328 to Exhibit F. As such, Byton disputes the 39,500 EUR invoiced by Hanon Germany in Exhibit F.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration was executed on June 9, 2020 in Hong Kong.

_____
Dr. Daniel Kirchert

**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**

1

<u>**PROOF OF SERVICE**</u>

2

**STATE OF CALIFORNIA, COUNTY OF VENTURA**

3

4

I am employed in the County of Ventura, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 2945 Townsgate Road, Suite 200, Westlake Village, California 91361.

5

6

7

8

On June 9, 2020, I served the following document described as **DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF DEFENDANT BYTON NORTH AMERICA CORPORATION'S IN OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT** on the interested parties in this action as follows:

9

10

☒      **BY ECF.** By the Court's ECF service to the attorneys of record on the attached service list.

11

12

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that I am a member of the bar of this Court.

13

Executed on June 9, 2020 at Thousand Oaks, California.

14

15

*/s/ Keith A. Sipprelle*
Keith A. Sipprelle

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**

1

## SERVICE LIST

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan D. Baker (SBN 196062)
jdbaker@dickinsonwright.com
Craig Y. Allison (SBN 161175)
callison@dickinsonwright.com
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Phone: 408-701-6200
Fax: 844-670-6009

Attorneys for Plaintiffs Hanon Systems,
Hanon Systems USA, LLC,
Hanon Systems Deutschland GmbH,
Hanon Systems (Dalian) Co., Ltd., and
Hanon Jie Xi Si Systems (Nanjing) Co., Ltd.

**DECLARATION OF DR. DANIEL KIRCHERT IN SUPPORT OF BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR RIGHT TO ATTACH ORDER AND WRITS OF ATTACHMENT**

EXHIBIT "B"

EJ-130

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: <br> NAME: DAVID J. COOK. Esq. SBC: 060859 <br> FIRM NAME: COOK COLLECTION ATTORNEYS PLC. <br> STREET ADDRESS: 165 Fell Street <br> CITY: San Francisco   STATE: CA   ZIP CODE: 94102 <br> TELEPHONE NO.: (415) 989 4730   FAX NO.: (415) 989 0491 <br> EMAIL ADDRESS: Cook@Squeezebloodfromturnip.com <br> ATTORNEY FOR (name): EDAG Engineering GmbH <br> [ X ] ATTORNEY FOR   [ X ] ORIGINAL JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD | FOR COURT USE ONLY |
| UNITED STATES DISTRICT COURT <br> STREET ADDRESS: NORTHERN DISTRICT OF CALIFORNIA <br> MAILING ADDRESS: 450 Golden Gate Avenue <br> CITY AND ZIP CODE: San Francisco. California 94102 <br> BRANCH NAME: San Francisco Division | |
| PLAINTIFF/PETITIONER: EDAG Engineering GmbH <br> DEFENDANT/RESPONDENT: BYTON NORTH AMERICA CORPORATION | CASE NUMBER: <br> 3:21-cv-04736-EMC |

| | |
|---|---|
| [ X ] EXECUTION (Money Judgment) <br> WRIT OF [ ] POSSESSION OF [ ] Personal Property <br> [ ] SALE   [ ] Real Property | [ ] Limited Civil Case <br> (including Small Claims) <br> [✓] Unlimited Civil Case <br> (including Family and Probate) |

1. **To the Sheriff or Marshal of the County of:** Eastern District of California
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): EDAG Engineering GmbH. a corporation organized and existing under the laws of the Republic of Germany
   is the [ X ] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.

4. **Judgment debtor** (name, type of legal entity if not a natural person, and last known address):

   BYTON NORTH AMERICA CORPORATION, a Delaware corporation
   4201 Burton Drive
   Santa Clara, CA 95054

   [ ] Additional judgment debtors on next page

5. **Judgment entered** on (date): December 13, 2021
   (See type of judgment in item 22.)
6. [ ] Judgment renewed on (dates):

7. **Notice of sale** under this writ:
   a. [XXX] has not been requested.
   b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

[SEAL]

9. [ ] Writ of Possession/Writ of Sale information on next page.
10. [ ] This writ is issued on a sister-state judgment.
    **For items 11–17, see form MC-012 and form MC-013-INFO.**

| | | |
|---|---|---|
| 11. Total judgment (as entered or renewed) | $ | 30,231,689.48 |
| 12. Costs after judgment (CCP 685.090) | $ | -0- |
| 13. Subtotal (add 11 and 12) | $ | 30,231,689.48 |
| 14. Credits to principal (after credit to interest) | $ | -0- |
| 15. Principal remaining due (subtract 14 from 13) | $ | 30,231,689.48 |
| 16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) | $ | -0- |
| 17. Fee for issuance of writ (per GC 70626(a)(I)) | $ | -0- |
| 18. **Total amount due** (add 15, 16, and 17) | $ | 30,231,689.48 |

19. Levying officer:
    a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) . . . . . . . . . . . . . . . $ 207.06
    b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68517; CCP 699.520(j)) . . . . . . . . . . . . . . . $ -0-

20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

Date: 12/14/2021   Clerk, by MARK B. BUSBY _____, WILLIAM NOBLE Deputy

**NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.**

Page 1 of 3

Form Approved for Optional Use <br> Judicial Council of California <br> EJ-130 [Rev. September 1, 2020]   **WRIT OF EXECUTION**   Code of Civil Procedure, §§ 699.520, 712.010, 715.010 <br> Government Code, § 6103.5 <br> www.courts.ca.gov

EJ-130

| Plaintiff/Petitioner: EDAG ENGINEERING GMBH | CASE NUMBER: |
| Defendant/Respondent: BYTON NORTH AMERICA CORPORATION | 3:21-cv-04736-EMC |

21. ☐ Additional judgment debtor(s) *(name, type of legal entity if not a natural person, and last known address):*

22. The judgment is for *(check one):*

    a. ☐ wages owed.

    b. ☐ child support or spousal support.

    c. ☒ other. breach of commercial contract and failure to pay for damages

23. ☐ Notice of sale has been requested by *(name and address):*

24. ☐ Joint debtor was declared bound by the judgment (CCP 989–994)

    a. *on (date):*
    b. name, type of legal entity if not a natural person, and
       last known address of joint debtor:

    a. *on (date):*
    b. name, type of legal entity if not a natural person, and
       last known address of joint debtor:

    c. ☐ Additional costs against certain joint debtors are itemized: ☐ below ☐ on Attachment 24c.

25. ☐ (Writ of Possession or Writ of Sale) **Judgment** was entered for the following:

    a. ☐ Possession of real property: The complaint was filed on *(date):*
       *(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*

       (1) ☐ The *Prejudgment Claim of Right to Possession* was served in compliance with CCP 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.

       (2) ☐ The *Prejudgment Claim of Right to Possession* was NOT served in compliance with CCP 415.46.

       (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a *Claim of Right to Possession* at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a *Prejudgment Claim of Right to Possession* was served.) *(See CCP 415.46 and 1174.3(a)(2).)*

       (4) If the unlawful detainer resulted from a foreclosure (item 25a(3)), or if the *Prejudgment Claim of Right to Possession* was not served in compliance with CCP 415.46 (item 25a(2)), answer the following:

          (a) The daily rental value on the date the complaint was filed was $

          (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

*Item 25 continued on next page*

EJ-130

| Plaintiff/Petitioner: EDAG ENGINEERING GMBH | CASE NUMBER: |
|---|---|
| Defendant/Respondent: BYTON NORTH AMERICA CORPORATION | 3:21-cv-04736-EMC |

25. b. ☐ Possession of personal property.

☐ If delivery cannot be had, then for the value *(itemize in 25e)* specified in the judgment or supplemental order.

c. ☐ Sale of personal property.

d. ☐ Sale of real property.

e. The property is described ☐ below ☐ on Attachment 25e.

---

### NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

---

EJ-130 [Rev. September 1, 2020]

**WRIT OF EXECUTION**

Page 3 of 3

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form | Save this form | Clear this form

EXHIBIT "C"

| Loan Number | Date Approved | SBA Office Code | Processing Method | Borrower Name | Borrower Address | Borrower City | Borrower State | Borrower Zip | Loan StatusDate | LoanStatus | Term | SBA Guaranty Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1746277202 | 4/15/2020 | 912 | PPP | BYTON NORTH AMERICA CORPORATION | 4201 BURTON DR | SANTA CLARA | CA | 95054-1512 | | Exemption 4 | 24 | 100 |

| Initial ApprovalAmount | Current ApprovalAmount | Undisbursed Amount | FranchiseName | ServicingLender Location ID | ServicingLender Name | ServicingLender Address | ServicingLender City | ServicingLender State | ServicingLender Zip | Rural Urban Indicator | Hubzone Indicator | LMI Indicator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10000000 | 10000000 | 0 | | 378617 | HSBC Bank USA, National Association | 1800 Tysons Blvd, Ste 50 Tysons II | MCLEAN | VA | 22102-4267 | U | N | N |

| BusinessAge Description | Project City | Project County Name | Project State | Project Zip | CD | Jobs Reported | NAICSCode | Race | Ethnicity | UTILITIES_PROCEED | PAYROLL_PROCEED | MORTGAGE_INTEREST_PROCEED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Existing or more than 2 years old | SANTA CLARA | SANTA CLARA | CA | 95054-1512 | CA-17 | 397 | 336111 | Unanswered | Unknown/NotStated | | 10000000 | |

| RENT_PROC EED | REFINANCE _EIDL_PRO CEED | HEALT H_CAR E_PRO CEED | DEBT_INTE REST_PROC EED | BusinessT ype | Originatin gLenderLo cationID | Originatin gLender | Originatin gLenderCi ty | Originatin gLenderSt ate | Gender | Veteran | NonProfit | ForgivenessAmo unt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Corporati on | 378617 | HSBC Bank USA, National Associatio n | MCLEAN | VA | Unanswer ed | Unanswere d | | 10,113,055.56 |

| Forgiveness Date | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/11/2021 | | | | | | | | | | | | |

** ALL DATA IS PULLED FROM THE SBA AND CONDENSED INTO THIS EXCEL SHEET

EXHIBIT "D"

PAGE 231

6 Q. Has Byton paid all of its suppliers 17:06:27
7 besides EDAG? 17:06:31
8 A. No. 17:06:33
9 Q. When did Byton stop paying its other 17:06:34
10 suppliers besides EDAG? 17:06:36
11 A. From around the middle of 2019. 17:06:47
12 Q. At the time Byton stopped paying EDAG, did 17:06:53
13 it stop also paying its other suppliers? 17:06:55
 14 A. That's absolutely correct. 17:06:59

PAGE 243-245

1 relating to the EDAG relationship that Byton -- that 17:27:39
2 may exist, but that Byton does not have access to? 17:27:44
3 A. It is quite possible that there are 17:27:50
4 documents that are not accessible because we do have 17:27:53
5 access issues on some portals that we are locked out 17:27:58
6 because of payment issues. 17:28:02
7 Q. Okay. Can you -- just so counsel 17:28:04
8 understands what you're talking about, can you 17:28:07
9 explain these -- what these portals are and why 17:28:09
10 Byton does not have access to them? 17:28:13
11 A. So the cloud-based platforms that I 17:28:16
12 mentioned previously, obviously those are 17:28:19
13 pay-as-you-go service on a quarterly/half-yearly 17:28:25
14 basis, and we have not -- just like we have not made 17:28:30
15 payments to a number of suppliers, we have not made 17:28:33
16 payments to those, and their patience ran out, and 17:28:35
17 they stopped access to those services. 17:28:43
18 Q. And so would it be fair to say that Byton 17:28:47
19 cannot access those portals to see what may be 17:28:49
20 available on those cloud-based servers at the 17:28:53
21 present time? 17:28:57

22 A. That would be correct. 17:28:59
23 Q. And would those portals, to your 17:29:01
24 knowledge, include things like project circle 17:29:03
25 reports, engineering, release authorizations, and 17:29:05

Page 244
1 the other types of documents that Counsel asked you 17:29:11
2 about earlier? 17:29:14
3 A. That's correct. 17:29:16
4 Q. Thank you. I have no further questions. 17:29:18
5 Actually, let me just ask one follow-up question. 17:29:20
6 For Byton to be able to access those portals, what 17:29:24
7 kind of money are we talking about that Byton would 17:29:30
8 have to come up with to be able to get back onto 17:29:32
9 those drives? 17:29:36
10 A. I don't -- 17:29:40
11 Q. Do you have an estimate? 17:29:42
12 A. I do not know the exact amount, but I'll 17:29:42
13 estimate it to be somewhere around half a million 17:29:45
14 dollars minimum. 17:29:49
15 Q. Does Byton have anywhere near that kind of 17:29:50
16 money to be able to come current with those vendors? 17:29:53
17 A. No. 17:29:59
18 MR. SIPPRELLE: All right. Thank you, 17:30:00
19 sir. Nothing further. 17:30:00
20 FURTHER EXAMINATION BY MR. ESTES 17:30:02
21 MR. ESTES: Q. I just have a couple quick 17:30:03
22 follow-up questions based on that. Sir, could you 17:30:04
23 give me the names of the vendors that Byton owes 17:30:09
24 money to that is preventing access to these portals? 17:30:14
25 A. I do not know the names of the actual 17:30:25


Page 245
1 vendors because these are through like service 17:30:28
2 providers. Yeah, so I wouldn't know the names of 17:30:34
3 the vendors specifically. 17:30:38
4 Q. Who are the service providers? 17:30:40
5 A. Sorry. Could you repeat that, please? 17:30:48
6 Q. Who are the service providers, then? 17:30:49
7 A. Yeah, those are the vendors I'm saying 17:30:55

8 that I wouldn't know the names of. There is names 17:30:56
9 of the software, but I don't know who the service 17:31:03
10 providers were. 17:31:05
11 Q. Could you give me the names of the 17:31:06
12 software you're aware of? 17:31:07
13 A. There was one system called Jama, J-A-M-A. 17:31:11
14 There was another system, Confluence. And -- and 17:31:19
15 Jira, J-I-R-A. 17:31:29 16 Q. And when approximately was Byton's access 17:31:35
17 revoked from these systems? 17:31:38
18 A. I would say late last year or early this 17:31:51
19 year. Don't know exact dates. 17:31:53
20 Q. Late 2019 or early 2020? 17:31:57
21 A. That would be correct. 17:32:01
22 Q. And who would be the person most qualified 17:32:04
23 at Byton -- strike that. 17:32:08
24 Who would be the person most qualified to 17:32:11
25 testify regarding Byton's access being revoked from 17:32:13

PAGE 323-327

1 What kinds of documents were stored on the 12:16:17
2 JAMA database? 12:16:18
3 A. Sorry. Could you repeat that? You were 12:16:24
4 cutting out there. 12:16:26
5 Q. What kinds of documents were stored on the 12:16:28
6 JAMA database? 12:16:31
7 A. Typically product attributes, 12:16:33
8 requirements, and product feature metrics, as in the 12:16:43
9 vehicle specifications provided by marketing to the 12:16:49
10 engineering team. 12:16:52 11 Q. What kind of documents are stored on the 12:16:55
12 JIRA database? 12:16:57 13 A. JIRA is basically a engineering change 12:17:02
14 management system. So all the engineering change -- 12:17:05
15 changes that have gone through would go through the 12:17:11
16 JIRA database. 12:17:14
17 Q. What kinds of documents are stored on the 12:17:19
18 Confluence database? 12:17:21
19 A. Confluence is where the project 12:17:25
20 directories for the different functions were. That 12:17:28

21 is for a collaboration database, including the 12:17:38
22 project circles and meetings and so on. 12:17:43
23 Q. The second sentence of paragraph 8 states, 12:17:52
24 "I recently gave deposition testimony in this matter 12:17:55
25 during which I referenced JAMA, JIRA and Confluence 12:17:58

 Page 324
1 databases. In my deposition, I indicated that I 12:18:00
2 believe that Byton no longer had access to these 12:18:04
 3 databases due to non-payment of the third-party 12:18:07
4 vendors who administer these databases." Did I read 12:18:09
5 that correctly? 12:18:13
6 A. Correct. 12:18:14
7 Q. Why did you think Byton no longer had 12:18:16
8 access to the JAMA, JIRA, and Confluence databases? 12:18:18
9 A. Because from a financial point of view, I 12:18:24 10 knew that we owed money to those third-party 12:18:26
11 providers. 12:18:30
12 Q. And -- 12:18:32 13 A. And there was -- and there was protests 12:18:33
14 from those vendors and threatening of 12:18:36
15 discontinuation of service. 12:18:42
16 Q. And is a third-party vendor different from 12:18:46
17 the company that actually owns the -- owns or 12:18:50
18 created the JAMA and JIRA and Confluence products 12:18:54
19 themselves? 12:18:56
20 A. I do not know exactly which database goes 12:19:02
21 through which vendor. Sometimes the licenses are 12:19:05
22 sold by some onsellers for one of those companies, 12:19:09
23 so I do not know. 12:19:16
24 Q. So you don't know the third-party vendor 12:19:18
25 that administers the JAMA database, correct? 12:19:21

Page 325
1 A. Not sure whether it was JAMA themselves or 12:19:29
2 someone else. 12:19:31
3 Q. Do you know when Byton stopped paying the 12:19:35
 4 third-party vendor who administers the JAMA 12:19:36
 5 database? 12:19:39
6 A. I do not recall a specific date, but all 12:19:45
7 our payments to vendors started getting affected 12:19:47
8 from about late 2019 time frame. 12:19:53

9 Q. And do you know the third-party vendor 12:20:22

10 that administers the JIRA database? 12:20:24

11 A. No, I do not know. 12:20:30

12 Q. Do you recall approximately when Byton 12:20:32

13 stopped paying the third-party vendor who 12:20:33

14 administers the JIRA database? 12:20:35

15 A. No, I do not know. 12:20:44

16 Q. And do you know who the third-party vendor 12:20:47

17 who administers the Confluence database is? 12:20:49

18 A. No, do not know the specific name. 12:20:57

19 Q. Do you know approximately when Byton 12:20:59

20 stopped paying the third-party vendor who 12:21:00

21 administers the Confluence database? 12:21:02

22 A. As I said earlier, 2020. 12:21:07 23 Q. Would you estimate that late 2019 or early 12:21:16

24 2020 is the best approximation of when Byton stopped 12:21:18

25 paying the third-party vendor who administers the 12:21:21

Page 326

1 JIRA database? 12:21:24 2 A. That would be a good estimate. 12:21:30

3 Q. Paragraph 8 of Exhibit 84 goes on to say 12:21:34

4 that "Subsequent to my deposition, I learned that 12:21:37

5 Byton's remaining IT employee has access to the JIRA 12:21:40

6 and Confluence databases." Did I read that 12:21:42 7 correctly? 12:21:45

8 A. Correct. 12:21:46

9 Q. How did you learn that Byton had access to 12:21:48

10 its JIRA and Confluence databases? 12:21:50 11 A. I spoke to the IT person after my 12:21:55

12 deposition to confirm, because I was not hundred 12:21:58

13 percent sure when I made the deposition, so I 12:22:02

14 checked with IT person at that time. 12:22:05 15 Q. Did anyone ask you to check with the IT 12:22:10 16 person? 12:22:12 17 A. No. After the deposition, I felt that I 12:22:17

18 was not hundred percent sure about that, so I should 12:22:19

19 check it, so I did that on my own. And I reached 12:22:23

20 out to the counsel to change my -- 12:22:26

21 MR. SIPPRELLE: All right. Hold on, 12:22:30

22 Mr. -- don't talk about anything with your attorney. 12:22:31

23 Okay? That's privileged. 12:22:35

24 MR. ESTES: Q. And so then your 12:22:40

25 declaration stated that Byton would undertake a 12:22:42

Page 327

1 reasonable search of these two databases it has 12:22:44

2 access to, correct? 12:22:49

3 A. Correct. 12:22:51

4 Q. Did Byton search the Confluence database 12:22:51

5 to collect relevant documents prior to August 2020? 12:22:53

6 A. Would have done if the database was 12:23:10

7 active. I do not know exactly -- exactly when 12:23:13

8 accesses were removed or reinstalled, reinstated. 12:23:21

9 Q. So access to Confluence and JIRA were 12:23:29

10 removed and then reinstated at some time? 12:23:35

11 A. I do not know the specifics, but the IT 12:23:38

12 person had access to the backup server. 12:23:40

13 Q. So the Confluence and JIRA databases 12:23:46

14 searched by Byton were from the backup server rather 12:23:48

15 than in the existing databases themselves? 12:23:51

16 A. The mirrored server, as we call it, which 12:24:01

17 resides in our network. 12:24:04

18 Q. And that's what Byton searched, rather 12:24:06

19 than the Confluence or JIRA database that access had 12:24:13

20 been revoked from? 12:24:18

21 A. I do not know the specific search. 12:24:30

22 Q. So it is correct that you do not know 12:24:49

23 whether Byton searched the Confluence database to 12:24:52

24 collect relevant documents prior to August 2020? 12:24:55

25 A. Could you repeat that, please? 12:25:07

EXHIBIT "E1"

**David J. Cook**

| | |
|---|---|
| **From:** | David Cook [cook@cookcollect.com] |
| **Sent:** | Monday, December 20, 2021 8:54 AM |
| **To:** | 'lester.vincent@WBD-US.com'; 'team@byton.com'; 'zhanging@faw.com.cn'; 'ksipprelle@vstriallaw.com'; 'Evangeline A.Z. Burbidge'; 'Kenneth M. Walczak'; 'Cook@squeezebloodfromturnip.com'; 'info@byton.com'; 'na-pr@byton.com'; 'David Cook' |
| **Subject:** | NOTICE OF EX PARTE FOR ISSUANCE OF ORDER UNDER C.C.P. SECTIO 699.040(a)&(b) |

Notice to All:

Please take notice that EDAG Engineering GmbH is going to file an Ex Parte Application for issuance of an Turnover Order pursuant to C.C.P. Section 699.040(a)&(b) and Section 699.070(a) [Appointment of a receiver in lieu of US Marshal] for the Intellectual Property and related property ("BNA IP") in the hands of JAMA SOFTWARE INC.

Upon granting the Application, as described herein, the court will issue a turnover order directed to Byton North America, by and through a receiver, as the surrogate, substitute, agent, and designee, to turn over the BNA IP to the United States Marshal, Eastern District of California, pending execution upon the BNA IP originally in the hands of JAMA SOFTWARE Inc., and sale thereof under C.C.P. Section 700.170 and Section 701.520(b) by the US Marshal or Receiver.

Please advise if you will consent.

David J. Cook, Esq., Cook Collection Attorneys PLC., 165 Fell Street, San Francisco, CA 94102 9r415)  989-4730

EXHIBIT "E2"

## David J. Cook

| | |
|---|---|
| **From:** | David Cook [cook@cookcollect.com] |
| **Sent:** | Monday, December 20, 2021 12:30 PM |
| **To:** | 'ZHANGYING@FAW.COM.CN' |
| **Subject:** | FW: NOTICE OF EX PARTE FOR ISSUANCE OF ORDER UNDER C.C.P. SECTION 699.040(a)&(b) |

**From:** David Cook [mailto:cook@cookcollect.com]
**Sent:** Monday, December 20, 2021 8:54 AM
**To:** 'lester.vincent@WBD-US.com'; 'team@byton.com'; 'zhanging@faw.com.cn'; 'ksipprelle@vstriallaw.com'; 'Evangeline A.Z. Burbidge'; 'Kenneth M. Walczak'; 'Cook@squeezebloodfromturnip.com'; 'info@byton.com'; 'na-pr@byton.com'; 'David Cook'
**Subject:** NOTICE OF EX PARTE FOR ISSUANCE OF ORDER UNDER C.C.P. SECTIO 699.040(a)&(b)

Notice to All:

Please take notice that EDAG Engineering GmbH is going to file an Ex Parte Application for issuance of an Turnover Order pursuant to C.C.P. Section 699.040(a)&(b) and Section 699.070(a) [Appointment of a receiver in lieu of US Marshal] for the Intellectual Property and related property ("BNA IP") in the hands of JAMA SOFTWARE INC.

Upon granting the Application, as described herein, the court will issue a turnover order directed to Byton North America, by and through a receiver, as the surrogate, substitute, agent, and designee, to turn over the BNA IP to the United States Marshal, Eastern District of California, pending execution upon the BNA IP originally in the hands of JAMA SOFTWARE Inc., and sale thereof under C.C.P. Section 700.170 and Section 701.520(b) by the US Marshal or Receiver.

Please advise if you will consent.

David J. Cook, Esq., Cook Collection Attorneys PLC., 165 Fell Street, San Francisco, CA 94102 9r415)  989-4730

1