David J. Cook (SBN 60859)
COOK COLLECTION ATTORNEYS, PLC
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

**LEWIS & LLEWELLYN LLP**
Evangeline A.Z. Burbidge (Bar No. 266966)
eburbidge@lewisllewellyn.com
**Marc R. Lewis** (Bar No. 233306)
mlewis@lewisllewellyn.com
**Kenneth M. Walczak** (Bar No. 247389)
kwalczak@lewisllewellyn.com
**Bradley E. Estes** (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile: (415) 390-2127

Attorneys for Petitioner EDAG Engineering GmbH, a corporation organized and existing under the laws of the Republic of Germany

**VAN ETTEN SIPPRELLE LLP**
KEITH A. SIPPRELLE (SBN 143358)
DAVID B. VAN ETTEN (SBN 119049)
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone: (805) 719-4900
Facsimile: (805) 719-4950
ksipprelle@vstriallaw.co

Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>    Petitioner, | Case No. 3:21-cv-04736-EMC<br><br>**JOINT STATEMENT OF MEET AND** |

| | |
|---|---|
| v.<br><br>BYTON North America Corporation,<br><br>Respondent. | **CONFER**<br><br>Date: February 2, 2022<br>Time: TBA<br>Judge: Thomas S. Hixson<br><br>Petition Filed: June 23, 2021 |

1. EDAG ENIGINEERING GmbH (EDAG) and BYTON NORTH AMERICA CORPORATION (BNA) attest that they have met and conferred in good faith to resolve their disputes.

2. Attached to this cover sheet are the parties' positions, factual background requested, relief, and citations.

Dated: February 2, 2022

COOK COLLECTION ATTORNEYS, PLC

By: _____
David J. Cook
Attorneys for Petitioner EDAG Engineering GmbH

Dated: February 2, 2022

VAN ETTEN SIPPRELLE LLP

By: _____
Keith A. Sipprelle
Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

---
2
JOINT STATEMENT OF MEET AND CONFER

### EDAG ENGINEERING GMBH'S ("EDAG") OPPOSITION OF MEET AND CONFER

EDAG served two (2) subpoena's ("SDT") (1) Service upon BNA through the Secretary of State on January 7, 2021 (*Exhibit "A"* for the SDT and *Exhibit "B"* for the POS); (2) Service upon Sadha Kamaeswaran as Custodian December 22, 2021 and January 4, 2022 (*Exhibit "C" and "D"*) BNA objected to the SDT on January 4, 2022 and copies thereof, marked *Exhibits "E"* and *"F."* Mr. Sipprelle acknowledged receipt of the SDT per the attached email of January 10, 2021 and January 5, 2022 of meeting and conferring. *Exhibit "G."* Mr. Sipprelle received copies of the SDT via email on December 21, 2021 (*Exhibit "H"*)

On January 31, 2022, EDAG and BNA through counsel engaged in a meet and confer subject to a court reporter. BNA agreed to keep records "4. (Doc. # 85.-1, P. 7, Par. 4.5)"

### ISSUES AT HAND AND RELEVANCE OF RECORD OF SDT

EDAG filed a motion to amend the judgment to add Byton-Limited (Doc. # 71 and # 72.) BNA makes the following claims:

1.  Here, the evidence submitted by Byton NA demonstrates that Byton Limited is not the alter ego of Byton NA. As set forth in the Ying Declaration, Byton NA and Byton Limited are separate and distinct legal entities that, inter alia, maintained separate financial books and records, **and did not intermingle funds.**" (Doc. # 85, P. 9, LL. 8-11)

2.  "As Chairman of the Board of Directors of FMC Cayman, I have acquired personal knowledge of the history, structure and operations of Byton Limited and Byton NA based on my **review of corporate documents and records** as well as discussion with other individuals with personal knowledge." Doc. # 85-1, P. 1, LL. 7 to 10)

### DISCOVERY AT HAND AND DISPUTES

**The summary of the SDT's are the following:** **

"4. Any and all financial statements, whether audited or unaudited, ledgers, journals, internal financial statements, credit reports, credit applications, outside or inside financial statements, representation of the financial conditions of BNA, any financial records generated from a third party of BNA, notes, narrative, chronicles, or histories of BNA account commencing on January 1, 2018 to date hereof......

13. Any and all accounting entries, financial statements, journals, ledgers, audited or unaudited financial statements, agreements, contracts, emails, text message, letter agreement or any other communications or writings to discuss, justify, explain, add to, or make statement of, for the transfer of any patents of the (a) BNA patents for the years of 2019 to 2021 to BNA Limited (i.e., BNA, LTD) ......

15. Any and all deposits of any type and from any person, including revenue, sales proceeding, loan proceeds from anyone, proceeds from the sale of any assets, funds from a third party for purpose of capital from hedge funds, and venture capitalists, revenue from other related entities, such as BYTON Limited ........ for those precisely records." (Copies are attached as *Exhibits "A"* and *"B"*)
** The entirety of the SDT is at issue, and not just these three items.

1

### BNA'S OBJECTION

"2. Even if the deposition subpoena had been properly directed to Mr. Kamaeswaran on behalf of Byton NA and/or Byton Limited, the document requests contained in the subpoena are overbroad, harassing, oppressive, vague, ambiguous, seek materials that are neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence, potentially seek production of materials protected by the attorney-client privilege, and are invasive of privacy rights protected by the California Constitution."

**The Response to the Objection:**

1. EDAG is entitled to all records of BNA based for purpose locating assets for enforcement. " *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, *4 (N.D. Cal. Dec. 19, 2009) (emphasis in *original).*

2. The objection is boilerplate and therefore invalid. General or boilerplate objections are invalid; objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. [Citations omitted] . . . . . . *In re Terrell,* 569 B.R. 881, 887–88 (Bankr. W.D. Okla. 2017)

3. Claims of overbroad, harassing, oppressive, vague and ambiguous is without any merit. *Smash Tech., LLC v. Smash Sols., LLC,* 335 F.R.D. 438, 441 (D. Utah 2020).

### SERVICE OF THE SDT IS FREE OF ANY DEFECT

EDAG's service of the SDT is timely and the test is prejudice, not timeliness of the service of the SDT. "*Vondersaar*, 2013 WL 191546, at *2*Vondersaar*, 2013 WL 191546, at *2 (declining to quash subpoenas where notice was not given until 3 days after service because defendant suffered no prejudice because it independently learned of the subpoenas soon after they were issued)" *Fuji vs. Finisar Corporation* USDC ND CA 2015 WL 5782351 P. *4 (collection of cases). Other cases follow that "when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45 notice requirement." *Vondersaar v. Starbucks Corp.*, No. C 13-80061 SI, 2013 WL 1915746 at *2, 2013 U.S. Dist. LEXIS 65842 at *5-6 (N.D. Cal. May 8, 2013) ("The Court finds that Starbucks has suffered no prejudice from the violation of Rule 45(b)(1). *JW Gaming Developement LLC vs. James* USDC ND Cal 2021 WL 232265 Footnote 8 (collection of cases). *Tucker v. AMCO Insurance Company,* United States District Court, E.D. California. 2019 WL 3767579 *4).

### BNA'S RECORDS ARE NOT LOCATED IN THE UNITED STATES

On January 31, 2022, David J. Cook, and Keith Sipprelle engaged in a meet and confer:
1. BNA has no record and no way to get anyone from BNA to look for and produce records because there isn't any. (P. 6, LL. 28, P. 7, LL. 1-3).' 2. Affiliate in China would search a server in China for records. (P. 7, LL. 4 to 9) 3. The records in China are very disorganized, difficult to locate and organize the BNA records. (P. 8 LL. 7-17). 4. Document are claimed to be [on] a server in China. (P. 8, LL. 21-24) 5. The server is in a Cloud in China; and Mr. Sipprelle does not the name of the person doing something and does not know the name of the affiliate business. (P. 9, LL. 1 to 16) . 6. Mr. Sipprelle does not know the name of cloud server, affiliate or person in charge. (P. 9, LL. 1-16). 7. BNA has no place of business and on employees. (P.

2

13, LL. 6-15). 8. Mr. Sipprelle has no known the records that BNA was obligated to keep. (P. 13, LL. 6-23). 9. The records are not in the United States, but in China (and does not deal with the person or have an email and not dealing directly with the unknown affiliate but dealing with an intermediate.) P. 15, line 5-21). 10. The alleged records are located in the cloud server in China. (P. 16, line 10- 25). 11. Mr. Sipprelle has no knowledge of the name assigned to look through the server (P. 17, LL. 1-18). 12. Mr. Sipprelle has no ability to talk to anybody at BNA. (P. 18, LL. 21-28, and P. 19, LL. 1 to 2). 13. Records are not organized "So it's; kind of a mess to figure out what is there. (P. 19, LL. 1-12). 14. No access to the email. P. 22 10 to 25). 15. Mr. Sipprelle does not have the name of the Affiliate, the person in charge, and not talking to anyone directly. (P. 26, 20-28; LL. 27, LL. 1 to 17).

## The Sole Recourse:

At the Meet and Confer, Mr. Sipprelle admits BNA's records are NOT located in the United States and implies that the records do not exist at all anywhere. EDAG seeks an order compelling production with BNA bearing the consequences.

**********************************************************************

## BYTON NORTH AMERICA'S POSITION

Counsel for EDAG and Byton North America ("BNA') have meet and conferred by email and Zoom, and substantial progress was made in narrowing the issues in dispute. The two areas that were the subject of the meet and confer process are further discussed below:

**A.   EDAG's production of documents obtained in response to third-party subpoenas.**

EDAG issued subpoenas to Silicon Valley Bank, HSBC Bank, JPMorgan Chase Bank and JAMA, and obtained records in response to these subpoenas. EDAG's counsel David Cook initially refused to provide BNA with copies of the documents EDAG obtained in response to these subpoenas. *Federal Rules of Civil Procedure* 45 requires timely production of any documents obtained through a subpoena to an opposing party. *See, e.g., Tasco v. IBEW, Local #98*, 2014 U.S. Dist. LEXIS 186746 (ED PA, Pennsylvania Eastern District Court, May 12, 2014) at *9, 10. During the meet and confer process, EDAG's counsel Mr. Cook reversed position and agreed to provide BNA with copies of the documents obtained by EDAG in response to these third-party subpoenas. Accordingly, this issue appears to have been resolved, although BNA's counsel has not yet received the promised documents from Mr. Cook.

**B.   EDAG's BNA Subpoenas.**

EDAG issued the following two subpoenas seeking to obtain BNA records from: (a) former BNA employee Sadha Kameswaran as the "Custodian of Records" for BNA, with a production date of January 19, 2022; and (b) the Custodian of Records for BNA served on BNA through the California Secretary of State on January 7, 2022 with a production date of January 19, 2022. Both subpoenas seek production of the same BNA records.

BNA objected to the subpoena served on Mr. Kameswaran on the basis, *inter alia*, that Mr. Kameswaran is not the BNA custodian of records nor is he authorized to accept service of any documents on behalf of BNA. Mr. Kameswaran's last day of employment with BNA was December 31, 2021. As such, the subpoena directed to Mr. Kameswaran requiring him to produce BNA records on January 19, 2022 in his capacity as BNA's Custodian was a legal

nullity. In any event, as BNA's counsel indicated during the meet and confer process, the same documents were sought in the subpoena directed to the Custodian of Records for BNA, so there was no need to further debate the propriety of the subpoena delivered to Mr. Kameswaran.

With respect to the subpoena directed to the Custodian of Records for BNA, this subpoena was served on BNA through personal service on the California Secretary of State on January 7, 2022. The subpoena required a BNA custodian to produce documents on January 19, 2022. However, BNA no longer has a Custodian of Records, as it has not had any employees since December 31, 2021. Moreover, *Fed.R.Civ.P.* 45(c)(2)(B) sets a reasonable time for compliance with a Rule 45 subpoena as fourteen days after service of the subpoena. *See, e.g., Donahoo v. Ohio Dep't of Youth Servs.* (N.D. Ohio, 2002) 211 F.R.D. 303, \*\*11. Based on the January 7, 2022 service date and the January 19, 2022 return date of the subpoena directed to BNA, EDAG provided BNA with only 12 days to comply with the subpoena. In fact, however, EDAG provided BNA with only 2 days to comply, as service on an entity through the California Secretary of State pursuant to *Corporations Code* Section 1702(a) "is deemed complete on the 10th day after delivery of the process to the Secretary of State." Given the extremely broad scope of the documents being sought by EDAG's subpoena, two days (or even 12 days) to comply was not a reasonable time to comply. Accordingly, BNA objected to the subpoena on January 18, 2022 on the basis of inadequate notice. BNA also served objections to the subpoena's document requests on the grounds that the requests are " . . . overbroad, harassing, oppressive, vague, ambiguous, seek materials that are neither relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence, potentially seek production of materials protected by the attorney-client privilege, and are invasive of privacy rights protected by the California Constitution."

Notwithstanding the defects in EDAG's subpoenas, BNA's counsel indicated during the meet and confer process that subject to EDAG's agreement to clarify and limit the extremely overbroad and burdensome scope of the requests in the subpoena directed to BNA, BNA would agree that EDAG's subpoena directed to the Custodian of Records for BNA and served through the California Secretary of State on January 7, 2022 need not be re-served; and that reasonably responsive documents (as agreed to during the meet and confer process) that were located would be produced by April 15, 2022 (but that earlier "rolling productions" would be made as responsive documents were located).

BNA has had no employees since December 31, 2021. Thus, BNA has no "Custodian of Records," and BNA's counsel no longer has anyone at BNA to confer with regarding document issues. However, BNA's counsel has been informed that some BNA documents were backed up to a cloud server which can be accessed in China. Unfortunately, it does not appear that the BNA documents that were backed up to the cloud-based server were backed-up in any organized fashion. BNA's counsel also has been informed that an employee of a Byton-affiliated company in China has been tasked with attempting to determine what BNA documents may be available on the cloud server, and to attempt to organize the documents that can be located. This is proving to be a cumbersome and time-consuming task, particularly without clear direction as to what should be searched for.

The EDAG subpoena at issue sought 18 broad categories of documents. During the meet and confer process, resolutions were reached regarding a number of these requests. EDAG's portion of this joint letter addresses only three requests (nos. 4, 13 and 15), although EDAG belatedly

4

added a vague footnote that "the entirety of the SDT is at issue." BNA does not understand what EDAG means by this vague footnote, and will therefor address below only nos. 4, 13 and 15.

**Request No. 4**. *Any and all financial statements, whether audited or unaudited, ledgers, journals, internal financial statements, credit reports, credit applications, outside or inside financial statements, representation of the financial conditions of BNA, any financial records generated from a third party of BNA, notes, narrative, chronicles, or histories of BNA account commencing on January 1, 2018 to date hereof.*

BNA's Response and Proposal: Although this request is overbroad and somewhat vague, BNA's counsel proposed during the meet and confer process to make a request that a thorough search be made of the cloud server for BNA's financial statements for the years 2018 – 2021.

**Request No. 13**. *Any and all accounting entries, financial statements, journal, ledgers, audited or unaudited financial statements, agreements, contracts, emails, text message, letter agreement or any other communications or writings to discuss, justify, explain, add to, or make statement of, for the transfer of any patents of the (a) BNA patents for the years of 2019 to 2021 to BNA Limited (i.e., BNA, LTD) and (b) transfer of the intellectual property, charts, grafts, designed, technical data, formulas, scientific information originating from EDAG Engineering Gmbh (collectively EDAG-IP) which BNA or any entity related to BNA or any entitled associated to BNA in filing an application for a patents, and success in the granting a patent by the USPTO which the patents incorporated EDAG- IP.*

BNA's Response and Proposal: As worded, this request is vague, uncertain and largely unintelligible. During the meet and confer process, Mr. Cook clarified that this request seeks documents relating to the purported fraudulent conveyance of 22 patents from BNA to Byton Limited. However, this request is of no relevance, as Judge Chen previously rejected EDAG's request to have a receiver appointed to recover and sell these patents based on EDAG's claim that these patents were fraudulently assigned to Byton Limited. As Judge Chen stated in his order of January 13, 2022 (Document 89, page 4), EDAG cannot pursue a fraudulent conveyance claim with respect to these 22 patents without Byton Limited being made a party to the litigation.

**Request No. 15**. *Any and all deposits of any type and from any person, including revenue, sales proceeding, loan proceeds from anyone, proceeds from the sale of any assets, funds from a third party for purpose of capital from hedge funds, and venture capitalists, revenue from other related entities, such as BYTON Limited, deposits from any employees, officers, shareholder, directors or any family members, refunds from any person, including the landlord, PG&E, refunds from any vendor, refuses from any insurance companies, the IRS or tax authorities or any other person or anyone on its behalf commencing on January 1, 2018 to date hereof for the accounts of BNA.*

BNA's Response and Proposal: Although this request is vague, uncertain and overbroad, EDAG's counsel clarified during the meet and confer process that he was seeking documents evidencing deposits into BNA accounts beginning on January 1, 2018. Presumably, these documents already have been obtained by EDAG in response to its subpoenas to the BNA's banks. In the spirit of compromise, however, BNA's counsel agreed during the meet and confer process to request that a search be made of the cloud server for documents evidencing deposits into BNA accounts on or after January 1, 2018.