Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

EDAG ENGINEERING GmbH,

Plaintiff,

VS.

BYTON NORTH AMERICA CORPORATION,

Defendant.

NO. 21-cv-04736-EMC

San Francisco, California

Thursday, December 9, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**: (By Zoom Webinar)

For Plaintiff:

COOK COLLECTION ATTORNEYS, PLC
165 Fell Street
Post Office Box 270
San Francisco, California 94104
**BY: DAVID J. COOK, ESQ.**

LEWIS & LLEWELLYN, LLP
601 Montgomery Street
Suite 2000
San Francisco, California 94111
**BY: EVANGELINE ZIMMERMAN BURBIDGE, ESQ.**
**KENNITH MICHAEL WALCZAK, ESQ.**

For Defendant:

VAN ETTEN SIPPRELLE LLP
2945 Townsgate Road
Suite 200
Westlake Village, California 91361
**BY: KEITH A. SIPPRELLE, ESQ.**

Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
Official Reporter, U.S. District Court

**Thursday - December 9, 2021** **1:36 p.m.**

**P R O C E E D I N G S**

**THE COURTROOM DEPUTY:** Calling Civil Action 21-4736, EDAG Engineering versus Byton North America Corporation.

Counsel, please state your appearances for the record, beginning with counsel for plaintiff.

**MR. WALCZYK:** Good afternoon, Your Honor this is Kenneth Walczyk. I'm here on behalf of petitioner EDAG.

**MS. BURBIDGE:** And this is Evangeline Burbidge. I'm also from Lewis & Llewellyn with Mr. Walczyk, on behalf of EDAG.

**THE COURT:** Good afternoon, Ms. Burbidge.

**MR. COOK:** David Cook on behalf of EDAG likewise, the petitioner.

**THE COURT:** All right, thank you.

**MR. SIPPRELLE:** Good afternoon --

**THE COURT:** Is that Mr. Sipprelle? I think we have lost contact.

**MR. SIPPRELLE:** Good afternoon.

**THE COURT:** Okay can you hear us? Is that Mr. Sipprelle?

**MR. SIPPRELLE:** Yes, it is, Your Honor. Can you hear me okay? I'm having -- I am have an issue with my connection here.

**THE COURT:** Okay. We can't see you, but that's okay

-- oh, now we can see you. The main thing, your audio was cutting out. But now I can hear and see you, so I hope you're okay.

**MR. SIPPRELLE:** Thank you, Your Honor. Hopefully this will work. I'm having a little connection problem.

**THE COURT:** All right. So as I understand it, you had the original final arbitration award, which was rendered in June. There's been -- there was a petition to confirm the award. There's been, no, as I see it, opposition to that award.

But then there was, after that, a -- I guess what's called a preliminary injunction, signed off by the arbitrator in November that is now complicating things because, as I understand it, EDAG wants that preliminary -- the terms of the preliminary injunction to be sort of incorporated now into the confirmation of the initial award, or the final arbitration award.

And as I understand it, Byton is saying: Well, if you do that, that starts the clock again, and we get our 90 days or three months to file an opposition.

And I frankly don't see why -- seems like we're conflating, or the parties are wanting to conflate these two orders. One is a final arbitration order that was issued, and then there was a followup injunction. And it seems to me that those are two separate matters.

The -- the June 20th, 2021, final arbitration award is subject to confirmation. The clock has run. That's the basis, that's the meat of the matter.

I understand that there's -- now seeking some preliminary injunctive relief, but that wasn't issued until November. And if we treat that as a separate order of the arbitrator, that is subject to the 90-day objection or the three-month objection rule.

So why aren't we treating these two things separately? I guess that's my question.

And I'll let anybody answer that, because you're both kind of in the middle here.

**MR. WALCZYK:** So Your Honor, this --

**MR. SIPPRELLE:** I'm happy to address this --

**MR. WALCZYK:** I'm not sure --

**MR. SIPPRELLE:** This is Mr. Sipprelle. I mean, I guess that would solve the problem. I mean, if it would simply -- we were simply dealing with the original award and the motion to confirm the final arbitration award in June, I'm not sure Byton would have much to talk about, because yes, we agree that time has run on that, and probably would be appropriate for the award to be conferred.

But as Your Honor noted, this preliminary injunction from November, which they now -- EDAG wants to now weave into the final judgment, which includes, you know, not just an

injunction, but findings on ownership of intellectual property, things that were never part of the underlying arbitration proceeding, I mean, we need a chance to contest all of that. We think that was an inappropriate ruling. And we need our 90 days to contest it.

So if -- you know, what EDAG is trying to do is weave those two together, conflate them, as Your Honor has indicated. And that is not fair -- that doesn't give Byton an opportunity to respond and contest the November 8th arbitrator's ruling. So I think we -- we are entitled to do that. And we would respectfully ask that we be entitled to do that.

The original award, I agree, the time has run on that. But this thing from November, we need our 90 days to -- and we intend to move to contest that, that rule.

**THE COURT:** All right. So let me hear from EDAG.

And I should roll into this discussion, because I think I know what you're going to say, is that you're concerned about dissipation, the transfer and all sort of stuff. But tied with that is a question about relief from the automatic stay.

If I were to, based on your showing, grant that relief so you can commence enforcement without the aid of this special preliminary injunction, wouldn't that -- would that still present a problem if I treated the two as two separate awards, two separate clocks, but enforced -- gave final confirmation to the FAA, the final arbitration award, give relief from the

automatic stay?

Why wouldn't that be enough?

**MS. BURBIDGE:** Um --

**MR. WALCZYK:** I'm happy to address that, Your Honor.

**THE COURT:** I'll toss it to one of you, so --

**MS. BURBIDGE:** Many faces in the crowd. Your Honor, my colleague Mr. Walczyk will take this one.

**THE COURT:** All right. Mr. Walczyk?

**MR. WALCZYK:** Sorry about that. I didn't realize I was talking over people. I'm happy to address that, Your Honor.

I think that the two prongs that you've suggested confirming the arbitrator's final award and granting relief from the Rule 62(a) stay would be almost enough.

I think it's really three things that the judgment would need to include, in order for us to preserve any ability to collect any amount of the assets that are still remaining from Byton towards the more than $30 million that is concededly owed to EDAG. Right?

And so those three components are confirming the judgment -- confirming judgment, including our interest in the intellectual property; granting relief from the Rule 62(a) stay; and granting the relief that our colleague Mr. Cook just asked the Court for, which allows us to proceed with collection in other states.

That particular element of the relief is necessary because the intellectual property is on a server in Portland. And so we need the ability to collect in other jurisdictions besides California.

As far as decoupling the two orders, I would just like to point out that it simply isn't true that there's anything new or different in the injunctive relief order. The injunctive relief order from the arbitrator just confirms what he found in his original analysis, which is that the intellectual property belongs to EDAG, until Byton has fully paid for it. That isn't a new finding; it's simply confirmation of something the arbitrator believed and ruled on, all along.

You know, the arbitrator, Judge Cahill, Your Honor, sat with this case for more than 18 months. And he presided over a full trial-like proceeding. And he issued a very thorough final award after a two-week trial-like hearing.

So at the conclusion of that proceeding, he made this decision. We simply asked him to reaffirm it, once it became clear that Byton was transferring assets out of the jurisdiction.

And so, you know, if Mr. Sipprelle and Byton were to be given a new clock to challenge these provisions, right, it would be rewarding them for their effort to make themselves judgment-proof. Right?

In other words, we went to the arbitrator, and we did what

the law asks us to do. We said, with eyes wide open: Please rule on the best way for us to pursue relief, now that we know Byton is trying to transfer assets, including impermissibly trying to access our intellectual property.

The arbitrator had us brief jurisdiction on the matter. Relied on the cases saying that the way to preserve the status quo, pending entry of judgment by Your Honor, was to issue this sort of injunctive relief. And found that injunctive relief was proper.

So it's simply an order preserving the status quo and reflecting the original findings. There's nothing new or different in it for Byton to challenge, if we were to start a new clock.

And I would just suggest that the rule cannot be that once you catch a party trying to dissipate assets, that they will be rewarded for those actions by getting a new 90-day clock in which to dissipate more assets.

**MS. BURBIDGE:** And Your Honor, if I may, just briefly -- and I want to make sure that our co-counsel Mr. Cook has a moment to chime in.

But, to come back to your initial question, yes, confirmation of the arbitration award, we absolutely would ask Your Honor to do that, today. And there's just no dispute about that.

I think that the second question here is how to insure

that our client is able to collect, particularly in light of the evidence that there is a dissipation of assets.

And, you know, if the injunction is giving Your Honor heartburn, we'll, you know, forego the injunction. What we're seeking here is the confirmation that this is EDAG's -- our client's -- IP that they were not paid for. That they've not been paid for by Byton.

And in terms of the collection piece, I would ask Mr. Cook to respond to your question of: Is this enough, with regard to the Rule 62 motion and the additional motion he filed, because he is the expert there.

**THE COURT:** Let me ask you an additional question. Obviously, you are seeking some form of ancillary relief. Because otherwise, you won't have asked for it, and the arbitrator wouldn't have gone through that.

**MS. BURBIDGE:** Yes. That's right.

**THE COURT:** So the question is, you know, under the arbitration laws, when -- when either ancillary relief is awarded or there is, in effect, kind of an amendment of an order, an arbitration order, under what circumstances does the clock run?

Is it -- is it -- is the test one of materiality? Is it one that's looking at it, mechanically? I didn't see much -- didn't hear much case law on when the clock runs and when it doesn't run.

And then another question I ask is: Does this Court have power, other than to just confirm the award, to -- to issue some kind of -- I don't know, injunctive relief, without having -- having to go through the confirmation of an arbitrator going through?

Does this Court have sort of almost like, you know, the great writ, the ancillary powers to enforce, you know, inherent -- protect its orders. Like the All Writs Act kind of a thing. Does that exist?

**MS. BURBIDGE:** So I want to turn it over to my colleague, Mr. Walczyk, Your Honor, briefly.

I would say that, you know, I think, you know, he's going to point out what the arbitrator is allowed to do -- and the case law is clear -- is to preserve the status quo so that the arbitrator's order can be enforced. And that doesn't restart the clock, right?

It's the idea that if you were to catch someone dissipating assets, they're not rewarded by getting 90 more days to dissipate more assets. Right?

**THE COURT:** What is the effect of the preliminary injunction order issued by -- as we sit here right now. The finding?

**MS. BURBIDGE:** So the effect of the preliminary injunction -- as a practical matter, right, what happened was EDAG saw the car that it helped design, that it was not paid

for, in the news. Right? In China.

And it discovered then by speaking to -- we have a declaration from counsel for this third party, JAMA. JAMA had the IP for this car. And in speaking with this counsel at JAMA, EDAG learned that Byton had been trying to move that IP to a server located solely in China, outside the reach --

**THE COURT:** Yeah, no, I understand the basis. I'm asking a more simple question.

Is the arbitrator's order of November enforceable as -- does it have force and effect, as we sit here right now, of its own accord?

**MS. BURBIDGE:** So, Mr. Walczyk, do you want me to turn it over to you to talk about the case law as regards to that?

**MR. WALCZYK:** Mr. Sipprelle would say no, Your Honor, that that -- it has to be confirmed by Your Honor; it has to be an order of this Court. And as I indicated before, we need an opportunity to contest that.

That entire ruling was based on the premise that EDAG owns this intellectual property, which we contest. That was not an issue in the arbitration. And it was a ruling made by the arbitrator months after the arbitration was closed, and the final award was issued.

**THE COURT:** All right. But what about the transfer of assets to liquefy -- I'm not saying this happened, but what

is a creditor to do who has the benefit of a judgment or an order that's been confirmed, but then has since learned that there's been some dissipation. Your typical, you know, fraudulent-transfer situation.

What can a creditor do in an arbitration situation? You go back to the arbitrator, get an ancillary award saying: Don't transfer the stuff, keep it status quo. But, under your theory, that's -- that order is only like a tentative ruling, has no force and effect until it is confirmed by a court at least 90 days thereafter.

What can a creditor do to get expedited relief, if there's something like -- I'm not saying there's something ongoing. But if there were fraudulent transfers going on, what could a creditor do in that situation?

**MR. SIPPRELLE:** Well, the creditor could have -- and should have in this case, in my view -- simply gotten their judgment, the order or ruling confirmed, and moved to enforce and collect on the judgment. That's what they should have done, months ago.

You know, we, of course, dispute that there's any kind of fraudulent transfer going on. I mean, if they want to pursue that at a later date, you know, a fraudulent transfer, that's a separate action. I suppose they can pursue a fraudulent conveyance action, if they think they have some basis for that.

But I think what the -- the approach that have would have

taken is simply get this final arbitration award confirmed, and then move to collect on the monetary award.

**THE COURT:** Is that the only remedy? There's no ancillary remedy -- other than going through the mechanics of the rather elongated process of getting an ancillary award from the arbitrator, and then seeking enforcement of that through the confirmation proceeding, there's no -- like, like an injunction pending appeal kind of thing. There's no --

**MR. SIPPRELLE:** Oh, there is, Your Honor, under California law, and federal courts do this all the time. You can get a pre-judgment writ of attachment. You get the attachment from the court. And then you go and you start serving the attachment notice on banks or where -- wherever.

So they could have done that. They could have done that at the beginning of this arbitration proceeding.

**THE COURT:** So enforcement of the Court's judgment can proceed without going back to the arbitrator. In other words, getting, for instance, provisional remedies like a writ of attachment.

**MR. SIPPRELLE:** Sure. Sure. Absolutely, that could be done.

**THE COURT:** Let me now turn the ball back to you, Mr. Walczyk.

Why isn't that enough? If I confirm today the final arbitration award, I also waive the -- the automatic stay. And

if you want to seek enforcement mechanisms like garnishment, attachments, et cetera, like any other judgment, you can do that.

**MR. WALCZYK:** Sure, Your Honor. I'll just respond to Mr. Sipprelle's contentions.

You know I think, first of all, it's not up to the party who -- first of all, there's no question that the asset dissipation's going on. We know that that's happening. We supplied proof, and they haven't controverted it. To the contrary, they've put in a sworn declaration saying that they are, as a matter of course, transferring patents from North America to China, without consideration. The hallmarks of a fraudulent transfer.

More to the point, it shouldn't be up to the party who has been caught dissipating assets to choose the remedy that the other party which has the benefit of a judgment in its favor can seek. It isn't Byton's call as to which remedy we choose.

Secondly, we did exactly what the statutes require, exactly what the case law requires. We went to the arbitrator first. And we asked the arbitrator for an order preserving the status quo. And the arbitrator said: Quite frankly, I don't know what the right procedure is; please brief the issue to me.

So we briefed the issue. Byton, which now says that it should have an opportunity to start some new clock based on this order, argued that the arbitrator had no jurisdiction to

enter an order at all.

The arbitrator disagreed with that. The arbitrator cited the case law that we provided, saying that the Northern District and the Ninth Circuit have a preference in favor of pursuing provisional relief in front of the arbitrator, instead of front of Your Honor.

That just flows from the principle that the arbitrator is the person best acquainted with the facts and the case, and that the idea of the FAA is to keep these sorts of complicated matters off of Your Honor's docket.

So the arbitrator said: The appropriate thing to do is for me to issue an order preserving the status quo until the Court rules on it and confirms the award. So we did that. We did everything in lockstep with the law, and with the statute.

On the other side of things, Mr. Sipprelle and Byton have supplied no cases, whatsoever, in which an order along these lines has been held to restart a clock. There simply isn't any of those cases. In fact, the cases that Mr. Sipprelle points to support us.

And because Your Honor asked a few minutes ago about case law, I would direct the Court to the *Fradella* case -- Fradella with a D -- which Mr. Sipprelle cited in his opposition. It's a case from the First Circuit. And that's a case in which the arbitrator, like in this case, issued a final award, and then went back and decided there were some errors of law in it.

The arbitrator went back and decided: Well, you know, New York law doesn't apply, so I'm going to delete some references to New York law. Did that some time later.

And just like Mr. Sipprelle, with the provisional relief that the arbitrator ordered here, the party against whom the arbitrator ruled went to the court and said: That's a new order. That's a new order. It's a whole new finding. We get a new clock. We get a new 90-day clock. Just as Byton is arguing here.

And the First Circuit rejected that. The First Circuit said: Look, if that were the case, if the limitations period in FAA Section 12 were subject to suspension just because an arbitrator later takes some action to correct it, even though the arbitrator originally intended to resolve all submitted claims, then an unsuccessful party could preclude the commencement or suspend the running of the limitations period simply by alleging error.

Right? The idea is you can't preclude the running of the period, or suspend it, or restart a clock just by alleging that the arbitrator did something new that you don't like. Whether that's the leading reference as to New York law or whether that's just issuing an order protecting the enforceability of the arbitrator's award and the Court's eventual judgment.

So the case that Mr. Sipprelle dug up from federal appellate law supports us here. And it discusses this exact

principle. That a final award is final; provisional relief is different.

And all we're asking Your Honor to do is to exercise the inherent powers of the Court to protect our ability to recover on the judgment, so we all agree --

**THE COURT:** Let me ask you about the inherent powers.

Do you agree that if -- once I -- if I confirm the final arbitration award, you've got a judgment. Right?

**MR. WALCZYK:** (Nods head)

**THE COURT:** And enforcement of the judgment would then, under the Federal Rules of Civil Procedure, default to state procedures. Correct?

Do you --

**MR. WALCZYK:** That's correct. Of course Mister --

**THE COURT:** You would have the entire panoply of enforcement mechanisms at your disposal.

**MR. WALCZYK:** That's correct, Your Honor. And, and obviously, we've started down that path already. You've seen our *ex parte* motions to that effect, and the Court has already granted a couple of those, and we appreciate that.

That's why we're asking, certainly, for relief from Rule 62(a). I think everybody agrees that Your Honor has the power to do that today, to suspend the post-judgment today. Right? And then it's just a question of how best to allow us to proceed with collections.

So my point is just that -- and Mr. Cook can speak in more detail to what is necessary to allow collection in other states. We certainly need that component of the relief. And then, there's also our interest in the intellectual property.

And all we're asking the Court to do along those lines is to --

**THE COURT:** Well, the interest in the intellectual property is either covered by the final arbitration order, or not. Right?

I mean, if I confirm it's in there, if it's fairly inferred from there, you know, I'm not going to opine on that. I just confirm it. I don't elaborate on it.

**MR. WALCZYK:** I think that's right, Your Honor. I think it (Inaudible) --

(Reporter interruption)

**THE COURT:** Hold on, the court reporter.

(Reporter interruption)

**MR. WALCZYK:** Certainly. I apologize.

I agree with you, Your Honor, that if you confirm the final award, its provisions regarding the intellectual property will be confirmed along with the rest of the arbitrator's findings. So, so we believe that it flows from the final award that this property remains in the hands of EDAG until Byton makes full payment for it.

And as Ms. Burbidge pointed out earlier, if it is

essential to getting this concluded today, to take the provisions that look like injunctive relief provisions out of our proposed order and remove the writ of possession for that intellectual property, we would accept that.

But the arguments we would make is that those provisions follow directly from the first order, and not from the injunctive relief order, which is simply a provisional measure intended to preserve the status quo.

**MS. BURBIDGE:** If I may, Your Honor, I'd actually like to turn it over just briefly to our co-counsel, Mr. Cook, who really is the collections expert on this. And I would like to offer his opinion as to that piece that you've asked about, because he is going to be able to articulate that, I think, most succinctly for Your Honor

**THE COURT:** All right. Mr. Cook?

**MR. COOK:** Thank Your Honor.

So, to make it simple, we need -- we need the Court to lift the stay under 62(a). That follows the ex parte under Section 1963, so I would be able to cross lines and go to Oregon or whatever it would be, and enforce my judgment, notwithstanding the 30 days from the date of entry.

I don't think there's -- we've gotten no meaningful opposition to it. And both of those would follow the 4.1(a) order which the Court granted, and the 1702(a) relief.

So, that being said, we've got pictures of the premises

here. And as the Court knows, the debtor has fled California. The place is empty. Its agent for service of process has resigned, and there's no replacement. And the only officer we found is now in Hong Kong, we believe, and certainly not here.

The only person that we know of locally is a Mr. Gong Chen, who is an attorney, California attorney. But we have determined, we think, that he has sold his home in San Francisco. We say with a little uncertainty here, so if that's not the case, it's my best judgment here.

The appropriate remedy here, I will tell you, because counsel -- counsel will learn this really quickly, is there are 20 patents which have been transferred by the debtor, being -- we call BNA -- over the period of time of the arbitration, and has been transferred to Byton, Ltd., who is in the -- we don't call it "China," we call it "The People's Republic of China," "PRC" -- which is now in the hands of the PRC.

That is an absolute fraudulent conveyance of which Mr. Chen, on behalf of the debtor and the assignee, admit as such, saying that there was a transfer without any consideration --

**THE COURT:** All right, but that raises an issue that -- you're presenting that to me, almost *de novo*. And you want me to make -- you say it is absolutely clear. And maybe it will be.

But unless that's been adjudicated by the arbitrator, that

feels like a substantive finding that is subject to the FAA framework.

**MR. COOK:** No, absolutely not. Zero. What I'm saying is that -- that's our remedy here. I think I have a winner on this remedy, working with some experience, is I'm preparing, sitting here literally, to file a motion for appointment of a receiver here --

**MS. BURBIDGE:** Mr. Cook, if I may, just briefly, I think what Mr. Chen (sic) wants to know is if it will be sufficient for him to issue the Rule 62 order in addition to the other order that we filed, in addition to -- while confirming the arbitration award.

**MR. COOK:** What -- I need six -- if you're going to confirm the award under 62(a), we need the stay lifted, as we will promptly enforce this judgment. That's what we're asking for.

**THE COURT:** Okay. Well, and that's what I assume, that once I confirm the award, lift the stay, you then have, like any other judgment, a judgment of the Court --

**MR. COOK:** That's correct.

**THE COURT:** -- and you can then enforce whatever remedies are available under the law. And some of those may be expedited, some of those -- you know, whatever it is. Seems to me that's a proper thing.

And frankly, I think there's been enough of a showing here

for me to left the automatic stay. I haven't heard any good reason why I should not, or any unfair prejudice in that regard. And I've heard some evidence suggesting it's necessary. So my intent at this point is to enforce the award.

But I would not include, you know, sort of language that's not already -- I'm not going to embellish it; I'm just going to enforce -- declare that the arbitration award that was issued in -- in June be confirmed by this Court. It will be a judgment, as such. And the stay is lifted.

If you then seek, pursuant to judgment enforcement law -- I guess we're governed by California law at that point, as I understand it, as I recall. You know, if you need some court orders, if there's other stuff, you know, you can seek that, as any creditor would, at that point. And some of that may be expedited type stuff.

But I am a little hesitant to say that the gist of the -- even though one could say it's sort of folded in and ancillary, you know, really not a big deal, to -- I am inclined to treat that injunction, the preliminary injunction, as a separate FAA -- or a separate arbitration order. But it may be that that is largely mooted by the relief that I'm granting. So that's what I intend to do.

**MR. SIPPRELLE:** Your Honor, Mr. Sipprelle. Just to clarify, I just want to make sure. And I appreciate what Your Honor just indicated.

The original proposed order that was submitted by EDAG just prior to the arbitrator's November 8 ruling -- and that's Document 19-5 -- was simply an order and judgment confirming the arbitration award of June. And entering a judgment on the money award.

And, and as I indicated at the outset, if that's all they were seeking to confirm, then I'm not sure Byton would have much of an argument. But we do have all of this concern about all this intellectual property findings and the -- the injunction and all of that.

So, as I understand what Your Honor is saying, you are looking then at the original proposed order --

**THE COURT:** I'm looking at the original proposal, a clean confirmation of the award. So you have it in hand, it becomes a judgment, and it will be fully enforceable immediately, because I'm going to lift the stay, under Rule 62.

**MR. SIPPRELLE:** Okay.

**MS. BURBIDGE:** And --

**THE COURT:** And there are a lot of self-help remedies that a creditor has. And if you need help on some of those, unless I'm convinced otherwise, those are the kinds of things that any judgment creditor can seek and employ at that point.

**MS. BURBIDGE:** Your Honor, if I may, Proposed Order 31-1 contains some of the language that I know would be

stricken. But I did want to point you to Section 3, because it has the updated calculation of interest --

**THE COURT:** Okay.

**MS. BURBIDGE:** -- in it. So that would actually be the more accurate order, given time that has passed.

**THE COURT:** All right. That's fair.

**MR. SIPPRELLE:** Except the 31-1 has all of this objectionable language.

**THE COURT:** Yeah, no, I know. She's just talking about Section 3 that has --

**MS. BURBIDGE:** Yes.

**THE COURT:** -- calculates the interest.

**MS. BURBIDGE:** Yes.

**THE COURT:** This is a straight kind of monetary, --

**MS. BURBIDGE:** Yes.

**THE COURT:** -- you know, thing that you can now take -- I won't say "to the bank," but to wherever we take it.

**MS. BURBIDGE:** Yes, Your Honor. It sets out the interest quite clearly, as of the date of today's hearing.

**THE COURT:** Yeah. All right. Well, that's what I'm going to do. I'll issue that order, and I'm going to lift the stay, so it's immediately gong to be enforceable.

**UNIDENTIFIED MAN:** (Inaudible) Your Honor --

**THE COURT:** Back to the preliminary injunction, I'm going to treat that as a separate order, subject to the

confirmation process. But that does not preclude whatever rights that the judgment creditor -- to have. And it may be that, you know, there are rights that are going to moot out that -- largely moot out that injunction order, that preliminary injunction order.

I don't know. I mean, you guys are the experts. But I'm going to leave it to the law on that.

**MR. WALCZYK:** Let me --

**MR. COOK:** Your Honor --

**MR. WALCZYK:** Let me add the following.

**THE COURT:** One at a time. I guess Mr. Walczyk has something to say.

**MR. WALCZYK:** (Nods head) Sorry, David.

Docket No. 31-1 includes language on lifting the Rule 62(a) stay. So we would propose, I think, Your Honor, that you start from Docket 31-1. And if we're striking the injunctive relief language that Your Honor is finding, part of a separate order, that would just be in Roman numeral II of the proposed judgment. So you can strike that --

**THE COURT:** I'll look at that. I understand.

**MS. BURBIDGE:** Thank you, Your Honor.

**THE COURT:** Okay.

**MR. COOK:** Let me have my two cents, as we say.

We're looking for the Court to rule favorably for us on the 1963, since we may end up being in Oregon. That's the 28

-- because I may need to take my California -- or this judgment here, and then register it potentially in the District of Oregon. That's what --

**THE COURT:** So what are you asking the Court to do, specifically?

**MR. COOK:** I'm asking the Court to, for good cause, raise -- lift the implicit stay in attempting to take a judgment in this district and then move it into another district, which would be Oregon. That's called a 1963.

**THE COURT:** Is that addressed in your 31-1, somewhere?

**MS. BURBIDGE:** No, Your Honor. It's Docket Item 42.

**MR. COOK:** 1963 --

**THE COURT:** You want me to look -- okay, I'm -- I'm sorry --

**MR. SIPPRELLE:** They filed an *ex parte* on that, Your Honor -- this is Mr. Sipprelle -- which we objected to, but Your Honor has --

**THE COURT:** All right, so that's a pure enforcement mechanism.

**MS. BURBIDGE:** Yes, Your Honor. Yes, Your Honor.

**MR. COOK:** And the issue here, as I've had with a much larger case, is once judgment is entered and I have to go to another district, I'm stuck by the 30 days. Either the 30 days for --

**THE COURT:** Okay, I understand. I understand. That's -- yeah.

**MR. COOK:** Wait. I got one more here.

**THE COURT:** Okay.

**MR. COOK:** Seeing how the Court is going to rule here -- we are proceeding with our receivership, and time doesn't help us -- is we'd like the Court to consider providing us for an order shortening time for my hearing on the appointment of a receiver.

**THE COURT:** Okay, what --

**MR. COOK:** Instead of, like, 35 days, it would be a much shorter period of time as we can get a motion out, and it -- many of these facts we have here are not in dispute, so this is something that the Court would be able to --

**THE COURT:** Have you already filed your motion for appointment of receiver? Is that in the --

**MR. COOK:** No, but it will be filed -- as soon as this Court grants it, we're talking about getting it filed by Monday.

**THE COURT:** Then you should ask when you file that for an order shortening time, that an accelerated briefing schedule -- consistent with due process, got to give Mr. Sipprelle's client at least a fair chance to respond.

If you want to save time, skip the reply stuff, and ask for the Court for an expedited hearing.

**MR. COOK:** I'll file the motion; I'll file them together.

**THE COURT:** All right, thank you.

**MR. COOK:** Thank you.

**THE COURT:** Thank you very much, everyone. I appreciate it.

**MS. BURBIDGE:** Thank Your Honor.

**MR. COOK:** Thank you very much.

(Proceedings concluded)

CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Monday, March 14, 2022