LEWIS & LLEWELLYN LLP
Evangeline A.Z. Burbidge (Bar No. 266966)
eburbidge@lewisllewellyn.com
Marc R. Lewis (Bar No. 233306)
mlewis@lewisllewellyn.com
Kenneth M. Walczak (Bar No. 247389)
kwalczak@lewisllewellyn.com
Bradley E. Estes (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile:  (415) 390-2127

David J. Cook (Bar. No. 60859)
COOK COLLECTION ATTORNEYS, PLC
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

Attorneys for Petitioner EDAG Engineering GmbH,
a corporation organized and existing under the laws
of the Republic of Germany  ("EDAG")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>        Petitioner,<br><br>    v.<br><br>BYTON North America Corporation,<br><br>        Respondent. | Case No. 3:21-cv-04736-EMC<br><br>**PETITIONER EDAG'S REPLY IN SUPPORT OF MOTION TO CONFIRM THE ARBITRATOR'S NOVEMBER 8, 2021 ORDER**<br><br>Date:        June 30, 2022<br>Time:        1:30 p.m.<br>Location:    via Judge Chen's<br>             Videoconference – Link<br>Judge:       Hon. Edward M. Chen |

LEWIS +
LLEWELLYN
LLP

1

# TABLE OF CONTENTS

2
Page

3
TABLE OF AUTHORITIES....................................................................................................... 3

4
I.      INTRODUCTION............................................................................................................. 5

5
II.     ARGUMENT. ................................................................................................................... 7

6
        A.      THE COURT CAN AND SHOULD PROTECT EDAG'S ENFORCEABLE
                PROPERTY INTEREST.......................................................................................... 7

7

8
                1.      The Arbitrator Properly Determined That EDAG Owns the Technology It
                        Helped Create. .......................................................................................... 7

9
                        a.      *Functus Officio* Still Does Not Apply. ..................................... 7

10
                        b.      The Arbitrator Followed JAMS Rules. ...................................... 8

11
                2.      Even If the Arbitrator's Order Were Procedurally Deficient, the Court
                        Could and Should Make the Same Determination. ....................................... 10

12

13
                3.      Absent Any Action by the Court, the Arbitrator's Order Is an
                        Enforceable Contract. .................................................................................. 10

14
        B.      BNA'S OTHER ARGUMENTS FAIL. .................................................................. 11

15
                1.      *Res Judicata* Does Not Apply. .................................................................. 11

16
                2.      The Court's Judgment Does Not Adjudicate the Merits of This Issue........... 12

17
III.    CONCLUSION. ................................................................................................................ 12

18

19

20

21

22

23

24

25

26

27

28

LEWIS +
LLEWELLYN LLP

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

5
*Able Bldg. Maint. Co. v. Bd. of Trustees of Gen. Emps. Tr. Fund,*
    175 F. App'x 118 (9th Cir. 2006) ................................................................. 9

6
*Apple Inc. v. Psystar Corp.,*
7    673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ..................... 10

8
*Del Riccio v. Superior Court,*
    115 Cal. App. 2d 29 (1952) ....................................................................... 5

9
*G.C. and K.B. Invs., Inc. v. Wilson,*
10    326 F.3d 1096 (9th Cir. 2003) .................................................................. 9

11
*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,*
12  *AFL-CIO, Loc. 631 v. Silver State Disposal Serv., Inc.,*
    109 F.3d 1411 (9th Cir. 1997) .................................................................. 8

13
*Jones v. Kvistad,*
14    19 Cal. App. 3d 836 (1971) ...................................................................... 10

15
*Moradian v. Rideshare Port Mgmt., LLC,*
16    No. B301784, 2021 WL 5707906 (Cal. Ct. App. Dec. 2, 2021) ................................... 10, 12

17
*Silva v. U.S. Bancorp,*
    No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ................. 7, 8
18

19
*Tapia v. Wells Fargo Bank, N.A.,*
    No. CV 15-03922 DDP (AJWX, 2015 WL 4650066 (AJWX), 2015 WL 4650066,
20    at *2 (C.D. Cal. Aug. 4, 2015) .................................................................. 7

21
*United States v. Romm,*
22    455 F.3d 990 (9th Cir. 2006) ..................................................................... 8

23
*United Steelworkers of Am. v. Smoke–Craft, Inc.,*
    652 F.2d 1356 (9th Cir.1981) ..................................................................... 9
24

25
*Xtra Petroleum Transp., Inc. v. Brad Hall & Assocs. (In Bankr. D.N.M.,*
    473 B.R. 430 (In Bankr. D.N.M. 2012) ......................................................... 12

26

27

28

3

LEWIS +
LLEWELLYN
LLP

**TABLE OF AUTHORITIES (CONT.)**

Page(s)

**STATE STATUTES**

California
 Cal. Code Civ. Proc. § 1287.6 ........................................................................................... 10
 Cal. Code Civ. Proc. § 680.010 ......................................................................................... 10

**FEDERAL RULES**

Federal Rules of Civil Procedure
 Rule 69 .............................................................................................................................. 10

# I.   INTRODUCTION.

Where we are is not in dispute: Petitioner EDAG Engineering GmbH ("EDAG") has a judgment in its favor, which it is trying to enforce against Respondent BYTON North America Corporation ("BNA").  *See* Docket No. 49 (Order Granting Mot. To Confirm Arb. Award).  EDAG also has a ruling from the Arbitrator, the Honorable William Cahill (Ret.), confirming that EDAG owns certain intellectual property, namely the technology EDAG developed for use in electric cars and for which BNA has not paid.  *See* Docket No. 25 (Not. of Entry of Injunction, filed 11/8/21).

The only question now is what to do with the Arbitrator's second order (referred to herein as the "11/8/21 Order") now that the judgment is final and enforceable.  Simultaneously, it is important to remember the context that BNA deliberately omits: the 11/8/21 Order was issued because BNA failed to pay EDAG the $28.6 million ordered by the Arbitrator, pled poverty for years, and then was caught secretly trying to move its only known asset of value (the IP EDAG helped create) overseas to China at the same time.[1]  To this day, BNA has not denied any of these facts.

The Arbitrator's findings in the 11/8/21 Order still have value to EDAG—specifically, his ruling that EDAG owns the technology means that EDAG can preclude BNA from accessing, transferring, or deleting that technology, or from using it in BNA's electric vehicles.  And while the intellectual property remains EDAG's, it will not count among BNA's assets for purposes of satisfying the judgment.[2]  (Indeed the 11/8/21 Order specifies that BNA may not access the

---

[1] As EDAG's recent filings have shown, BNA also apparently received a $10,000,000 PPP loan during this period, as well as hundreds of millions of dollars from other sources which were funneled to the Cayman Islands and China.

[2] Even if the Court vacates the 11/8/21 Order, the technology held by JAMA would remain in the hands of the U.S. Marshal, as an asset in which EDAG has a lien interest, for purposes of satisfying the judgment. *See Del Riccio v. Superior Court,* 115 Cal. App. 2d 29, 31–32 (1952) (court cannot "undo what ha[s] already been done so as to deprive the creditor of ownership and use of money collected"). EDAG moved to confirm the 11/8/21 Order because the Arbitrator correctly ruled the technology still belongs to EDAG because BNA never paid for it. That ruling means that BNA must pay the entire $30.1 million, plus interest, ***before*** receiving the IP. That is a very different outcome than the one BNA seeks, in which the value of the technology may be deemed an asset of ***BNA's*** and counted toward the $30.1 million sum.  For example, if the Court vacates the 11/8/21 Order, BNA can use the IP to build the EDAG-designed EVs overseas and not pay EDAG a penny more; whereas, if the Court confirms that the IP belongs to EDAG, BNA cannot access that IP.

5

LEWIS +
LLEWELLYN LLP

technology unless and until it satisfies the judgment in full.)

EDAG has submitted considerable evidence detailing the need to retain the Arbitrator's ruling after entry of judgment—including testimony from neutral third parties regarding BNA's attempts to access EDAG's data (likely to transfer it to China, as BNA did with more than a dozen patents), and testimony from an EDAG engineering expert that BNA prototypes relying on EDAG's technology have been spotted driving the streets of China.  *See* Docket No. 22 and supporting Exhibits.

BNA does not refute this evidence now, nor did it refute this evidence when presented to the Arbitrator in September and October 2021.  Neither its Motion to Vacate or Modify (Docket No. 117) nor its Opposition/Reply (Docket No. 140) deny that BNA's Chinese parent company incorporated EDAG's technology into prototypes prior to the 11/8/21 Order.  BNA admits that it transferred more than a dozen patents overseas, and does not deny that it intended to do the same for EDAG's data before the Arbitrator enjoined it from doing so.  (BNA does mention this Court's order to turn the data over to the United States Marshal (Docket No. 98), but omits the fact that said order relies on the presumption that the property is "BNA IP," *id*. at 6, rather than EDAG's.)  And nowhere does BNA state that it has no present or future intention to use EDAG's technology, or—significantly—that it intends to ***actually pay*** EDAG the over $30.1 million it owes for the rightful use of that technology.

BNA does not even attempt to argue that the Arbitrator's interpretation of the parties' contract is wrong.[3]  Instead BNA presents a suite of erroneous—and borderline contradictory—procedural arguments, asking the Court to vacate the 11/8/21 Order because it decides too much, because it decides too little, or because it is moot.

As discussed in more detail below, those arguments are wrong as a matter of law.  But they are also red herrings.  There is no doubt that the Court can act to protect EDAG's property interest in

---

[3] It is undisputed that the contract between EDAG and BNA, as discussed in EDAG's Motion to Confirm the Nov. 8, 2021 Order and elsewhere, affords the Arbitrator "full power and authority to determine issues of arbitrability and to interpret or construe the provisions of the agreement documents and to fashion appropriate remedies (including temporary, preliminary, interim, or permanent injunctive relief [.]" Docket No. 27-2 at §14.4 (b).

LEWIS +
LLEWELLYN LLP

the technology in question, based on the same contract the Arbitrator interpreted and the same evidence the Arbitrator considered.  There are at least three ways for this Court to do that: (1) confirm the 11/8/21 Order; (2) issue its own permanent injunction; or (3) take no action, leaving the 11/8/21 Order as an enforceable contract between the parties, such that EDAG can continue to enforce its ownership rights.

Because there is no dispute that EDAG owns its technology, and nothing to refute EDAG's showing that an order is necessary to protect EDAG's rights, EDAG respectfully requests that the Court exercise one of those three options.

## II.   ARGUMENT.

A.   **THE COURT CAN AND SHOULD PROTECT EDAG'S ENFORCEABLE PROPERTY INTEREST.**

   1.   **The Arbitrator Properly Determined That EDAG Owns the Technology It Helped Create.**

The bulk of BNA's argument is that the Arbitrator exceeded his authority when he interpreted the parties' contract (the "TDLA") and determined that EDAG owns the technology it helped develop and for which BNA has not paid.  *See* Reply ISO Motion to Vacate, filed 3/15/22 (Docket No. 140) ("BNA Opp.") 2:6-5:15.  BNA does not dispute, though, the correctness nor the accuracy of the 11/8/21 Order, nor the evidence presented to support that Order.  Instead, BNA says the Arbitrator exceeded his authority because of the *functus officio* doctrine, and because the Arbitrator allegedly disregarded JAMS rules in rendering his decision.  Both of those contentions are wrong.

   a.   ***Functus Officio* Still Does Not Apply.**

As discussed in EDAG's Opposition brief, it is law of the case that federal law applies.  *See* Docket No. 129 ("EDAG Opp.") 8:9-9:4.  BNA does not dispute, and therefore concedes, this point. *See Tapia v. Wells Fargo Bank, N.A.*, No. CV 15-03922 DDP (AJWX), 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015) (arguments to which no response is supplied are deemed conceded); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (same).

LEWIS +
LLEWELLYN

BNA fails to engage with the cases EDAG cited, in which federal courts have: (a) generally disfavored application of *functio officio* (EDAG Opp. 12:15-21); (b) specifically approved arbitrators retaining jurisdiction to issue injunctions like the 11/8/21 Order (*id.* 12:3-14); and (c) specifically held that the doctrine does not bar arbitrators from making new decisions, clarifying ambiguities, or "address[ing] a contingency that has arisen after the award was made[.]" *Id*. 12:22-13:21, quoting *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, Loc. 631 v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997) ("*Teamsters & Chauffeurs*").

BNA does cite *Teamsters & Chauffeurs* (and no other federal case), but does so misleadingly. BNA states that under *Teamsters & Chauffeurs*, "the issuance of a final arbitration award discharges the arbitrator's duties and terminates the arbitrator's authority to further act with respect to the subject matter of the arbitration[,]" BNA Opp. 3:2-3, but that is not true. The very page that BNA cites discusses the "completion exception" and the "ambiguity exception" to *functio officio*, which allow an arbitrator to issue a new decision where his previous award fails to resolve an issue or to address a contingency that has arisen after the award. 109 F.3d at 1411.

That is exactly what happened here: the Arbitrator issued the 11/8/21 Order to resolve an issue (ownership of EDAG's technology while EDAG remains unpaid for its work) left unresolved by his previous award, and to address a new contingency (BNA's efforts to access and use that technology) that arose after that award. BNA agrees. BNA Opp. 2:8-19.

### b.     The Arbitrator Followed JAMS Rules.

Next, BNA advances an entirely new argument, that the Arbitrator exceeded his jurisdiction by disregarding JAMS Rules 9 and 10. BNA Opp. 3:16-5:15. This argument fails for at least four reasons.

**First,** the Court cannot ***vacate or modify*** the 11/8/21 Order based on an entirely new argument. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (arguments raised by a party for the first time in its reply brief are deemed waived). BNA did not mention JAMS Rules in its Motion to Vacate or Modify.

**Second,** BNA makes no effort to argue that the JAMS Rules are jurisdictional. Without that

8

LEWIS +
LLEWELLYN

argument, and law and evidence to support it, the Court cannot equate a failure to follow JAMS protocol with exceeding the Arbitrator's jurisdiction. To the contrary, the Court must **confirm** the 11/8/21 Order **unless** the purported rules violations render that Order "completely irrational or … a manifest disregard for law." *SMC Promotions*, quoting *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). The Order is neither, as BNA concedes (by failing to argue to the contrary).

**Third,** BNA waived this procedural argument because it did not cite JAMS Rules 9 or 10 to the Arbitrator. *See United Steelworkers of Am. v. Smoke–Craft, Inc*., 652 F.2d 1356, 1360 (9th Cir.1981) (a party cannot raise in a confirmation proceeding procedural objections to an arbitration that it had failed to raise before the arbitrator; objecting party has "an affirmative obligation to present to the arbitrator any arguments why the arbitration should not proceed"). "Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator." *Id. See also Able Bldg. Maint. Co. v. Bd. of Trustees of Gen. Emps. Tr. Fund*, 175 F. App'x 118, 119–20 (9th Cir. 2006) (citing federal rule and *Smoke-Craft* in arbitration case decided under California law; same principle applies under the latter).

**Fourth,** the Arbitrator did not violate either JAMS Rule. JAMS Rule 9 required EDAG to give BNA "reasonable and timely notice of its claims," including a short statement of facts. EDAG did more than that, first copying BNA on the September 17, 2021 letter to the Arbitrator describing the new facts that had arisen and its need for injunctive relief, and then in a more formal brief prepared in accordance with procedures agreed upon by both parties and the Arbitrator. *See* Declaration of Kenneth M. Walczak filed herewith ("Walczak Decl."), Exs. A to F. BNA not only stipulated to the briefing schedule before the Arbitrator, but also submitted its own opposition to EDAG's motion with a supporting declaration and argued before Judge Cahill for several hours regarding EDAG's request. During the two months between EDAG's initial letter and the 11/8/21 Order, BNA never argued that any of this procedure constituted "unreasonable" or "untimely" notice of the facts or EDAG's arguments. The facts presented in September and October 2021 have not changed and BNA has submitted no evidence to the contrary. BNA had its day in court—many

9

LEWIS + LLEWELLYN LLP

times over.

Rule 10 explicitly states that "new or different claim[s]" may be submitted to the Arbitrator "with the Arbitrator's approval." That is precisely why EDAG submitted its initial letter giving notice of the new facts and the need for the Arbitrator to resolve a new issue. The Arbitrator explicitly gave his approval, set a briefing schedule that BNA agreed to, and addressed the issue after full briefing and a hearing that lasted several hours.

### 2. Even If the Arbitrator's Order Were Procedurally Deficient, the Court Could and Should Make the Same Determination.

BNA argues that the Court should not grant injunctive relief on its own initiative, BNA Opp. 7:2-8, but cites no case holding that the Court lacks such authority, or anything refuting EDAG's argument that the Arbitrator's preliminary injunction may be converted into a permanent injunction to protect EDAG's property rights.

In fact, there can be no doubt that the Court has the authority to enter an injunction on the facts before it. If the Arbitrator somehow lacked such authority (*but see* the previous subsection), it must rest with the Court. *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 673 F.Supp.2d 943, 948 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (decision whether to grant injunctive relief "rests within the equitable discretion of the district courts").

### 3. Absent Any Action by the Court, the Arbitrator's Order Is an Enforceable Contract.

If the Court were to decline both parties' motions, leaving the 11/8/21 Order in effect but unconfirmed, collection efforts would continue under California law. *See, e.g.,* Docket No. 22; *see also* Fed. R. Civ. P. 69(a) ("The procedure on execution… must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); Cal. Code Civ. Proc. §§ 680.010, 683.010 ("Except as otherwise provided by statute or in the judgment, a judgment is enforceable under this title upon entry.").

California law specifies that "[a]n award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." Cal. Civ. Proc. Code § 1287.6. *See also, e.g., Jones v. Kvistad*, 19 Cal. App. 3d 836, 840–41 (1971) (same); *Moradian v.*

10

LEWIS +
LLEWELLYN LLP

*Rideshare Port Mgmt., LLC*, No. B301784, 2021 WL 5707906, at *8 (Cal. Ct. App. Dec. 2, 2021) (same).

Therefore, if BNA truly believes that the 11/8/21 Order is moot, and this Court comes to a similar conclusion, EDAG requests that the 11/8/21 Order be neither confirmed nor denied.  While not the most direct or forceful way to protect EDAG's property rights, by taking no action at all, the Court would leave EDAG with a contractual right to enforce its ownership of the technology it developed and would provide it with at least some ability to continue to pursue the over $30.1 million award it has against BNA.  Further, BNA has argued that the 11/8/21 Order no longer has practical significance (*see, e.g.,* BNA 6:17-7:8); therefore, it cannot reasonably object to the Court leaving that order in place—without vacating or confirming.

## B.    BNA'S OTHER ARGUMENTS FAIL.

### 1.    *Res Judicata* Does Not Apply.

BNA briefly argues that *res judicata* bars EDAG from "relitigating" entitlement to its intellectual property after entry of judgment.  BNA Opp. 5:16-6:16.  That is wrong for two reasons.

**First**, EDAG did not initiate motion practice pertaining to the 11/8/21 Order.  ***BNA*** moved first to vacate or modify.  If *res judicata* bars any new adjudication post-judgment, then BNA is the party so precluded, and the 11/8/21 Order should stand as an enforceable contract between the parties.

**Second,** the Court—not BNA—has the right to determine which issues "were or could have been raised" in the proceedings leading up to entry of judgment.  The Court explicitly decided, on the same day and during the same hearing, to enter judgment for EDAG ***and*** leave for another, separate confirmation proceeding the issue of ownership of EDAG's intellectual property.  *See* Walczak Decl. Ex. G (Dec. 9, 2021 Hearing Transcript) at 3:21-25 (Hon. Edward Chen: "[S]eems like we're conflating, or the parties are wanting to conflate these two orders. One is a final arbitration order that was issued, and then there was a follow-up injunction. And it seems to me that those are two separate matters.") & 24:24-25:5 (Hon. Edward Chen: "Back to the preliminary injunction, I'm going to treat that as a separate order, subject to the confirmation process. But that does not preclude whatever rights that the judgment creditor—to have. And it may be that, you

11

LEWIS +
LLEWELLYN LLP

1  know, there are rights that are going to moot out that—largely moot out that injunction order, that

2  preliminary injunction order."))

3            **2.**     **The Court's Judgment Does Not Adjudicate the Merits of This Issue.**

4  BNA's final "mootness" argument, BNA 6:17-7:8, is essentially the same as its *res judicata*

5  argument, and it runs aground on the same rocky shore.

6  BNA cites only one case—a bankruptcy case from the District of New Mexico—for the

7  principle that a preliminary injunction is moot after a "final adjudication on the merits." *Id*. 6:22-24,

8  *citing Xtra Petroleum Transp., Inc. v. Brad Hall & Assocs.* (In Bankr. D.N.M. 2012) 473 B.R. 430,

9  435.  But that only begs the same question.

10  The Court had the opportunity to "adjudicate the merits" of EDAG's claim that it owns the

11  technology it developed pursuant to the TDLA.  EDAG explicitly requested that the Court resolve

12  the issue.  *See, e.g.,* Docket No. 31.  Again, the Court declined to do so, specifying that the 11/8/21

13  Order requires an independent confirmation process.  That decision amounts to a ruling that the

14  Court's judgment did not moot the preliminary injunction, or otherwise resolve the merits of

15  EDAG's argument that it owns the intellectual property in question.

16            **III.**     **CONCLUSION.**

17  There are at least three paths, but the destination is certain.  A decision confirming EDAG's

18  ownership of its technology has value to EDAG, and all of the evidence supports the continuing

19  need for an order memorializing that decision.

20  / /

21  / /

22  / /

23  / /

24  / /

25  / /

26  / /

27  / /

28  / /

EDAG'S REPLY ISO MOTION TO CONFIRM NOV. 8, 2021 ORDER
CASE NO. 3:21-CV-04736-EMC

LEWIS +
LLEWELLYN

1    Therefore, EDAG respectfully requests that the Court either confirm the 11/8/21 Order, enter

2    its own injunction containing the same provisions, or take no action, allowing the 11/8/21 Order to

3    stand as an enforceable contract between the parties.

4                                                        Respectfully submitted,

5                                                        LEWIS & LLEWELLYN LLP

6

7                                              By:   *s/ Kenneth M. Walczak*

8                                                        Evangeline A.Z. Burbidge
                                                         Marc R. Lewis
9                                                        Kenneth M. Walczak
                                                         Attorneys for Petitioner EDAG
10                                                       ENGINEERING GMBH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EDAG'S REPLY ISO MOTION TO CONFIRM NOV. 8, 2021 ORDER
CASE NO. 3:21-CV-04736-EMC

LEWIS +
LLEWELLYN
LLP