**VAN ETTEN SIPPRELLE LLP**
KEITH A. SIPPRELLE (SBN 143358)
2945 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone: (805) 719-4900
Facsimile: (805) 719-4950
ksipprelle@vstriallaw.com

Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG ENGINEERING GMBH,<br><br>Petitioner,<br><br>vs.<br><br>BYTON NORTH AMERICA CORPORATION,<br><br>Respondent. | Case No. 3:21-cv-04736-EMC<br><br>[Hon. Edward M. Chen]<br><br>**RESPONDENT BYTON NORTH AMERICA CORPORATION'S OPPOSITION TO THE *EX PARTE* APPLICATION OF PETITIONER EDAG ENGINEERING GMBH "*FOR ISSUANCE OF THE FOLLOWING: (A) TURNOVER OF $143,000,000.00 PURSUANT TO C.C.P. SECTION 699.040(a)&(b)& (B) TO THE US MARSHAL OF THE NORTHERN DISTRICT OF CALIFORNIA*" (DOC. #151); DECLARATION OF KEITH A. SIPPRELLE IN SUPPORT THEREOF**<br><br>Date: TBD<br>Time: TBD |

Respondent BYTON NORTH AMERICA CORPORATION ("Byton NA") hereby respectfully opposes the *ex parte* application of Petitioner EDAG Engineering GmbH ("EDAG") "For Issuance of the Following: (A) Turnover of $143,000,000.00 Pursuant to C.C.P. Section 699.040(A)&(B)& (B) to the US Marshal of the Northern District of California" (Doc. #151) on the following grounds:

(1) The *ex parte* application is procedurally improper under Northern District of California Local Rule 7-10. Moreover, no exigency exists for resolving the issues raised by the *ex parte* application on an expedited basis.

(2) The *ex parte* application seeks an order directed to three non-parties to the litigation (FMC Cayman, Byton Limited and Zhang Ying). This Court has previously rejected EDAG's effort to obtain an order that would impair the property rights of non-parties to the litigation. (See Docket Entry 89.) Thus, EDAG appears to be flouting this Court's prior order.

(3) The *ex parte* application appears to be premised, at least in part, on the purported failure of Byton NA to produce documents in compliance with a discovery order issued by Magistrate Judge Hixson (Docket Entry 127). Any issues regarding compliance with a discovery order should be brought before the Magistrate Judge in the first instance. Moreover, EDAG's claim that Byton NA has not produced documents responsive to the discovery order is false. In truth and in fact, Byton NA has produced more than 5,000 pages of responsive records to date.

(4) The *ex parte* application also appears to be premised in part on the false assertion that Byton NA "spirited away" $143,000,000 of "investor funds" to other entities. As EDAG is well aware from the testimony of former Byton NA employee Sadha Kameswaran, these funds were never the property of Byton NA. Byton NA could not possibly have "spirited away" funds it did not own, and EDAG's representation to the contrary to this Court constitutes a blatant misrepresentation of the record.

(5) The *ex parte* application is replete with factual assertions for which there is either no competent evidentiary support or for which the supporting evidence has been

mischaracterized.

EDAG's frivolous *ex parte* application should be denied.

Respectfully Submitted,

Dated: April 4, 2022

VAN ETTEN SIPPRELLE LLP

By: *Keith A. Sipprelle*
Keith A. Sipprelle
Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION

# MEMORANDUM OF POINTS AND AUTHORITIES

In its *ex parte* application, EDAG seeks the issuance of the following order:

"Order Directing BNA, FMC CAYMAN, BYTON LIMITED, and ZHANG YING, jointly, severally, and each of them, AND ALL PERSONS UNDER ITS CONTROL, DIRECTIONS, SURROGATES THEREOF, ASSIGNEES THEREOF, OR THOSE IN POSSESSION THEREOF (collectively "BYTON ENTITIES") to turn and hand over the BNA Investors Funds in the sum of $143,000,000,000 or $167,139,906.00 ("Investor Funds"), or such funds to pay the judgment, to the United States Marshal, Northern District of California, as described in the records of the of the Silicon Valley Bank, (SVB) which consist of payments of BNA of $117,000,000 (January 8, 2019) and $26,000,000 (December 21, 2018) or $167,139,906.00, which are Investor Funds, owed to, and owned by and in favor of BNA, and that FMC Cayman, Byton Limited and Zhang Ying, and each of them, held and hold in trust for the benefit of BNA and EDAG of $143,000,000.00 or $167,139,906.00 or the amount due to EDAG."

(See EDAG's *ex parte* application ("Application") at 2: 6-15.) The Application should be denied on a host of grounds, which are set forth below.

## I.    THE APPLICATION IS PROCEDURALLY IMPROPER UNDER *LOCAL RULE 7-10*.

Northern District of California Local Rule 7-10 provides as follows:

*7-10. Ex Parte Motions. Unless otherwise ordered by the assigned Judge, a party may file an ex parte motion, that is, a motion filed without notice to opposing party, only if a statute, Federal Rule, local rule, or Standing Order authorizes ex parte filing. The motion must include a citation to the statute, rule, or order which permits the use of an ex parte motion to obtain the relief sought.*

(Emphasis supplied.)

The Application fails to cite to a statute, Federal Rule, local rule, or Standing Order authorizing the *ex parte* filing, nor is there any federal statute, rule, or order of which Byton is aware which would authorize the use of an *ex parte* application to obtain the relief being sought by EDAG. Moreover, no exigency exists for resolving the issues raised by the Application on an expedited basis. The Application appears to relate to several fund transfers that occurred in late 2018 and early 2019, more than three years ago. EDAG fails to explain why it needs relief on an expedited basis with respect to fund transfers that occurred more than three years ago.

EDAG relies upon *Cal. Civ. Proc. Code* § 699.040 as support for the *ex parte* relief it seeks. This section provides as follows:

> (a) If a writ of execution is issued, the judgment creditor may apply to the court ex parte, or on noticed motion if the court so directs or a court rule so requires, *for an order directing the judgment debtor to transfer to the levying officer either or both of the following:*
>
> (1) *Possession of the property sought to be levied upon* if the property is sought to be levied upon by taking it into custody.
>
> (2) Possession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon.  An order pursuant to this paragraph may be served when the property or debt is levied upon or thereafter.
>
> (b) The court may issue an order pursuant to this section upon a showing of need for the order.
>
> (c) The order shall be personally served on the judgment debtor and shall contain a notice to the judgment debtor that failure to comply with the order may subject the judgment debtor to arrest and punishment for contempt of court.

(Emphasis supplied.)

By its plain terms, *Cal. Civ. Proc. Code* § 699.040 applies in situations in which the judgment debtor (in this case Byton NA) is *in possession* of specific property sought to be levied upon.  Here, however, Byton NA is not in possession of the so-called "Investor Funds."  Instead, EDAG complains that Byton NA transferred the "Investor Funds" to third parties over three years ago.[1]  As such, *Cal. Civ. Proc. Code* § 699.040 plainly does not apply here.

Moreover, even if the Application had been brought by way of a properly noticed motion,

---

[1] "BNA engaged in mass movement of $143,000,000.00 or $167,139,906.00, (Doc. # 133-1, Exhibits "A," "B," and "C) for the benefit of FMC Cayman, Byton Limited, Zhang Ying, and Byton GmbH."   (See EDAG's Memorandum of Points and Authorities ("EDAG Memo") at 1:22-24.)

"Under direction of Sadha Kameswaran, BNA spirited the Investors Money of BNA the sum of $26,000,000 on December 21, 2018 and $117,000,000 (January 8, 2019) ($143,000,000) or more. (Doc. # 133-1, Exhibits "A," "B," and "C) to BYTON Entities, i.e., FMC CAYMAN, BYTON LIMITED and/or Zhang Ying from the Silicon Valley Bank ("SVB") or a total of $143,000,000 or $167,139.906." (EDAG Memo at 3: 6-9.)

the relief requested as against Byton NA (an order requiring the turnover of the "Investor Funds") would nevertheless be improper because Byton NA is not in possession of these funds.[2]

The Application should be denied.

## II. THE APPLICATION IMPROPERLY SEEKS AN ORDER DIRECTED TO NON-PARTIES THAT WOULD IMPAIR THE PROPERTY RIGHTS OF NON-PARTIES.

EDAG seeks the issuance of a turnover order with respect to the "Investor Funds" directed to "BNA, *FMC CAYMAN, BYTON LIMITED, and ZHANG YING*, jointly, severally, and each of them, . . .." (Application at 2:6-15; emphasis supplied.)  FMC Cayman, Byton Limited and Zhang Ying are not parties to this litigation.

EDAG claims that the "Investor Funds" were improperly transferred by Byton NA to FMC Cayman, Byton Limited and Zhang Ying.  (See EDAG Memo at 1:22-24, 3: 6-9.)  EDAG's claim that the Investor Funds were improperly transferred by Byton NA to FMC Cayman, Byton Limited and Zhang Ying is false.  However, apart from the propriety of these transfers, the turnover order sought be EDAG is improper because it would be directed to non-parties to the litigation.

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the federal and state governments from deprivations of property without due process of law. Here, EDAG Seeks an order from this Court that would seek to strip three non-parties of funds that

---

[2] Moreover, not only does EDAG confusingly seek a turnover order against Byton NA with respect to funds that EDAG concedes Byton NA does not have, EDAG also appears confused about the amount of the Investor Funds at issue.  See Application at 2:8-9 (". . . to turn and hand over the BNA Investors Funds in the sum of $143,000,000,000 *or* $167,139,906.00 ("Investor Funds") . . . .")  (Emphasis supplied.)

EDAG claims are in their possession. Such an order would violate the fundamental due process rights of these non-parties.

Moreover, this Court has previously rejected EDAG's effort to obtain an order that would impair the property rights of non-parties to the litigation. (See Docket Entry 89, denying EDAG's motion for appointment of a receiver to take possession of and sell patents that were transferred to Byton Limited on the basis that "EDAG fails to add an indispensable party, and thus any request to appoint a receiver to take control over property held by Byton Limited cannot be entertained without Byton Limited being made a party.") The Application seeks to accomplish precisely what the Court has previously forbidden.[3]

### III. THE APPLICATION HAS BEEN BROUGHT BEFORE THE WRONG JUDICIAL OFFICER.

The Application appears to be premised, at least in part, on the purported failure of Byton NA to produce documents in compliance with a discovery order issued by Magistrate Judge Hixson (Docket Entry 127). (See EDAG Memo at 1:24-2:18.) However, any issues regarding

---

[3] EDAG appears to contend that this Court has jurisdiction over FMC Cayman, Byton Limited and Zhang Ying because Byton NA submitted a declaration from Zhang Ying (the Chairman of the Board of Directors of FMC Cayman) in support of Byton NA's Opposition to EDAG's pending motion to amend the judgment to add Byton Limited as a judgment debtor. In support of its curious argument, EDAG sloppily mis-cites to *Golden vs. Stein*, 481 F. 3rd. 843, 856 (USDC, S.D.) (2019). (It appears that EDAG intended to cite to *Glenn Golden & G2 Database Mktg. v. Stein*, 481 F. *Supp.* 3d 843.) *Stein* involved the issue of whether an expert witness who was sued in Iowa and served with process by the attorney who had retained the expert was subject to personal jurisdiction in Iowa based on the expert's agreement to provide services in Iowa. What the *Stein* case has to do with Byton NA's submission of a declaration from Zhang Ying in support of Byton NA's Opposition to EDAG's motion to amend the judgment to add Byton Limited as a judgment debtor is a real "head scratcher." There is no pending personal jurisdiction issue before this Court with respect to Zhang Ying, because Zhang Ying has neither been named as a party to this litigation nor served with process. Similarly, there is no pending personal jurisdiction issue before this Court with respect to FMC Cayman and Byton Limited, because neither entity has been named as a party to this litigation or served with process.

compliance with a discovery order should be brought before Magistrate Judge Hixson in the first instance.[4]

### IV. EDAG'S CONTENTION THAT BYTON NA HAS "SPIRITED AWAY" $143,000,000 OF ITS "INVESTOR FUNDS" TO OTHER ENTITIES IS FALSE.

The central premise of the Application is that Byton NA has "spirited away" $143,000,000 of its "investor funds" to other entities. As EDAG is well aware, this assertion is false. The testimony of former Byton NA employee Sadha Kameswaran (Docket Entry 142) was clear that the so-called "Investor Funds" *were never the property of Byton NA*. Indeed, EDAG itself cites to snippets from Mr. Kameswaran's testimony that make this clear. Byton NA could not possibly have "spirited away" funds it did not own, and EDAG's representation to the contrary to this Court in the face of Mr. Kameswaran's testimony constitutes a blatant misrepresentation of the record.[5]

---

[4] Moreover, EDAG's claim that Byton NA has not produced documents responsive to Magistrate Judge Hixson's discovery order is false. In truth and in fact, Byton NA has produced more than 5,000 pages of responsive records to date in response to the Order. See concurrently-filed Declaration of Keith A. Sipprelle.

[5] The following excerpts from Mr. Kameswaran's March 11, 2022 testimony lay bare the falsity of EDAG's assertion that Byton NA "spirited away" $143,000,000 of its own money to other entities:

> Q. Maybe you can explain to me why, between 2018 to 2019, that -- to make sure I understand this, that BNA sent to FMC Cayman 167,139,906? Any explanation for that?
>
> * * *
>
> THE WITNESS: So from what I can recall, the B-down funding that we went through – some of the funding was received in U.S. dollars, because, at that time, as I mentioned before, it was really difficult to get money transferred between China and -- and the U.S. And so we wanted to get some of the funding in U.S. dollars. And the B-down investors put some of the money in U.S. dollars, and -- and Byton North America was justify

facilitating the receipt of that money in U.S. and transferring it to the FMC entity where the money is due to go to.

* * *

Q. Which says it was money of BNA and resent to FMC Cayman. And I'm not sure why? I don't understand. Was it money sent for -- to buy something or to do what? I don't understand.

THE WITNESS: Yeah. As -- as for my prior statement, the money never belonged to BNA in the first place.  The money was being received to facilitate a transfer to FMC because we did -- we wanted to avoid some of the transfer of -- or the conversion of money from Chinese Renminbi to U.S. dollars.  So we facilitated the investors to put the money in U.S. dollars into a U.S. bank account so that FMC could have the money in U.S dollars and make it a little bit easier for future payments.

Q. But the --

A. *The money never belonged to* FM- -- *BNA in the first place.*

Q. But the money was BNA's money; isn't that correct?

A. *That's incorrect.*

* * *

Q. *Whose -- whose money was 167,000 -- 167,000,000? Who was that?*

A. *FMC's money.*

Q. So it was FMC's money in -- in the bank account of BNA; is that correct?

* * * *

THE WITNESS: Yeah.

* * * *

Q. Explain it again?

A. As I mentioned before, before, BNA was just facilitating the transfer of this money to FMC, *which belonged to FMC.* We were trying to avoid some of the transactional issues and -- and that is why it -- why it was facilitated that way.

Q. *So, originally, the money belonged to FMC; is that correct?*

A. *Correct. The investors investing money in FMC.*

*(Continued)*

V. **THE APPLICATION IS LARGELY UNSUPPORTED BY COMPETENT EVIDENCE.**

Finally, the Application and supporting memorandum are replete with factual assertions for which there is either no competent evidentiary support or the supporting evidence has been mischaracterized.  A few examples are set forth below:

- "These documents (#4, Doc. # 127) have not been provided."  (EDAG Memo at 2:10.) No competent evidence has been provided to support this statement.

- "Under direction of Sadha Kameswaran, BNA spirited the Investors Money of BNA the sum of $26,000,000 on December 21, 2018 and $117,000,000 (January 8, 2019)

---

Q. So the money -- the money -- this $167,000,000 never belonged to BNA? It belonged to FMC; is that correct? But it ended up in the BNA bank account; is that correct?

* * *

THE WITNESS: *The money did not belong to BNA. The money belonged to FMC,* the investors depositing the money through an account in the U.S. to ensure that money is coming in U.S. dollars to make it easier for future transactions.

Q. To make sure you understand, this is money 117,000,000 [sic] went from a -- a bank account of  BNAto FMC Cayman, and 117- -- 117,000,000 [sic] didn't -- was not -- didn't belong to BNA, but belonged to FMC Cayman; is that correct? That's the whole deal?

* * *

A. *That is correct. The money belonged to FMC.*

Q. Why did it get in the hands of BNA, to begin with?

* * *

A. So these are investors that who willing to pay the money in U.S. dollars to avoid some of the transactional issues of transferring money between China and the U.S. due to the trade issues and everything at that time. So we requested the investors to deposit the money in U.S. dollars in a U.S. bank account, which happened to be BNA's account. And -- and the money was, accordingly, transferred to FMC *because it belonged to FMC in the first place*.

(Docket Entry 142, 65:20-71:6; emphasis supplied.)

($143,000,000) or more." (EDAG Memo at 3:6-7.) No competent evidence has been provided to support the statement that Byton NA "spirited the Investors Money of BNA." To the contrary, Mr. Kameswaran testified that the funds belonged to FMC Cayman and never belonged to Byton NA.

- "No documents were produced and will ever be produced." (EDAG Memo at 3:23.) No competent evidence has been provided to support this false statement.

- EDAG repeatedly cites to Mr. Kameswaran's testimony (Docket Entry 142), but frequently mischaracterizes the testimony. Byton NA invites the Court to review Mr. Kameswaran's testimony.

- "BNA elected to spirit away all records (save bank records, which originated from the EDAG subpoena) and has no intention of turning over any records to BNA." (EDAG Memo at 15:11-12.) No competent evidence has been provided to support this false statement. In reality, Byton NA has produced more than 5,000 pages of documents to EDAG.

- "Here BNA admitted that BNA spirited all of the records and allegedly left the records in the "Clouds."" (EDAG Memo at 18:8-9.) No competent evidence has been provided to support this false (and frankly rather bizarre) statement.

VI. **CONCLUSION**.

For all of the foregoing reasons, the Application should be denied.

Respectfully Submitted,

Dated: April 4, 2022

VAN ETTEN SIPPRELLE LLP

By: *Keith A. Sipprelle*
Keith A. Sipprelle
Attorneys for Respondent
BYTON NORTH AMERICA CORPORATION