**David J. Cook (SBN 60859)**
**COOK COLLECTION ATTORNEYS, PLC**
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

**LEWIS & LLEWELLYN LLP**
**Evangeline A.Z. Burbidge (Bar No. 266966)**
eburbidge@lewisllewellyn.com
**Marc R. Lewis (**Bar No. 233306)
mlewis@lewisllewellyn.com
**Kenneth M. Walczak** (Bar No. 247389)
kwalczak@lewisllewellyn.com
**Bradley E. Estes** (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:   (415) 390-2127

Attorneys for Petitioner EDAG Engineering GmbH,
a corporation organized and existing under the laws
of the Republic of Germany

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>          Petitioner,<br><br>     v.<br><br>BYTON North America Corporation,<br><br>          Respondent | Case No. 3:21-cv-04736-EMC<br>APPLICANT'S APPLICATION TO AUTHORIZE APPLICANT TO ADD NEW LEGAL CLAIMS IN SUPPORT OF THE MOTION TO AMEND (DOC. # 71 & 72) BASED ON THE (1) ADMISSIONS IN THE OEX OF MARCH 11, 2022, (2) THE FAILURE TO COMPLY WITH ORDER COMPELLING PRODUCTION OF RECORDS AND (3) ADMISSION OF NON-EXISTENT RECORDS; (4) NON-EXISTENT RECORDS OF BNA'S PPP LOAN OF $10,000,000. |

Judge:  Honorable Edward M. Chen [Video-ZOOM hearing)

Petition Filed: June 23, 2021

# I.  RELIEF SOUGHT AND BNA'S FOUR SETS OF BOOKS:

1. To Permit EDAG to add, amends, and supplements the Motion to Amend (Doc. #71 & #72) in seeking to add Byton Limited to the Judgment (Doc. #49) on the basis of recent discovery and admissions and concessions from counsel for BNA.

2. To continue the Motion to Amend, set for June 30, 2022 (Doc. # 71 &72) to September 28, 2022 which would allow additional time for Plaintiff to complete discovery including the recovery of the $10,000,000 PPP money, to locate other records, including, but not limited to, if possible, ledgers, journals & notes, locating other substantial sums of money ($460 mil) which has come into the hands of BNA and its related parties (Doc. # 133-1, Ex. "A," "B," & "C").

The Admissions and the related discovery (OEX of Sadha Kameswaran ("Sadha") (March 11, 2022, March 25, 2022, April 6, 2022, and two Meet &Confer conferences ("M&C"):

1. Admissions by BNA in the OEX [Order of Examination/March 11, 2022) that Sadha testified that BNA lacks revenue from a non-Byton entity, lacks any sales to any non-Byton entity and receives revenue from a Byton Entity and no other. (Doc. # 142, P. 43 ll. 3-24)

2. Admissions by BNA who refused to comply with the Order Compelling the Production of RPF #4 [#4, Discovery Order Doc. # 127 ("#4/#127" or "RFP #4"] due March 24, 2022, i.e., refused to produce any ledgers, journals & notes which are part of #4/#127 and therefore rendered any claimed financial statements a fake and that the financial statements would be a fabrication, without ledgers, journals & notes. Doc. # 161, P 18, ll. 11-20) (4-12-22).

3. Admissions that the records are inaccessible, immutably in the "CLOUD" in "India, China, Philippines" or elsewhere.  The records of alleged financial records are allegedly domiciled in the "Cloud" or China which are inaccessible and immutable. (Doc. # 201, ll. 21-25, and P. 202, ll. 1-2 (P,  28,  ll. 1 to 15, P. 30, ll. 14 to 24, P. 31, ll2 to 25) held by Nanjing New Energy Company.

4. Admissions by BNA of no records of receipt of $10mil PPP funds. (Doc. #142, P. 84 ll.15 to 25, P. 84, ll.1 to 24) i.e., BNA's history of $10mil PPP, i.e., ledgers, journals & notes and most likely siphoned to third party.

5. Admissions of "*two sets of books*" based upon (1) the R&D Agreement (Doc. # 85-2, P. 7, Par. 4.5, The Nov. 30, 2016 GAAP Records ("GAAP Records") as follows: " . . . business full, complete and accurate books of account and records of its activities under this Agreement in accordance with but never produced  ("GAAP Records")" while (2) the March 25, 2022/April 6, 2022 alleged financial statements ["BNA FS"] were produced, but refused to turn over ledgers, journals & notes, that BNA FS is subject to scrutiny (Doc. # 161, P 18, ll. 11-20,4-12-2022), & hence BNA FS is fabricated, and i.e., two set of books:  GAAP Records or BNA FS.

      6.      Admissions of the *second two sets of books* [and buyers]as follows:

"Yeah. Byton North America was doing R&D work, and it was getting paid for it. So whether it was exactly that amount, I don't know. But Byton North America did receive money for doing work. Doc. #142, page 23, lines 4-8). "A. The work was done for Byton's entity in China. Q. I'm - A. More specifically, for FMC Cayman. (ll. 15-18), "A. Yeah. Byton -- Byton North America is an R&D entity that was doing work and getting paid for the work done (p. 24, ll. 10-11). "Q. FMC Cayman; is that correct? A. We -- we are repeating the same error here. The work was not for FMC Cayman. The work was for **the Nanjing New Energy Company**." ["Nanjing" as buyer] (P. 24, ll. 15-17)

that impeaches the **By-Ltd's Research Agreement ["R.A."]** to pay for "Service Provider's Services Costs, plus eight (8%) percent of such Services Costs." (Doc. # 85-2, P. 24, Ex. "B") and payable by By-Ltd ("Company" under R.A., Doc. # 85-2) & BNA as the seller. Nanjing and By-Ltd are separate entities. P. 232, ll. 23-25 & P. 233, l. 1) and two sets of books: By-Ltd or Nanjing.

      7.      Admission of *three[phantom] sets of books* (i.e., non-existent ledgers, journals & notes) of "Byton North America . . . was doing work and getting paid for the work done . . ." (p. 24, ll. 10-11) and but does not exist and likewise revenue, cash, expenses, payroll, costs of sale etc.

      8.      Admissions that BNA R&D work stopped in 2019 and never sold to third parties:

"So, tell me, what were the sales for BNA for 2017? A. BNA did not sell product to any external customers. The only work BNA was doing was R&D work for the -- the sister entity in China and getting paid for it. So BNA did not have any other revenue stream, other than getting paid for the work that was being done by the -- the R&D engineers. Q. Any -- any income for the year of 2018? A. Again, it would be whatever work was done, we were getting paid for. I wouldn't remember the exact numbers for any one of the years, for that matter. Q. So how about 2019? Was any income due from -- due to BNA? A. There -- there was work that was happening still 2019 until the later part of 2019 when things had to be -- a lot of the work had to be slowed down and stopped. Q. Okay. Well, was there any income? A. So 2019 there have been some payments for the work that was done during 2019.  (Doc. # 142, P. 43 ll. 3-24).

BNA received "paid" from "sister entity in China"[Nanjing] and impeaches the R.A. (#85-2,Ex."B.")

      9.      Admissions of alleged secret sales of:

"Q. Somewhere about 250 or 60 million dollars, and it -- it sold all of that to other Byton entities; isn't that correct?  [Full Trans, Doc. # 142] THE WITNESS: So BNA was an R&D service provider for the other entities within the Byton group, so we employed people to provide those services. And their times were paid by whoever was receiving the services, and -- with an arms-length contract and a profit margin. "(Doc. #134, ll. 8-22).

but without a proof of "payment", any "sales", or any "revenue" from any ledger, journals & notes.

      10.     Admissions of the $10 PPP loan of 4-23-2020 when "There -- there was work that was happening still 2019 until the later part of 2019 when things had to be -- a lot of the work had to be slowed down and stopped" (Doc. # 142, *ibid.*):  No work for 2020 or $10mil PPP with no work.

      11.     Admissions of concealment of the debt due BNA vendors, sales, revenues, and payment due BNA and without any ledgers, journals, & notes that would render the BNA FS a fake.

12. Admissions of scrutiny of the BNA FS when the BNA FS is without any the ledgers, journals, & notes, that the BNA refuses to offer any further records and constraints and lockdowns from the Cloud (OEX, 3 -11-22) and in conflict with GAAP Records.  (Doc. #85-2, P. 7, Par. 4.5)

13. Admissions of "global shared drive: of BNA" "So corporate finance documents that are stored in there had restricted access and was accessible to only to very few people in the company for "confidentiality reasons" and no legitimate records (Doc. # 142, P. 210, ll. 6 to 10).

14. Admissions that all finance, accounting department, finance books, and report to "corporate finance group in China [Nanjing] (P,  28.  ll. 1 to 15, P. 30, ll.14- to 24) without reason.

15. Admissions that *four sets of books* of Ying "BNA. . . . maintained separate financial books and records..." (Doc.# 85-1, p. 2, para. 7) but do not exist (Doc # 161, p.18: 11-20)

## II.  STATUS OF MOTION TO AMENDED (Doc. # 71 & # 72.) [C.C.P. Sec. 187]

EDAG filed a motion to amend (Section 187) (Doc. # 71 & #72) and date of June 30, 2022:

"The hearing was initially scheduled for February 3, 2022; however, EDAG subsequently filed notices of continuance, moving the hearing from February 3 to March 24, then again from March 24 to June 30. Docket Nos. 74, 82. EDAG seeks the new hearing date in order to resolve a discovery issue and have adequate time to compel BNA to produce its records prior to the hearing. Docket No. 87 at 4. A hearing for EDAG's Motion to Compel BNA to produce its records is set for February 24, 2022. See Docket No. 90. EDAG's notices conform to the requirements of Civil Local Rule 7-7. The notices of continuance were timely filed before BNA filed its opposition and before the opposition was due. Although a continuance of the hearing does not automatically extend the briefing schedule, the interests of efficiency and the practical need to resolve discovery issues prior to the hearing provide good cause for the continuance of the hearing and extension of the briefing schedule.

Accordingly, the Court GRANTS EDAG's ex parte application and reschedules the hearing for June 30, 2022. BNA shall file a supplemental opposition brief by June 9, 2022. EDAG's reply is due June 16, 2022." (Doc. # 100, P. 1, LL 19 to 28, & P. 2, ll. 1 to 5).

EDAG seeks to add to the Motion to amend current disclosures, revelations, inconsistencies which will prove that Byton-Limited is an ego alter of BNA (Doc. # 71 & #72) as they are the same.

## III.  FINANCIAL STATEMENTS ARE UNRELIABLE AND UNBELIEVABLE

### A.    LEGDERS, JOURNALS & NOTES WERE NOT PRODUCED [#4/# 127)

EDAG issued subpoena (SDT #1), which lead (after hearings etc.) to an order on February 22, 2022 to produce the following by March 24, 2022:

"4. Any and all financial statements, whether audited or unaudited, ledgers, journals, internal financial statements., credit reports, credit applications, outside or inside financial statements, representation of the financial conditions of BNA, any financial records generated from a third party of BNA, notes, narrative, chronicles, or histories of BNA account commencing on January I, 2018 to date hereof." ( #4/#127)

BNA admitted (March 25, 2022 & April 6, 2022):

"I WAS ABLE TO GET OUT OF CHINA THE FINANCIAL STATEMENTS, WHICH MY UNDERSTANDING IS WHAT WE WERE REQUIRED TO TRY TO GET, AND THOSE HAVE BEEN PRODUCED. BUT WE DON'T HAVE ACCESS TO ANYTHING BEYOND THAT AND NEVER DID." (Doc # 161, P. 12, ll. 14-18. (April, 12, 2022)

"MR. SIPPRELLE: WE DON'T HAVE ANY -- AGAIN, THE UNDERLYING FINANCIALS -- I'VE GIVEN YOU WHAT WE WERE ABLE TO GET. WE WERE NEVER IN POSSESSION, CUSTODY, OR CONTROL 14 OF ANY OF THE FINANCIAL RECORDS AS MR. COMASOREN TESTIFIED. I WAS ABLE TO -- INQUIRIES WERE MADE OF THE PEOPLE IN CHINA, AND WE DID GET THOSE FINANCIAL STATEMENTS WHICH WE DIDN'T HAVE ACCESS TO. AND THAT'S ALL WE HAVE, AND THAT'S ALL WE CAN GIVE YOU. SO, NO, WE DON'T HAVE ACCESS TO LEDGERS. SORRY." (Doc. # 161, P 18, ll. 11-20)  (April 12, 2022)

BNA failed to provide ledgers, journals, & notes that are part of the #4/#127. (Doc. # 160).

**B.     RECORDS (OTHER THAN ALLGED FINANCIAL STATEMENTS) ARE IMMUTABLY INACCESSIBLE BASED ON THE OEX OF MARCH 11, 2022.**

March 11, 2022:      "Q. Okay. . . . So let's go back to the following? So tell me, where are the records, which would include profit and loss statements, balance sheets, P. 36 invoices, contracts, things like that? Where are those records, as we sit here today? [Full Trans., Doc. # 142] THE WITNESS: So the records for the profit and loss and balance sheet would be with the corporate finance group in -- in China. . . . BY MR. COOK: Q. Are they in some way that I can ask for and deliver all of the finance records of BNA? Can that be done easily? [Full Trans., Doc. # 142] THE WITNESS: I'm not aware of how documents are stored in the -- in the China entity so it's difficult for me to comment." P. 37 (Doc. #142) and (March 11, 2022)

"As I said, I do not know the location of the Cloud servers to where they were. Whether they were in (P. 201) (Block #40) China or India or the Philippines or -- I -- I do not know. (P. 202)." (Block # 41)  (Doc. # 142) (Date of OEX is March 11, 2022)

"SO, NO, WE DON'T HAVE ACCESS TO LEDGERS. SORRY."  (Doc. # 161, P 18: 11-20)  (April 12, 2022); and March 25, 2022 & April 6, 2022: Production of Financial Statements (BNA FS) [ but Ying's: BNA "maintained separate financial books and records." (Doc.# 85-1, p. 2, Para. 7)

**IV.  NO PREJUDICE IN GRANTING RELIEF AND IF NOT, REQUIRING RESETTING THE MOTION TO A LATER DATE.**

Everything has or will come from BNA:  March 11, 2022 OEX, March 25 & April 6 of the BNA FS, M&C Transcripts (Doc. #116-3 & Doc. # 161), Ying Dec. (Doc. #85-1 & 2).  BNA bears the late disclosure of BNA FS when the documents were provided on March 25, 2022 after 320 days of the #4/127 Order and for no purpose.  BNA bears responsibility for the admissions of 3-11-2022 given that admissions are in conflict with Doc.## 85, 85-1 & 85-2 and to scrutiny BNA FS.

**V.  EDAG SEEKS TO SUPPLEMENT THE MOTION TO AMEND (Doc. # 71 & #72)**

BNA has stalled discovery over months providing BNA FS, failing to turn over the ledgers, journals & notes, failing to turn over the bona fide GAAP Records (or destroyed it) and offering

repetitive admissions, Plaintiff sees to supplement the brief in the Motion to Amend (Doc. # 71 & # 72) with the Admissions and claims in this Application which include based on the OEX:

    A.    All records are allegedly comprised in the S-Drive (or other) by a "Cloud" somewhere in "India, China or Philippines" for Byton Entities which demolish the claim that BNA is separate from Byton Limited as claimed by Mr. Ying (Doc. # 85-1, P. 2, Par. 7, ll. 11-14, Para. 10, LL 21-23). Financial records, if any, are held in the S Drive of multiple entities, (or no entities, (Doc. # 142, P.207, ll. 14-22), P. 208, ll.8 to 19: (The S Drive is restricted.  (P. 208, ll-17),  "S Drive is a Global Drive," P. 202 (P. 8-18). Accounting department (and accounts receivable) is in China. ( P. 27, ll. 23-24, P. 28, 11 1-2. and P. 28, 11, 7-12).

    B.    The claim that Corporate Finance Department [Nanjing] of a Byton Entity controls ["restricted'] all records (Doc. # 142. P. 207, ll. 14-25,P. 28, ll.1-25, P. 209, ll. 1 to 25, P. 210,  ll. 1-19) which demolishes the claims of own "operation" etc. (Doc. # 85-1, P. 1, Par. 10 ll. 21-23).

    C.    Zhang Ying never had access to BNA or its financials which demolished any claim of "personal knowledge of history, structure and operation of Byton Limited and Byton NA based on my review of documents. . . ."  (Doc. # 85, P. 1, ll.7-10) when Zhang Ying has no had contact with BNA  (Doc. # 222, ll,13-25, & P. 223, ll. 1-4, 9); no documents provided to Mr. Ying (Doc.# 118, ll. 1 to 18; P. 119, ll.1 to 12; P. 120, ll. 2-22)

    D.    Large sums of money were received by Byton Limited and demolish the claim that Byton Limited never received money proceeds from any business activities of BNA. (Doc.#85-1, P. 3, Par. 12, ll. 12-30; Doc. # 133-1, Ex. "A." See Ex. "A" & Ex. "C.")

    E.    The apparent lack of any financial statements, balance sheets, and profit and loss statements when Sadha acknowledges complete know of any finances.  (P. 101, ll.19-23), but  "Q. So who was in charge of the finances of BNA, for 2020 going forward? A. 2020 until the end of 2021, I was responsible for that (P. 103, line 16-24)

**VI.  REMEDY SOUGHT**:

    1.    Allow EDAG to supplement the Motion to Amend with the Admissions #1 to #15 and the other claims and ~~,~~ theories, ~~and~~ raised in the Application herein and if necessary provide any declarations or evidence.

    2.    Set the date for the hearing on or about September 28, 2022 and the dates as follows:

Date for the filing of the EDAG Amended Motion, and any declaration or evidence on August 23, 2022, any Opposition by BNA would be September 6, 2022, and the EDAG Reply would be September 14, 2022.

Dated:   April 18, 2022

|   |   |
|---|---|
| 1 | COOK COLLECTION ATTORNEYS PLC |
| 2 | _____/s/ David J. Cook_____<br>DAVID J. COOK, Esq. |
| 3 | Attorney for EDAG Engineering GmbH |