UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDAG ENGINEERING GMBH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BYTON NORTH AMERICA CORPORATION,<br><br>　　　　　　Defendant. | Case No.  21-cv-04736-EMC   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 163 |

　　　　We are here on the parties' third joint discovery letter brief concerning judgment debtor discovery. ECF No. 163.

　　　　By way of background, EDAG Engineering GmbH ("EDAG") is an engineering services provider for the automotive industry. BYTON North America Corporation ("BNA") was an automobile manufacturer that sought out EDAG's expertise to assist with BNA's goal of building an all-electric vehicle from scratch. The two companies began working together in 2016, and after some initial contracts were completed, they embarked on a larger arrangement. After negotiations, they executed the Technology Development and License Agreement ("TDLA"). ECF No. 1. The TDLA was "made this 20th day of October, 2018," was "effective as of the 1st day of June, 2017," and was signed by EDAG on December 18, 2018 and by BNA on January 9, 2019. ECF No. 10-1.

　　　　The project went smoothly at first, but by late 2018 BNA owed EDAG millions in unpaid invoices. EDAG continued to perform, and by mid-2019 BNA's debts exceeded $20,000,000. On October 22, 2019 EDAG submitted a demand for arbitration pursuant to the arbitration provision in the TDLA, and EDAG prevailed in the arbitration on June 2, 2021. ECF No. 1. On December 13, 2021, Judge Chen confirmed the arbitration award and entered judgment in favor of EDAG for a little more than $30,000,000. ECF No. 49.

This judgment, unfortunately, has proven uncollectible. There is currently a motion pending before Judge Chen to add BNA's Chinese parent company to the judgment, and that is scheduled for hearing on September 9, 2022. ECF No. 166. Before the undersigned are EDAG's continued efforts to take judgment debtor discovery. There has already been a judgment debtor exam. ECF No. 136. The written discovery consists of 18 requests for production ("RFPs") in the subpoena attached as Exhibit A to ECF No. 116-2. The Court has already ordered BNA to produce documents responsive to RFPs 4 and 15, and has denied EDAG's motion to compel as to RFP 13. ECF No. 127. The Court previously ordered the parties to meet and confer about the remaining RFPs in dispute. ECF No. 153.

We are now here on the third discovery letter brief concerning these RFPs. ECF No. 163. It looks like EDAG is now pursuing only RFPs 3, 5, 8, 9, 10, 11, 12, 14, 17 and 18. For RFP 3, EDAG says it will accept "[a]ll Email Communications, letters, writings, notes, text messages for the following: Related to EDAG, Byton Limited, FMC Cayman and Zhang Ying for the time period of January 1, 2018 to date which would include, but is not limited to, the EDAG litigation, and relating and referencing Zhang Ying's declaration and the contents of the Zhang Ying Declaration." Byton Limited apparently owns BNA, and FMC Cayman owns Byton Limited, and Zhang Ying's declaration at ECF No. 85-1 spelled out the relationship between the three entities in support of Byton Limited's efforts to avoid being added as a party to the judgment.

The Court was momentarily hopeful that the parties had resolved their dispute over RFP 3 based on BNA's assertion to that effect in the letter brief. But EDAG did not so state, and during the hearing it became clear that the parties were not on the same page. So, it seems there is a dispute to resolve. The Court is certainly not going to enforce RFP 3 as it is drafted. Ordering BNA to produce every document about EDAG going back to 2018 would sweep in, for example, documents about the underlying electric car project and documents about the arbitration. The Court has previously admonished EDAG that its RFPs were too broad, ECF No. 163, and EDAG has done little to correct that problem. Likewise, it would not be reasonable to order BNA to produce literally every document about its parent company or its parent's parent company, especially not for this time frame. At the hearing, EDAG began to shift ground and argued that it

1  wanted the subset of responsive documents that relate to control over BNA.  However, EDAG was
2  supposed to meet and confer to narrow its RFPs *before* filing a joint discovery letter brief; it's not
3  fair to force BNA to respond on the fly to new limitations proposed during the hearing.
4  Accordingly, the Court orders the parties to meet and confer further on RFP 3 and to file a joint
5  discovery letter brief if they cannot reach an agreement.

6  RFP 5 is hard to follow as written, but EDAG's update is helpful, and the Court
7  understands what EDAG is seeking and why, and it seems reasonable.  Accordingly, the Court
8  orders BNA to produce all documents concerning its assets from 2018 to the present, including
9  any appraisal or inventory of its assets.  BNA says it has nothing further it can produce because all
10 information about its financials was stored on an access-restricted folder in China to which it
11 never had access.  However, if we are to believe paragraph 7 of Zhang Ying's declaration ("Byton
12 NA and Byton Limited are independent legal entities, and each company has maintained separate
13 financial books and records."), then BNA's story that it never had its own financial information
14 doesn't sound true.  Regardless, an order compelling production is just an order for a litigant to
15 produce what it has.  If BNA doesn't have something that it used to or that most companies do,
16 either Judge Chen or the undersigned can figure out the consequences of that.  The first step is an
17 order compelling production.

18 RFP 8 seeks payroll records for all BNA employees, and payment information for all
19 outside vendors, from January 1, 2018 to the present.  Particularly for the payroll records, this
20 seems like a massive invasion of privacy.  One of EDAG's theories of relevance seems to be that
21 if employees of other Byton entities were on BNA's payroll, this would constitute evidence that
22 these companies are alter egos of each other.  That sounds solidly like speculation, and not very
23 good speculation.  Should we believe that Byton Limited (the parent) and FMC Cayman (parent's
24 parent) had their employees on BNA's payroll from January 2018 to the present?  This was the
25 period of time when BNA was amassing debt and ran out of money.  It's hard to believe that
26 Byton Limited and FMC Cayman ran their internal payroll through their collapsing North
27 American subsidiary, and EDAG offers no evidence that this was the case.  EDAG also seems to
28 suggest the reverse might be true, i.e., BNA's employees might have been on Byton Limited's or

3

1   FMC Cayman's payroll.  The fact that EDAG presses both of these contradictory theories of
2   relevance at the same time confirms that they are speculation.  As to the second theory (BNA
3   employees on Byton Limited's or FMC Cayman's payroll), that would indeed be helpful evidence
4   of alter ego liability, but only Byton Limited or FMC Cayman is going to have it.  EDAG suggests
5   we could *infer* that BNA's employees must have been on Byton Limited's or FMC Cayman's
6   payroll simply from the absence of payroll records in BNA's current possession.  However, the
7   Court does not think that the absence of payroll information from a company that has gone out of
8   business and claims it no longer has any documents or employees permits the inference that its
9   employees were on some other company's payroll.  Accordingly, the motion to compel on RFP 8
10  is denied.

11  RFP 9 seeks all of BNA's utility and rent bills from January 1, 2018 to the present.
12  EDAG's explanation for why these are relevant judgment debtor discovery makes no sense.  The
13  motion to compel is denied as to RFP 9.

14  RFP 10 seeks bills and payment information for every other type of bill BNA received
15  (goods and services) and all communications from the vendors about payment of the bills.  While
16  this discovery would provide information about when BNA stopped paying its other vendors, it
17  would not shed light on what assets BNA has to pay a judgment or where voidable asset transfers
18  may have gone.  The motion to compel is denied as to RFP 10.

19  RFP 11 is hard to interpret as written.  In the letter brief EDAG says it will accept a
20  summary of the various vendors who are owed money, who they are, how much they are owed,
21  and what the debt is for.  That seems reasonable.  After all, it is part of taking discovery into the
22  debtor's financial condition.  Accordingly, the Court orders BNA to produce documents sufficient
23  to show everyone other than EDAG to whom it owes money, who the creditor is, how much BNA
24  owes that creditor, and what the debt is for.

25  RFP 12 seeks all documents concerning a $10,000,000 PPP loan that EDAG says BNA
26  received.  BNA doesn't dispute that it received that loan.  This is classic judgment debtor
27  discovery because EDAG is trying to find out what money BNA has and where it went.  True,
28  under the law, PPP money was supposed to be used to pay employees (not judgment creditors),

4

but the Court gathers that EDAG suspects the money was misused or went to improper places. In any event, $10 million is a lot of money, and EDAG is entitled to know where it went. Accordingly, the Court orders BNA to produce all documents concerning the PPP loan, including where all the money went.

RFP 13 asks for all shipping records, bills of lading, packing slips, and so on for all goods shipped by air, road or ocean from January 1, 2018 to the present. The Court does not see how this would provide information concerning assets that EDAG could collect against. The motion to compel is denied as to RFP 13.

As reformulated in the letter brief, RFP 17 now seems duplicative of RFP 3. Accordingly, the Court orders the parties to meet and confer further about RFP 17 along with RFP 3. The reformulated RFP 18 is addressed by the Court's order with respect to RFP 12.

Accordingly, EDAG's motion to compel is granted in part and denied in part as described above. BNA shall produce the documents the Court has ordered it to produce within 30 days of this order.

**IT IS SO ORDERED.**

Dated: May 25, 2022

THOMAS S. HIXSON
United States Magistrate Judge