**David J. Cook (SBN 60859)**
**COOK COLLECTION ATTORNEYS, PLC**
ATTORNEYS AT LAW
165 Fell Street
San Francisco, CA 94102
Telephone: (415) 989-4730
Facsimile: (415) 989-0491
Cook@CookCollectionAttorneys.com

**LEWIS & LLEWELLYN LLP**
Evangeline A.Z. Burbidge (Bar No. 266966)
eburbidge@lewisllewellyn.com
**Marc R. Lewis** (Bar No. 233306)
mlewis@lewisllewellyn.com
**Kenneth M. Walczak** (Bar No. 247389)
kwalczak@lewisllewellyn.com
**Bradley E. Estes** (Bar No. 298766)
bestes@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  (415) 800-0590
Facsimile:   (415) 390-2127

Attorneys for Petitioner EDAG Engineering GmbH,
a corporation organized and existing under the laws
of the Republic of Germany

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| EDAG Engineering GmbH,<br><br>Petitioner,<br><br>v.<br><br>BYTON North America Corporation,<br><br>Respondent. | Case No. 3:21-cv-04736-EMC<br>*EX PARTE* REQUEST TO STRIKE THE BYTON'S NORTH AMERICA CORPORATION'S OBJECTIONS TO EDAG ENGINEERING GMBH'S DEPOSITION SUBPOENA DIRECTED TOWARDS CARSTEN BREITFELD.<br><br>Date: TBA<br>Time: TBA<br>Location: via THOMS S. HIXSON Videoconference – Link<br>Petition Filed: June 23, 2021 |

## I. STATUS OF THE DISCOVERY PROCEEDINGS.

EDAG Engineering GmbH ("EDAG") served Carsten Breitfeld ("Breitfeld") a former of president of Byton North America Corporation ("BNA") who generally ran BNA until he was terminated by BNA in 2019.

Breitfeld became a party in a number of cases including ***Byton North America etc. and Byton Limited vs. Iconiq etc and Breitfeld, etc. C***ase Number: 2:19-1055639 DMG- JEM in the USBC Central District of California ("CD BNA Action"),  Breitfeld executes the Declaration (Doc. # 39-1) (Exhibit 'A") which stated the following:

"3.	From approximately July 2016 until April 2019, I served as CEO, director and Chairman of Byton Limited ("Byton Ltd."), and the subsidiaries of Byton Ltd. that existed during that time, including Byton North American Corporation ("Byton NA"; all together, "Byton"). I also served as Chief Adjunct Architect of Byton Ltd. during the same time period.

 4.	When I began working for Byton, I worked out of Byton Ltd.'s offices in Hong Kong. On or about June 23, 2017, Byton Ltd. seconded me to work out of the offices of its subsidiary Byton NA in Santa Clara, California.

5.	On or about December 1, 2018, I signed a written secondment with Byton Ltd., which formally recognized that Byton Ltd. had seconded me to its California subsidiary (the "Secondment"). The Secondment had retroactive effect, stating that my period of secondment was from June 23, 2017 until April 30, 2020.

6.	Byton Ltd. seconded me to Byton NA in California because Byton's core business at that time was conducted in California, under the global leadership of Byton Ltd. Byton Ltd. handled the management and leadership of the company, such as human resources and budgeting, but it did not handle the actual development of Byton's product – its electric cars. The conceptualization of the cars occurred in Germany, but the major and substantial part of the vehicle development was done at the California subsidiary. This included the engineering, prototyping and testing of most aspects of the Chassis, Body, Powertrain, and Interior, and the full vehicle integration of the cars, as well as the development of the technology for the cars, including software design. The core technology of the Byton car was software and User Interface technology. This was done entirely in California. All the release   responsibility for systems and components and all research and development for Byton's electric car was done in California, too. It was therefore critical to my role at Byton that I reside and work in California.
 \*\*\*

8. During the period of my secondment, Byton NA had no independent governance. Rather, Byton Ltd. maintained complete control over the operations of Byton NA. All of Byton Ltd.'s board decisions were binding on Byton NA. Byton NA did not make any board decisions independent of Byton Ltd.

9. Byton NA had no independent management structure during this period. All key management roles in Byton NA were held by officers of Byton Ltd. For example, during this period, I served as CEO and acting Chief Technology Officer of both Byton Ltd. and Byton NA. Attached as Exhibit A is Byton NA's December 28, 2017 Statement of Information with the California Secretary of State, which reflects the roles that I had with Byton NA.

10. During this time period, Byton NA also made no profit and did not engage in any independent fundraising. All fundraising for Byton NA occurred in Hong Kong, and was performed by Byton Ltd. Byton NA was funded entirely by Byton Ltd., which transferred and distributed all monies that funded Byton NA to the subsidiary. All budgeting for Byton NA was also done by Byton Ltd.

11. During this time period, Byton NA made no hiring decisions independent of Byton Ltd., nor was it allowed to do so. Rather, the Human Resources Department of Byton Ltd. in Hong Kong approved all hiring decisions for Byton NA.

12. Byton Ltd. maintained at least one bank account in California during the period in which I was seconded to Byton NA.

13. During the period of my secondment, Byton Ltd. paid my salary in California, as the December 2015 Employment Contract I signed with Byton Ltd. ("Employment Contract") required it to do. Byton Ltd. also paid my medical insurance while I lived in California through an insurance company in Germany with worldwide coverage."  (Doc. # 39-1, Page 1 to 3)  (Copy attached)

Therefore Breitfeld would have enormous information in the operation of BNA and moreover the relationship between BNA and Byton Limited, i.e., that BYTON is 100% control. of BNA which is nothing more than a shell, and therefor part and parcel of the Motion to Amend the Complaint in this case pursuant to Section 187, and set for hearing on September 29, 2022.   If nothing else, the Declaration (Doc. # 39-1) is important to the Motion to Amend in this case. (Exhibit 'A")

The testimony of Breitfeld would support EDAG's Motion to amend under Section 187, set for September 29, 2022. (Doc.#166)

**II.	SUBPOENA AND OBJECTION**

On May 12, 2022, EDAG served a Notice of Taking Deposition pursuant to FRCP 69(a)(1)and (2) of Carsten Breitfeld (Exhibit "B") and Subpoena to Testify at a Deposition in a Civil Action. (Exhibit "C").  Proof of service is attached (Exhibit "D"). The letter for ZOOM is attached, marked Exhibit "E."  The date of the hearing of the Deposition is June 13, 2022 at 10:00 a.m. (Zoom).

The person in this matter is Breitfeld and he was duly served  (Exhibit "D").

On May 31, 2022, BNA service (by mail and therefore received on June 6, 2022 "**THE BYTON'S NORTH AMERICA CORPORATION OBJECTIONS TO EDAG ENGINEERING GMBH'S DEPOSITION SUBPOENA DIRECTED TO CARSTEN BREITFELD.)**  (Exhibit "F")

### III.  MEET AND CONFER

On June 7, 2022, EDAG notified counsel for BNA that BNA did not have any standing of any type to object to the subpoena, and the only person who could object would be Breitfeld who in fact has not filed any motion to object on any basis. (Exhibit "G")

### IV.     BNA LACKS ANY STANDING TO OBJECT TO THE SUBPOENA

**BNA lacks any standing to the objections to the Deposition and the production of records:**

"Under Rule 45, the nonparty served with the subpoena duces tecum may make objections to the subpoena duces tecum within 14 days after service or before the time for compliance, if less than 14 days. Fed.R.Civ.P. 45(c)(2)(B). On timely motion, the court may quash or modify the subpoena. Rule 45(c)(3)(A). A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* ¶ 11:2291 (2005 rev.) (emphasis in original); see also Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n. 5 (9th Cir.1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45[c] come into play.")." *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D. Cal. 2005)

"A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005); McCoy v. Southwest Airlines, Co., 211 F.R.D. 381, 384 (C.D. Cal. 2002). The party who moves to quash a subpoena has the burden of persuasion under Rule 45(c)(3).[1] See Moon, 232 F.R.D. at 637. "[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." Chevron Corp. v. Donziger, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing Knoll, Inc. v. Moderno, Inc., 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) ); see also Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-F ("The general rule is that a party has no standing to move to quash a subpoena served upon a third party except as to privilege claims relating to any documents being sought")

(citing California Sportfishing Protection Alliance v. Chico Scrap Metal, Inc., 299 FRD 638, 643 (E.D. Cal. 2014) )." *Freed v. Home Depot U.S.A., Inc.,* No. 18CV359-BAS (LL), 2019 WL 183833, at *2–3 (S.D. Cal. Jan. 14, 2019)

"The question initially is whether Defendant Smith has standing to file a motion to quash the subpoenas duces tecum. The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought. *Oliver Cannon and Son, Inc. v. Fidelity and Cas. Co. of N.Y.,* 519 F.Supp. 668 (D.Del.1981). A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable. *Broadcort Capital Corp. v. Flagler Securities, Inc.,* 149 F.R.D. 626 (D.Colo.1993); *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D.Kan.1995). Absent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum." *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D. Colo. 1997)

"Generally, Rule 26(b)(3) "limits ... protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re California Public Utilities Comm'n,* 892 F.2d 778, 781 (9th Cir.1989); *see also Loustalet v. Refco,* 154 F.R.D. 243, 247 (C.D.Cal.1993) (finding the work-product doctrine does not protect from discovery documents prepared for one who is not a party to the present suit, even if the person may be a party closely related to the lawsuit in which he will be disadvantaged if he must disclose in present suit); *IP Co., LLC v. Cellnet Tech., Inc.,* 2008 WL 3876481 (N.D.Cal. Aug. 18, 2008)." *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.,* 299 F.R.D. 638, 643 (E.D. Cal. 2014)

"Plaintiff contends that defendants lack standing to quash the subpoena served on Google. As a general rule, a party does not have standing to quash a subpoena issued to a non-party. *See Malibu Media, LLC v. Does 1–25,* Civ. 12–80193, 2012 WL 2367555 (S.D.Cal. June 21, 2012). However, a party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed. *Id.* at *2; 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed.2008)." *Knoll, Inc. v. Moderno, Inc.,* No. C 12-80193-MISC SI, 2012 WL 4466543, at *1–2 (N.D. Cal. Sept. 26, 2012)

V.   **EDAG IS ENTITLED TO EXAMINATION UNDER FRCP 69(a)(1) and (2) etc.**

**Discovery is liberal in the collection of a judgment:**

" Fed.R.Civ.P. 69(a)(2) permits a judgment creditor to "obtain discovery from any person—including the judgment debtor." "The rules governing discovery in postjudgment execution proceedings are quite permissive," *Republic of Argentina v. NML Capital, Ltd.,* ––– U.S. –––, 134 S.Ct. 2250, 2254, 189 L.Ed.2d 234 (2014), and "[l]iberal discovery is afforded to judgment creditors" under Rule 69. *ClearOne Commc'ns, Inc. v. Chiang,* 276 F.R.D. 402, 404 (D.Mass.2011) (internal quotation omitted). The "presumption is in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment." *Id.* Additionally, under Fed.R.Civ.P. 37(a)(1), "a party may move for an order compelling disclosure or discovery" if it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery." Nat'l *Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.,* 106 F. Supp. 3d 270, 271 (D. Mass. 2015)

**EDAG is entitled to liberal access to discovery:**

"Yang's objections to the scope of ClearOne's questioning similarly fail. Liberal discovery is afforded to judgment creditors under Federal Rule of Civil Procedure 69(a)(2), which states:

In aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

The presumption is in favor of "full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment...." *See United States v. Neumann,* No. 86–cv–0034, 1999 WL 156151, at *1 (D.Mass. Mar. 5, 1999) (citation and quotation omitted). *ClearOne Commc'ns, Inc. v. Chiang,* 276 F.R.D. 402, 404–05 (D. Mass. 2011)

The claim of the Objections of BNA (Page 1, lines 5 to 13) is without any merit at all. In fact Breitfeld is the key witness who will testify that BNA and Byton Limited are the same entities and therefore EDAG is entitled to the Deposition in order to prove the motion to Move to Amend under Section 187.

**VI. RELIEF**

BNA has no standing one way or another to prevent EDAG from proceeding with the deposition of Breitfeld and the production of all records. The entirety of the objection brought by BNA is without any merit. Breitfeld has not filed a motion to vacate the Subpoena and has no standing.

EDAG therefore seeks from the court an order striking the objection of the subpoena of Breitfeld and the production of records (i.e., Subpoena *Decus Tecum* for the records) and that EDAG can proceed. The date of the deposition is June 13, 2022 at 10:00 a.m.

Dated: June 7, 2022                             Respectfully submitted,

                                                COOK COLLECTION ATTORNEYS PLC

                                                By:    /s/ David J. Cook

                                                David J. Cook, Esq.

                                                Attorneys for Petitioner

                                                EDAG ENGINEERING GMBH

6

*EX PARTE* REQUEST TO STRIKE THE BYTON'S NORTH AMERICA CORPORATION'S OBJECTIONS TO EDAG ENGINEERING GMBH'S DEPOSITION SUBPOENA DIRECTED TOWARDS CARSTEN BREITFELD.